**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **LEHR CONSTRUCTION CORP.,** | : | **Case No. 11-_____ (____)** |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

---------------------------------------------------------------- x

## DECLARATION OF FREDERICK COFFEY
## <u>PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2</u>

I, Frederick Coffey, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.  I am the President of the above-captioned debtor (the "<u>Debtor</u>", "<u>Lehr</u>" or the "<u>Company</u>"). I am authorized to submit this Declaration in support of the Debtor's chapter 11 petition and the first day pleadings described herein. I am familiar with the Debtor's day-to-day operations, business and financial affairs.

2.  I am a co-founder of Lehr and have more than thirty-five years of industry management experience. I have hands-on management responsibilities for many of Lehr's largest projects.

3.  On the date hereof (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as well as certain motions and other pleadings (collectively, the "<u>First Day Pleadings</u>"). I am authorized by the Debtor to submit this Declaration on its behalf in support of the First Day Pleadings.

4.  The First Day Pleadings are intended to enable the Debtor to operate effectively and efficiently within this chapter 11 case, as well as to avoid certain adverse consequences that

might otherwise result from the commencement of this case.  Among other things, the First Day Pleadings are designed to meet the Debtor's goals of: (i) continuing its operations in chapter 11 with as little disruption and loss of productivity as possible; (ii) maintaining the confidence and support of its clients, employees, sub-contractors, and vendors during the Debtor's orderly wind-down process; and (iii) establishing procedures for the smooth and efficient administration of this chapter 11 case.  I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of, the Debtor's business, (b) avoid immediate and irreparable harm to the Debtor's sub-contractors and numerous other third parties, and (c) maximize and preserve the value of the Debtor's chapter 11 estate.

5.      In my capacity as President, I am familiar with the Debtor's day-to-day operations, financial affairs, business affairs and books and records.  Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my review of relevant documents; (iii) information supplied to me by other members of the Debtor's management team or professionals retained by the Debtor; or (iv) my opinion based on my experience and knowledge of the Debtor's operations and financial condition.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

6.      Parts I through III of this Declaration provide an overview of the Debtor's business, capital structure, and the circumstances giving rise to the commencement of this chapter 11 case.  Part IV summarizes the relief requested in each of the First Day Pleadings.  Part V lists the schedules of information requested by Local Bankruptcy Rule 1007-2.

## I.    THE DEBTOR'S BUSINESS

7.    Lehr Construction Corp., was founded in 1979 and has evolved from a small entrepreneurial business to one of the most respected builders in New York.  Lehr specializes in interior construction and serves clients mainly throughout the New York metropolitan area.  Lehr serves as construction manager and/or general contractor for its clients and Lehr's construction professionals work closely with their in-house estimating, purchasing, quality control and value engineering professionals to ensure projects are completed on schedule, within budget, and with impeccable quality.

8.    Lehr's projects range from minor renovations to interior office build-outs over a million square feet.  Lehr's broad range of clients include retail stores, financial service firms, educational organizations, entertainment and media firms, and many others.  Some of Lehr's recent projects include: (i) a headquarters installation for Ernst & Young encompassing 1.1 million square feet on thirty-seven floors at 5 Times Square, which included the build-out of general and executive offices, a law library, a cafeteria, a conference center, and data room; and (ii) a headquarters installation for Skadden Arps Slate Meagher & Flom encompassing 660,000 square feet on twenty-four floors at 4 Times Square, the scope of which included offices, a law library, high-density file storage, conference rooms, computer rooms, and IDF closets.

### Organizational Structure

9.    The Debtor is a privately held corporation and is incorporated in New York.

### Employees and Labor Matters

10.    The Debtor currently employs approximately 139 employees, of which approximately 43 are union employees and are paid on an hourly basis and 96 are salaried employees.  Historically, the Debtor has enjoyed favorable relationships with its highly qualified

1698654 v6/NY

and enthusiastic personnel.  The Debtor believes that its labor relations are good, and it has not experienced a work stoppage.

### Properties and Assets

11.     The Debtor's primary assets include contract rights and accounts receivable for its on-going and completed projects.  The Debtor's headquarters is located in New York, New York (the "Headquarters") and it maintains a warehouse facility in Woodhaven, New York (the "Warehouse").  The Debtor leases both of these premises and is presently current in rental payments at both locations.

## II.     CAPITAL STRUCTURE[1]

### Secured Debt

12.     The Debtor was a party to that certain Restated Promissory Note dated February 1, 2010 (the "Prepetition Note"), in favor of Capital One, N.A.  The Prepetition Note provided for a line of credit of up to an aggregate principal amount of $8,500,000.  The Prepetition Note matured on February 1, 2011.  The Debtor never made a draw on the Prepetition Note.   As of the Petition Date, the Prepetition Note has terminated and all of the Debtor's obligations under the Prepetition Note have been satisfied in full.

13.     The Prepetition Note was secured by that certain UCC fixture filing recorded as Document ID 200609015861205 on September 1, 2006 that encumbered substantially all of the Debtor's property (the "Fixture Filing").

---

[1]     The summary of the Prepetition Note and the Letter of Credit set forth herein is qualified in its entirety by the documents themselves.  To the extent there is a discrepancy between the descriptions set forth herein and the documents, the documents control.

**Unsecured Debt**

14.     The Debtor owes its trade vendors approximately $20 million as of February 16, 2011, which is substantially comprised of outstanding payments to its sub-contractors.

15.     Separate and apart from the Prepetition Note, the Debtor is a party to that certain Irrevocable Standby Letter of Credit Number 30002626 dated May 5, 2010 (the "Letter of Credit") from Capital One Bank for the benefit of NBA Properties Inc. (the "NBA").  The Letter of Credit is required by the NBA in connection with a construction project being completed by the Debtor for the NBA scheduled for completion in June 2011.  The Letter of Credit provides for a line of credit of up to an aggregate principal amount of $3,000,000.  No documentation or independent evidence can be located that supports the fact that the Letter of Credit is secured or collateralized by assets or property of the Debtor.  The Letter of Credit expires on the earlier of (i) the completion of Lehr's construction project for the NBA and (ii) November 30, 2011.  The Letter of Credit automatically renews for additional one year periods absent a sixty day termination notice from Capital One Bank.  As of the Petition Date, no draws have been made on the Letter of Credit.

**Recent Financial Information**

16.     The Debtor attained gross revenue of approximately $238 million in fiscal year 2010 (year ending July 31, 2010), which represents a decline from fiscal year 2009's gross revenue of approximately $385 million.  Current gross revenue projections for fiscal year 2011 (year ending July 31, 2011) are approximately $100 million.

17.     The Debtor's net operating income for fiscal year 2009 was $1.5 million.  The Debtor's net operating loss for fiscal year 2010 was $3.6 million.

1698654 v6/NY

### III.   EVENTS LEADING TO THE CHAPTER 11 CASE

18.     Several external and internal factors recently have severely impacted the Debtor, thus prompting the near-term liquidity pressures that precipitated the decision to commence this chapter 11 case.

### Market Conditions

19.     Over the last two years, the decline in the real estate market and the tightening of the credit markets have had a significant adverse impact on the real estate market in general, and the interior construction and renovation business in particular.

### Operational Issues

20.     The Debtor recently has experienced operational challenges which have adversely impacted the performance of its interior construction and renovation business.  Chiefly, the District Attorney of New York County has investigated the Debtor as part of a larger investigation of the interior construction industry.  This investigation has irreparably harmed the Debtor's ability to attract and retain new clients.

21.     The goal of this chapter 11 process will be the development of a business plan that will outline an orderly process for the completion of the Debtor's current construction projects and wind-down of the Debtor's business.  An orderly wind-down plan will allow the Debtor to focus its resources on completing its current projects for its clients in the timely, cost-effective, and high quality manner that it is known for.

22.     The Debtor believes that the strategies and goals established during this process will provide for a greater return to its creditors than a chapter 7 liquidation or any other alternative wind-down processes.

# IV.    SUMMARY OF FIRST DAY PLEADINGS

23.    The Debtor intends to seek relief from the Court as soon as possible after the

Petition Date through each of the motions described below:

| **TITLE** | **PURPOSE OF MOTION** |
|---|---|
| Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code (I) Authorizing Payment of Wages, Compensation and Employee Benefits and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations | Authorization to pay prepetition wage claims and continue existing employee benefit programs is requested. |
| Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtor to (I) Continue Using Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Waive Requirements of Section 345(b) of the Bankruptcy Code | Authorization to use the Debtor's existing bank accounts and cash management system is requested. |
| Motion Pursuant to Sections 105(a), 362(d), 363(b) and 503(b) of the Bankruptcy Code (I) Authorizing the Debtor to (A) Continue its Workers' Compensation Program and its Insurance Programs and (B) Pay All Obligations in Respect Thereof and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations | Authorization to continue workers' compensation programs and insurance programs, and pay all obligations in respect thereof, is requested. |
| Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Payment, and (III) Establishing Procedures for Determining Adequate Assurance of Payment | Approval of adequate assurance of payment to utilities, and approval of procedures to determine the amount of that adequate assurance, is requested. |
| Motion Pursuant to Sections 105(a), 363(b), and 541 of the Bankruptcy Code (I) For Authorization to Pay Certain Prepetition Taxes, and (II) to Allow Financial Institutions to Cash and Process Related Checks and Transfers | Authorization to pay any outstanding prepetition taxes and fees, if any. |

1698654 v6/NY

| **TITLE** | **PURPOSE OF MOTION** |
|---|---|
| Motion Pursuant to Bankruptcy Rules 1007(c) and 2002(d) for an Extension of the Time to File the Debtor's (I) Schedules of Assets and Liabilities, (II) Schedules of Current Income and Expenditures, (III) Schedules of Executory Contracts and Unexpired Leases, and (IV) Statements of Financial Affairs | A 30-day extension of the time required to file schedules and statements of financial affairs is requested. |

## V.     INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

24.     Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

25.     In accordance with Local Bankruptcy Rule 1007-2(a)(3), and to the best of my knowledge, information, and belief, no prepetition committee has been formed in this chapter 11 case.

26.     In accordance with Local Bankruptcy Rule 1007-2(a)(4), Schedule 1 hereto is a list of the names, addresses, and, where available, telephone numbers of the creditors holding the 40 largest unsecured claims (excluding insiders, unless otherwise noted) against the Debtor. Such list includes the amount of the claim, the nature of the claim and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured, subject, however, to the reservations of rights stated on Schedule 1 regarding, among other things, the actual validity of any such claims.

27.     In accordance with Local Bankruptcy Rule 1007-2(a)(5), Schedule 2 is a list of the names and addresses of the creditors holding the five largest secured claims against the Debtor, as well as the names and addresses for the holders of record of such secured claims. Such list includes the amount of the claim, an estimate of the value of the collateral, and whether the claim or lien is disputed, subject, however, to the reservations of rights stated on Schedule 1.

1698654 v6/NY

28.     In accordance with Local Bankruptcy Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtor's assets and liabilities.

29.     In accordance with Local Bankruptcy Rule 1007-2(a)(7), Schedule 4 hereto provides a list of the number and classes of shares of stock, debentures or other securities of the debtor that are publicly held, and the number of holders thereof, listing separately those held by each of the Debtor's officers and directors and the amounts so held.

30.     In accordance with Local Bankruptcy Rule 1007-2(a)(8), Schedule 5 hereto is a list of the Debtor's property not in the Debtor's possession, including property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

31.     In accordance with Local Bankruptcy Rule 1007-2(a)(9), Schedule 6 hereto is a list of the premises owned, leased, or held under other arrangement, from which the Debtor operates its business.

32.     In accordance with Local Bankruptcy Rule 1007-2(a)(10), Schedule 7 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the value of any assets held by the Debtor outside the territorial limits of the United States.

33.     In accordance with Local Bankruptcy Rule 1007-2(a)(11), Schedule 8 hereto is a list of litigation commenced against the Debtor.

34.     In accordance with Local Bankruptcy Rule 1007-2(a)(12), Schedule 9 hereto contains the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience. The Debtor intends to continue to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

35.     In accordance with Local Bankruptcy Rule 1007-2(b)(1), Schedule 10 hereto is the estimated amount of the payroll to employees of the Debtor (exclusive of officers, directors and stockholders) for the 30-day period following the commencement of the Debtor's chapter 11 case.

36.     In accordance with Local Bankruptcy Rule 1007-2(b)(2)(A), Schedule 11 hereto contains the amounts to be paid to the Debtor's officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtor's chapter 11 case.

37.     In accordance with Local Bankruptcy Rule 1007-2(b)(3), Schedule 12 hereto contains the estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the commencement of the Debtor's chapter 11 case.

38.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Accordingly, I respectfully request that the Court grant all of the relief requested in the First Day Pleadings and such other and further relief as may be just and appropriate.

Dated: February 21, 2011

**LEHR CONSTRUCTION CORP.**

By: _____
Frederick Coffey
President

# SCHEDULE 1

## CONSOLIDATED LIST OF CREDITORS
## HOLDING 40 LARGEST UNSECURED CLAIMS AGAINST THE DEBTOR[1]

The following is a list of creditors holding the forty (40) largest unsecured claims against the Debtor. This list has been prepared from the unaudited books and records of the Debtor. The list reflects amounts from the Debtor's books and records as of February 16, 2011. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in the Debtor's chapter 11 case. This list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101 except as otherwise noted, or (2) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the forty (40) largest unsecured claims. The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor. Moreover, nothing herein shall affect the Debtor's right to challenge the amount or characterization of any claim at a later date.

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| ABCO-Peerless Sprinkler Corp. | Attn: Tim or Peter Bowe<br>50 Midland Avenue<br>Hicksville, NY 11801 | Sub-Contractor | | $161,349.50 |
| Albert Pearlman Inc. | Attn: Randy Pearlman<br>60 E. 42nd Street<br>New York, NY 10165 | Sub-Contractor | | $299,877.75 |
| BP Mechanical Corp. | Attn: Robert Barbera<br>83-40 72nd Drive<br>Glendale, NY 11385 | Sub-Contractor | | $541,971.00 |
| Baring Industries | 3249 S.W. 42nd Street<br>Fort Lauderdale , FL 33312 | Sub-Contractor | | $133,918.00 |
| Burgess Steel Erectors NY | Attn: Tom Parisi<br>200 West Forest Avenue<br>Englewood, NJ 07631 | Sub-Contractor | | $247,360.00 |
| Capital Cooling Systems, LLC | Attn: Michael Chen<br>777 Passaic Avenue, 5th Floor<br>Clifton, NJ 07012 | Sub-Contractor | | $238,877.00 |
| Capital One Bank | Attn: Tim Juliano<br>99 Smithtown Bypass – 2nd Fl.<br>Hauppauge, NY 11788 | Bank Letter of Credit | | $3,000,000.00 |
| Checker Glass Corp. | Attn: Andy Sherr<br>5 Commercial Avenue<br>Garden City, NY 11530 | Sub-Contractor | | $332,074.99 |
| Cirocco & Ozzimo Inc. | Attn: Greg Ozzimo Sr.<br>125 Verdi Street | Sub-Contractor | | $146,311.25 |

---

[1] The Debtor will continue to update this information and will provide a complete List of Creditors as soon as practicable. The claims listed herein are currently under investigation and, as a result, unless otherwise indicated herein, remain contingent, unliquidated, disputed or subject to set-off.

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| | Farmingdale, NY 11735 | | | |
| Commercial Electric | Attn: Peter Blau<br>10-28 47th Avenue<br>Lic, NY 11101 | Sub-Contractor | | $313,568.94 |
| Consolidated Carpet Workroom | Attn: David Meeberg<br>455 Washington Avenue<br>Carlstadt, NJ 07072 | Sub-Contractor | | $332,069.05 |
| Cord Contracting Co. Inc. | Attn: Bill Murtha<br>213 Roslyn Road<br>Roslyn Heights, NY 11577 | Sub-Contractor | | $187,725.70 |
| Cooper Electric Supply Co. | Attn: Ed Hopkins<br>43 West 24th Street, 4th Floor<br>New York, NY 10010 | Sub-Contractor | | $173,464.89 |
| Empire Architectural Metal & Glass | 14-50 118th Street<br>College Point, NY 11356 | Sub-Contractor | | $133,011.00 |
| ESS & VEE Corp. | Attn: Anthony Verderame Sr.<br>23-30 50th Avenue<br>Lic, NY 11101 | Sub-Contractor | | $462,693.00 |
| Eurotech Construction Corp. | Attn: Christopher McGuiness<br>532 West 30th Street<br>New York, NY 10001 | Sub-Contractor | | $159,113.00 |
| George Breslaw Plumbing | Attn: Richard Breslaw<br>559 West 45th Street<br>New York, NY 10036 | Sub-Contractor | | $292,512.00 |
| Godsell Construction Corp. | Attn: Artie Godsell<br>351 Duffy Avenue<br>Hicksville, NY 11801 | Sub-Contractor | | $171,889.48 |
| HB Communications Inc. | Attn: George Bing<br>60 Dodge Avenue<br>North Haven, CT 06473 | Sub-Contractor | | $172,132.44 |
| Henick-Lane Inc. | Attn: Ernie Henick<br>45-39 Davis Street<br>Lic, NY 11101 | Sub-Contractor | | $168,693.03 |
| JT Roselle Lighting Inc. | Attn: Jim Roselle<br>84 Business Park Drive<br>Armonk, NY 10504 | Sub-Contractor | | $238,584.01 |
| Liberty Contracting Corp. | Attn: Fred Cali<br>25-31 94th Street<br>North Bergen, NJ 07047 | Sub-Contractor | | $115,241.00 |
| Linear Technologies | Attn: Peter Puleo<br>27 West 24th Street, 2nd Floor<br>New York, NY 10010 | Sub-Contractor | | $254,151.40 |
| Mac Felder | Attn: Amy Breslaw<br>610 11th Avenue<br>New York, NY 10036 | Sub-Contractor | | $240,647.00 |
| Marlin Inc. | Attn: Richard Pellino<br>352 7th Avenue, Suite 900<br>New York, NY 10001 | Sub-Contractor | | $1,028,282.01 |

2

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| Midtown Contracting Corp. | Attn: Charles Vaccaro 589 8th Avenue,17th Floor New York, NY 10018 | Sub-Contractor | | $269,910.97 |
| Metropolitan/NJS | Attn: Darren Commander 601 LeHigh Avenue Union, NJ 07083 | Sub-Contractor | | $123,845.75 |
| Nastasi & Associates, Inc. | Attn: Anthony Nastasi 500 Wheeler Avenue Hauppauge, NY 11788 | Sub-Contractor | | $436,257.90 |
| Nead Electric, Inc. | Attn: Robert Marziotto 175 Brandt Street Carlstadt, NJ 07072 | Sub-Contractor | | $247,544.00 |
| PJ Mechanical Corp. | Attn: Jamie Pappas 135 West 18th Street New York, NY 10011 | Sub-Contractor | | $387,300.00 |
| Par Plumbing Co., Inc. | Attn: Marty Levine 60 North Prospect Avenue Lynbrook, NY 11563 | Sub-Contractor | | $351,114.96 |
| Patella Woodworking Corp. | Attn: Scott Glickman 148 1st. Street Jersey City, NJ 07302 | Sub-Contractor | | $149,407.24 |
| Quantum Electric Corporation. | Attn: Gary Glass 36-24 34th Street Lic, NY 11106 | Sub-Contractor | | $276,810.00 |
| React Industries, Inc. | Attn: Jeff Platinsky 34-02 Review Avenue Lic, NY 11101 | Sub-Contractor | | $202,895.35 |
| RG Glass Creations, Inc | Attn: Ed Geyman 180 Varick Street, Suite 1218 New York, NY 10014 | Sub-Contractor | | $428,726.00 |
| Rimi Woodcraft Corp. | Attn: Anthony Rizzo 1185 Commerce Avenue Bronx, NY 10462 | Sub-Contractor | | $642,082.00 |
| Robert B. Samuels Inc. | Attn: David Samuels 253 West 35th Street, 5th Floor New York, NY 10001 | Sub-Contractor | | $2,197,067.10 |
| Rockmor Electric Enterprises | Attn: Stephen or Marty Rostowsky 1042 39th Street Brooklyn, NY 11219 | Sub-Contractor | | $697,427.54 |
| Superior Acoustics Inc | Attn: Ken McGuigan 148 Madison Avenue, Suite 600 New York, NY 10016 | Sub-Contractor | | $1,693,720.00 |
| TM & M Mechanical Corp. | Attn: John Timothy 225 W. 36th Street, 3rd Floor New York, NY 10018 | Sub-Contractor | | $136,102.50 |

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured also state value of security) |
|---|---|---|---|---|
| US Information Systems Inc. | Attn: Michael Lagana<br>35 West Jefferson Avenue<br>Pearl River, NY 10965 | Sub-Contractor | | $155,744.00 |
| Venmar- Mammoth Inc. | Attn: Douglas Ingvalson<br>13200 Pioneer Trail, Suite 150<br>Eden Prairie, MN 55347 | Sub-Contractor | | $218,500.00 |
| W5 Group LLC d/b/a Waldorf Demolition | Attn: Michael Marrone<br>2 Lombardy Street<br>Brooklyn, NY 11222 | Sub-Contractor | | $201,102.00 |
| Weinstein & Holtzman Inc. | Attn: Phil or Ira Hymowitz<br>29 Park Row<br>New York, NY 10038 | Sub-Contractor | | $145,216.90 |
| Wilkstone LLC | Attn: David Wilkinson<br>128 19th Avenue<br>Paterson, NJ 07513 | Sub-Contractor | | $282,284.00 |

# SCHEDULE 2

## LIST OF CREDITORS
## HOLDING 5 LARGEST SECURED CLAIMS[1]

The following is a list of creditors holding the 5 largest secured claims against the Debtor.  The list has been prepared in accordance with Local Bankruptcy Rule 1007-2(a)(5). The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor.

| Name of Creditor | Mailing Address | Description of Collateral Securing the Claim | Estimate of the Value of the Collateral Securing the Claim | Amount of Claim | Disputed |
|---|---|---|---|---|---|
| None. | | | | | |

---

[1]     This list reflects the latest information available to the Debtor as of the Petition Date.

## SCHEDULE 3

## DEBTOR'S BALANCE SHEET

**(as of February 16, 2011, unaudited)**

**Total Assets: $25,000,000**

**Total Liabilities: $23,000,000**

## SCHEDULE 4

## NUMBER AND CLASSES OF SHARES OF STOCK, DEBENTURES OR OTHER SECURITIES OF THE DEBTOR THAT ARE PUBLICLY HELD; THE NUMBER OF HOLDERS THEREOF

All of the Debtor's stock, consisting of 105.264 shares, is privately held.

## STOCK, DEBENTURES OR OTHER SECURITIES OF THE DEBTOR HELD BY EACH OF THE DEBTOR'S OFFICERS AND DIRECTORS, AND THE AMOUNTS SO HELD

| Officer | Percent of Holding |
|---|---|
| Janet Lazar, Corporate Secretary | 90% |
| Frederick Coffey, President | 5% |
| Todd Phillips, Executive Vice President | 5% |

# SCHEDULE 5

## DEBTOR'S PROPERTY NOT IN DEBTOR'S POSSESSION

To the extent the Debtors have paid retainers to professionals, these can be viewed within the individual professional fee applications.

| Type of Property | Value of Property | Person or Entity in Possession | Address and Telephone Number |
|---|---|---|---|
| Cash Deposit | $240.00 | Con Edison | JAF Station<br>PO Box 1702<br>New York, NY 10116 |
| Cash Deposit | $105,920.00 | Colliers International | 380 Madison Avenue<br>New York, NY 10017<br>(212) 716-3728 |

# SCHEDULE 6

## PREMISES OWNED, LEASED, OR HELD UNDER OTHER ARRANGEMENT FROM WHICH THE DEBTOR OPERATES ITS BUSINESS

### Owned Real Property

None.

### Leased Real Property

| Location of Property | Type | Lessor |
|---|---|---|
| 902 Broadway<br>New York, NY 10010 | Headquarters | Colliers International<br>380 Madison Avenue<br>New York, NY 10017 |
| 87-22 78th Street<br>Woodhaven, NY 11421 | Warehouse | Prubert LLC<br>980 Suffolk Avenue<br>Brentwood, NY 11717 |

# SCHEDULE 7

## LOCATION OF DEBTOR'S ASSETS, BOOKS AND RECORDS

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the locations of the Debtor's substantial assets and the location of its books and records.

| Location of Debtor's Substantial Assets |
| --- |
| 902 Broadway<br>New York, NY 10010 |

| Location of Debtor's Books and Records |
| --- |
| 902 Broadway<br>New York, NY 10010 |

# SCHEDULE 8

## SIGNIFICANT LITIGATION COMMENCED
## AGAINST THE DEBTOR PRIOR TO THE PETITION DATE

| Title of Action | Court | Nature of Action | Status |
|---|---|---|---|
| Chapter 11 Trustee for Dreier LLP v. Lehr Construction Corp. (In re Dreier LLP) | Bankr. S.D.N.Y. (10-04574-SMB) | Preference Action and Fraudulent Transfer (seeking to avoid and recover $199,277) | Complaint filed |

# SCHEDULE 9

## DEBTOR'S EXISTING SENIOR MANAGEMENT

| Name/Position | Summary of Responsibilities and Experience |
|---|---|
| Frederick Coffey, President | Mr. Coffey is a co-founder of the Company. Mr. Coffey has more than 35 years of industry management experience. He personally assumes hands-on management responsibility for many of the Company's largest projects. |
| Steven Halper, CFO | Mr. Halper joined the Company in 1988 and was the Controller. He was named CFO in 2006. He is responsible for all financial operations for the Company. Prior to joining the Company, Mr. Halper worked for the accounting firm of Martin Rosen and was a partner in the accounting firm of Eisner Lubin. |
| Todd R. Phillips, Executive Vice President | Mr. Phillips joined the Company in 1982 and has been active in the administrative, estimating, and construction departments. Now as a principal, he is in charge of the Company's day-to-day operations and administrative as well as contract administration. He regularly serves as principal in charge of major construction and renovation assignments. |

## SCHEDULE 10

**ESTIMATED AMOUNT OF WEEKLY PAYROLL TO EMPLOYEES
EXCLUSIVE OF OFFICERS, DIRECTORS, AND SHAREHOLDERS
FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| **Week** | **Estimated Gross Payroll** |
|---|---|
| Week ending 2/28/2011 | $430,247.78 |
| Week ending 3/7/2011 | $430,247.78 |
| Week ending 3/14/2011 | $430,247.78 |
| Week ending 3/21/2011 | $430,247.78 |

# SCHEDULE 11

## ESTIMATED AMOUNT OF WEEKLY PAYROLL
## TO OFFICERS, DIRECTORS, AND SHAREHOLDERS
## FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE

| **Week** | **Payments to Officers, Directors and Stockholders** |
|---|---|
| Week ending 2/28/2011 | $36,876.92 |
| Week ending 3/7/2011 | $36,876.92 |
| Week ending 3/14/2011 | $36,876.92 |
| Week ending 3/21/2011 | $36,876.92 |

## SCHEDULE 12

## DEBTOR'S ESTIMATED CASH DISBURSEMENTS AND RECEIPTS
## FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE

| Cash Receipts | | |
|---|---|---|
| • Accounts Receivable | | $10,898,000 |
| • Insurance Claims | | $250,000 |
| • Lien Bond Releases | | $40,000 |
| | TOTAL | **$11,188,000** |
| | | |
| Cash Disbursements | | |
| • Payroll | $1,283,000 | |
| • Rent (Headquarters and Warehouse) | $90,000 | |
| • Insurance | $300,000 | |
| • Utilities | $80,000 | |
| • Payroll Taxes | $100,000 | |
| • Misc. Equipment Leases | $50,000 | |
| • Sub-Contractors | $8,718,000 | |
| | TOTAL | **($10,621,000)** |
| | | |
| | **TOTAL** | $567,000 |