COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb
James A. Beldner
Lesley A. Kroupa

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                    :

**In re**                  :    **Chapter 11**
                    :

**LEHR CONSTRUCTION CORP.,**    :    **Case No. 11-_____ (___)**
                    :

        **Debtor.**          :
                    :
-------------------------------------------------------------- x

## MOTION FOR AN ORDER PURSUANT TO
## SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE
## (I) AUTHORIZING PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE
## BENEFITS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
## AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

       Lehr Construction Corp., as debtor and debtor in possession (the "<u>Debtor</u>"),[1] respectfully

represents:

## BACKGROUND

### General

       1.      On the date hereof (the "<u>Petition Date</u>"), the Debtor commenced with this Court a

voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

The Debtor is authorized to operate its business and manage its properties as debtor in possession

---

[1] The last four digits of the Debtor's federal tax identification number are 3507.

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

## The Debtor's Business

2.      Lehr Construction Corp., a New York corporation, was founded in 1979 and has evolved from a small entrepreneurial business to one of the most respected builders in New York. Lehr specializes in interior construction and serves clients mainly throughout the New York metropolitan area. Lehr serves as construction manager and/or general contractor for its clients and Lehr's construction professionals work closely with their in-house estimating, purchasing, quality control and value engineering professionals to ensure projects are completed on schedule, within budget, and with impeccable quality.

3.      Lehr's projects range from minor renovations to interior office build-outs over a million square feet. Lehr's broad range of clients include retail stores, financial service firms, educational organizations, entertainment and media firms, and many others.

4.      The Debtor's headquarters is located in New York, New York and it has a warehouse facility in Woodhaven, New York. The Debtor's primary assets include contract rights and accounts receivable for its on-going and completed projects.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6.      By this motion (the "Motion"), the Debtor requests, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, entry of an order authorizing, but not requiring, the Debtor to (i) pay, in its sole discretion, Wage Obligations, Expense Reimbursements, Payroll Taxes,

2

certain Severance Obligations, and Employee Benefits (each as defined below, and collectively, the "Employee Obligations"), and costs incident to the foregoing, and (ii) maintain and continue to honor its practices, programs, and policies for its employees (the "Employee Benefits") as they were in effect on the Petition Date, and as such may be modified, amended, or supplemented from time to time in the ordinary course.

7.     By this Motion, the Debtor seeks to pay amounts owed to its employees prior to the Petition Date in the aggregate amount of up to approximately $502,000, comprised of amounts owed related to Wage Obligations, the Debtor's Health and Welfare Plans, and Payroll Taxes[2].

8.     As part of its cash management system, the Debtor maintains certain accounts (the "Accounts") at the banks identified on **Exhibit A** hereto (the "Banks"). The Debtor may draw upon funds in three of its Accounts to satisfy obligations arising from the Employee Obligations and Employee Benefits. The Debtor requests that the Court authorize the Banks, or such other banks or financial institutions, as applicable, to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested, on the Accounts to the extent that such checks or electronic fund transfers relate to any Employee Obligations and Employee Benefits.

## BASIS FOR RELIEF REQUESTED

### The Debtor's Prepetition Employee Obligations

9.     In the ordinary course of its business, the Debtor incurs payroll and employee benefits obligations to its employees for the performance of services. As of the Petition Date, the Debtor employs approximately 139 individuals, of which approximately 43 are paid on an hourly

---

[2] The Debtor is not seeking authorization to satisfy any prepetition amounts owed to its Employees above the statutory cap. Section 507(a)(4) of the Bankruptcy Code provides priority status for amounts up to $11,725 per employee earned within 180 days before the filing date.

basis (the "Hourly Employees") and 96 are salaried employees (the "Salaried Employees" and, together with the Hourly Employees, the "Employees"). All of the Debtor's Hourly Employees are members of a union, including: the Mason Tenders – Local 79, the General Building Laborers' Local 66 International Union of North America, and the New Jersey Building Laborers Statewide Local 66. The Debtor is not party to any collective bargaining agreements.

10. The Debtor has incurred obligations with respect to the Employees relating to the period prior to the Petition Date. Certain of these costs and obligations are outstanding, due and payable now, while others will become due and payable in the ordinary course of the Debtor's business after the Petition Date.

11. The Debtor submits that since Debtor's business is service-oriented, any delay in the process of regular payment to Employees would cause the Debtor irreparable harm and would impair its ability to finish its outstanding projects in a timely and cost-effective manner.

### Wages and Salaries

12. Prior to the Petition Date and in the ordinary course of business, the Debtor typically paid obligations relating to wages and salaries for its Employees on a weekly basis (the "Wage Obligations"), through direct deposits to Employees or by check delivered to particular Employees. Approximately 80 percent of the Debtor's employees receive payment by direct deposit, while the remaining 20 percent receive a check from the Debtor. Wage Obligations are processed weekly. The Debtor's current weekly gross payroll for its Employees is approximately $466,900, of which approximately $326,830 is paid to Salaried Employees and approximately $140,070 is paid to Hourly Employees.

13. In addition to traditional wage obligations, the Debtor provides various incentives to its employees, including tuition reimbursement of up to fifty percent (50%) of the cost of the course per employee per year for its full time Employees and car and communications

4

allowances, the amounts of which vary depending on the employee, but which do not exceed an aggregate amount of approximately $3,850 per month for certain of its employees based on travel requirements.

14. The Debtor's payroll compensates Employees for work already performed. Thus, when Employees receive their payroll check or direct deposit, those Employees have accrued an additional two days' worth of compensation, which is payable in the next pay period. On or about February 16, 2011, the Debtor funded payroll for the weekly pay period ending February 14, 2011. Because its Employees are paid in arrears, the Debtor has accrued outstanding Wage Obligations aggregating approximately $466,900.

15. Compupay manages the payment of the Debtor's Wage Obligations (defined below). Compupay calculates the funds needed to satisfy any outstanding Wage Obligations. To pay the Wage Obligations, Compupay withdraws the funds from the Debtor's operating account and then remits the funds to the Employees.

16. The Debtor pays a monthly administrative fee to Compupay for these services. The Debtor requires Compupay's continued services in satisfying Wage Obligations for its Employees. As of the Petition Date, the Debtor estimates that approximately $2,400 in fees to Compupay are outstanding, or accrued and unpaid.

**Garnishments and Payroll Taxes**

17. In the ordinary course of processing payroll checks for its Employees, the Debtor withholds certain amounts for various garnishments (such as tax levies, child support, any other court-ordered garnishments and 401(k) loans). For each weekly payroll period, the Debtor garnishes an aggregate amount of approximately $2,000. As Compupay processes the garnishments on a weekly basis in connection with processing the Debtor's Wage Obligations,

any amounts owed on account of garnishments are included, on a net basis, in amounts owed on account of Wage Obligations.

18.     The Debtor is also required by law to withhold from its Employees' wages amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes (collectively, the "<u>Withholding Taxes</u>") and to remit the same to the appropriate taxing authorities (collectively, the "<u>Taxing Authorities</u>").  In addition, the Debtor is required to make matching payments from its own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "<u>Employer Payroll Taxes</u>" and, together with the Withholding Taxes, the "<u>Payroll Taxes</u>"). The Debtor believes it has no accrued liability for Payroll Taxes as of the Petition Date.

19.     Compupay calculates the funds needed to satisfy any outstanding Payroll Taxes. To pay the Payroll Taxes, Compupay withdraws the funds from the Debtor's operating account and then remits the funds to the applicable Taxing Authorities on a weekly basis.

20.     The administrative fee paid to Compupay in connection with its services related to the Wage Obligations includes fees owed by the Debtor in connection with Compupay's services in satisfying Payroll Taxes for the Debtor's Employees.

**Reimbursement Expenses**

21.     The Debtor's Employees incur various expenses in the discharge of their ordinary duties, such as travel and meal expenses.  Because these expenses are incurred as part of their official duties and in furtherance of the Debtor's business, the Employees are reimbursed in full (the "<u>Expense Reimbursements</u>") after submission of appropriate documentation to the Debtor's

accounting department. A majority of Expense Reimbursements are travel-related expenses. Expenses are reimbursed in every pay cycle.

22. Expense Reimbursements average approximately $30,000 per month. It is difficult for the Debtor to estimate the amount of Expense Reimbursements currently outstanding with any accuracy at this time. However, Employees have likely incurred expenses prior to the Petition Date but may have not submitted requests for reimbursement of such expenses prior to the Petition Date.

<u>**Severance**</u>

23. While the Debtor does not have a formal severance policy for its Employees, the Debtor has historically observed a severance program for its Salaried Employees whereby Salaried Employees who have been employed by the Debtor for more than one year are entitled to receive severance pay equal to two weeks pay (the "<u>Severance Program</u>"). To receive severance payments under the Severance Programs, a Salaried Employee must, *inter alia*, return any of the Debtor's property in his or her possession.

24. As of the Petition Date, there are no amounts outstanding on account of accrued and unpaid obligations under the Severance Programs to Employees terminated pre-petition (the "<u>Severance Obligations</u>").

<u>**Employee Benefits Plans**</u>

25. In the ordinary course of business, the Debtor has established various benefit plans and policies for its Employees that can be divided into the following categories: (i) paid time-off plans, including vacation days, sick days, and personal days (collectively, the "<u>PTO Plans</u>"), (ii) medical insurance (including prescription drug coverage), life insurance, AD&D insurance, disability insurance, and flexible spending plans (collectively, the "<u>Health and Welfare Plans</u>"), and (iii) a 401(k) plan (the "<u>401(k) Plan</u>," together with the PTO Plans, Health

and Welfare Plans, and the 401(k) Plan, the "Employee Benefits").  The Debtor directly deducts specified amounts from certain Employees' wages in connection with certain of the Employee Benefits, such as medical insurance and 401(k) Plan contributions.

(i)     Paid Time-Off Benefits

26.     Under the PTO Plans, eligible Employees may receive their full wages for, among other things, vacation, personal days, and sick days.  Employees who have completed 30 days of employment become eligible under the PTO Plans if they are scheduled to work at least 40 hours per week on a regular full-time basis[3].

27.     Under the PTO Plans, eligible Employees receive a fixed number of days off at the beginning of each calendar year, which varies based upon the number of years of service provided by each Employee.  Time under the PTO Plans accrues on January 1st of each year.  Such time-off may be used, generally, at the Employee's discretion but subject to supervisor approval for vacation or personal days.  Employees are paid for any unused paid time-off days, if accrued, upon termination.  In addition, Employees are permitted to take approximately nine paid holidays during each year.  As of the Petition Date, there are no amounts outstanding in connection with the PTO Plans.

(ii)    Health and Welfare Plans

28.     The Debtor sponsors several Health and Welfare Plans to provide benefits to full-time Employees, including, without limitation, (i) medical, (ii) life, accidental death, and dismemberment ("AD&D"), (iii) short- and long-term disability insurance, and (iv) flexible spending programs for medical and dependent care benefits.

---

[3] Full-time Employees are those who work at least 40 hours per week.

29.     The Debtor employs Meritain Health ("<u>Meritain</u>") as its benefits consultant and broker. Meritain assists the Debtor with (i) designing the Health and Welfare Plans to meet the needs of the Debtor's Employees, (ii) negotiating the Health and Welfare Plans with the respective providers thereof, and (iii) managing the costs associated with the Health and Welfare Plans. Amounts paid to Meritain are included in the monthly payments to the various Health and Welfare Plan providers.

(a)     *Medical and Other Health Plans*

30.     The Debtor offers various health benefits to eligible Employees, including, among others, medical, prescription drug, hospital care, emergency care, preventative care, medical care, outpatient care, rehabilitation services, mental health coverage, home health care and nursing facility or hospice care. The medical coverage, which includes prescription drug coverage (the "<u>Medical Plans</u>"), is a self-insured plan administered by Private Healthcare Systems ("<u>PHCS</u>"). Generally, the Debtor pays approximately 95% percent of the combined cost of medical health insurance and prescription drug coverage for each eligible Employee. The Debtor withholds from eligible Employees' wages amounts related to the Medical Plans and remits the same to the medical health care plan providers.

31.     The Debtor also offers COBRA benefits to its terminated Employees. The Debtor's monthly payments to Meritain include payment to Meritain for administering the Debtor's COBRA obligations. As of the Petition Date, there are no amounts outstanding with respect to the Debtor's COBRA obligations.

(b)     *Life and AD&D Insurance*

32.     The Debtor maintains basic life and additional insurance coverage for all full-time Employees in the event of serious illness, injury or death. The Debtor pays the full premium cost of the basic life insurance and AD&D plans. The Debtor's life insurance and AD&D plans are

maintained under the same insurance policy, provided by Aetna Insurance Company ("Aetna"), as well as supplemental voluntary life insurance and AD&D plans for those eligible Employees with a need for a higher level of protection than afforded under the basic life insurance plan. Under the basic life insurance plans, in the event of an Employee's death, an Employee's designee is entitled to receive either one (1) or two (2) times the Employee's annual base salary, up to a maximum of $500,000. The spouses and children of Employees are not covered under the basic life insurance plan. Under the AD&D plan, depending upon the type and severity of an injury, an eligible Employee or an Employee's designee (as applicable) may receive an amount equal to two (2) times the amount they are entitled to receive under the basic life insurance plan.

(c)     *Disability Benefits*

33.     Both short- and long-term disability plans are made available to full-time Employees. An Employee is eligible to receive (i) short-term disability benefits if the Employee has been disabled for more than seven consecutive days and (ii) long-term disability benefits if the Employee has been on short-term disability for 90 days. Under the short-term disability plan, eligible Employees receive $170 per week. Under the long-term disability plan, eligible Employees receive 60 percent of their base salary, up to a maximum of $10,000 per month for eligible Employees. The short-term disability plan is a statutory New York State benefit provided through the National Benefit Life Insurance Company and the long-term disability plan is provided by Reliance Standard ("Reliance").

(d)     *Flexible Spending Programs for Medical and Dependent Care, Parking, and Transit Costs*

34.     The Debtor offers full-time Employees a flexible spending program to be used for health care costs as well as parking and transit costs (the "Flexible Spending Programs"). Funds

contributed by eligible Employees under the Flexible Spending Programs are remitted by the Debtor to WageWorks to be held in trust for the benefit of the eligible Employees.

35. The Flexible Spending Programs allow Employees to contribute up to $10,000 per year of pre-tax income through payroll deductions to be used for out-of-pocket medical, parking and transit expenses, and up to $5,000 per year for child-care or elder-care expenses. WageWorks administers the Flexible Spending Programs on the Debtor's behalf and directly pays eligible Employees the portion of their pre-tax contributions related to eligible expenses incurred under these programs.

36. Because of the manner in which expenses are incurred and claims are processed under the Health and Welfare Plans, it is difficult for the Debtor to determine with any certainty the aggregate amount of accrued and unpaid obligations under the Health and Welfare Plans that are outstanding at any particular time. To the Debtor's knowledge, there are no amounts outstanding as of the Petition Date with respect to the Debtor's Health and Welfare Plans.

(iii)    401(k) Plan

37. The Debtor sponsors a retirement investment plan and withholds from the wages of participating Employees contributions toward the 401(k) Plan. Certain Employees are eligible to participate in the 401(k) Plan if they have: (i) completed at least 6 months of service with the Debtor, and (ii) reached the age of 21. At the six month period, the Employee is eligible to start accruing matching contributions from the Debtor. Prior to the Petition Date, the Debtor matched up to 35% of an Employee's contribution toward his or her 401(k) Plan. Such matching contributions are paid by the Debtor as of December 31st of each year.

38. The 401(k) Plan is held in a trust maintained by MGE Trust, as trustee, and administered by Redwood Administrators. Eligible Employee contributions accrue, and are drawn by National Financial Services, from the Debtor's Accounts. National Financial Services

is paid an annual fee for its services, and Redwood Administrators is paid a quarterly fee for its services. As of the Petition Date, the Debtor estimates that there are no outstanding amounts owed for services related to the 401(k) Plan.

### Cause Exists to Authorize Payment to the Debtor's Employees

39. Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims against the Debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $11,725 per individual. Similarly, section 507(a)(5) of the Bankruptcy Code provides that Employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status to the extent of $11,725 per Employee covered by such plan, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code.

40. The Debtor believes that substantially all, if not all, of the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtor may be satisfied. Accordingly, the relief requested may affect only the timing of the payment of these priority obligations, and will not prejudice the rights of general unsecured creditors or other parties in interest.

41. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to

the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

42.     Furthermore, section 363(b)(1) of the Bankruptcy Code provides, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

43.     Any delay or failure to pay wages, salaries, benefits, severance and other similar items would irreparably impair the Employees' morale, dedication, confidence, and cooperation, and would adversely impact the Debtor's relationship with its Employees at a time when the Employees' support is critical to the Debtor's completion of its existing projects and to an orderly wind-down of the Debtor's business.  At this early stage, the Debtor simply cannot risk the substantial damage to its business that would inevitably attend any decline in their Employees' morale.

44.     Absent an order granting the relief requested herein, the Employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtor will be undermined, perhaps irreparably, by the distinct possibility that otherwise loyal Employees will seek other employment alternatives.  In addition, it would be inequitable to require the Debtor's Employees to bear personally the cost of any business expenses they incurred prepetition for the benefit of the Debtor, with the understanding that they would be reimbursed.

45.     Moreover, the continuation of the Severance Programs offers financial protection and support for employees who have been displaced due to business circumstances. Cessation of severance payments to the former employees may result in lower morale and loyalty among the

remaining Employees – many of whom have developed strong and lasting relationships with those who have been terminated – and cause those remaining Employees to devote less care and attention to their duties, or lead them to seek other employment. This would severely hinder the Debtor's ability to complete its outstanding obligations to its clients.

46.     With respect to Payroll Taxes in particular, the payment of such taxes will not prejudice other creditors of the Debtor's estate, as the relevant Taxing Authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to such obligations.  Moreover, the portion of the Payroll Taxes withheld from an Employee's wages on behalf of the applicable Taxing Authority is held in trust by the Debtor.  As such, these Payroll Taxes are not property of the Debtor's estate under section 541 of the Bankruptcy Code. See, e.g., Begier v. IRS, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).

47.     In addition, the Debtor believes it is necessary to continue payment of administrative fees to the administrators of the Debtor's Employee Obligations and the administrators of programs related to Employee Benefits.  Without the continued services of these administrators, the Debtor would be unable to continue to honor its Wage Obligations and Employee Benefits obligations in an efficient and cost-effective manner.

48.     The Debtor does not seek to alter any of its Employee Benefits at this time.  This Motion is intended only to permit the Debtor, in its discretion, to make payments consistent with the Debtor's existing policies to the extent that, without the benefit of an order approving this Motion, such payments may be inconsistent with the relevant provisions of the Bankruptcy Code, and to permit the Debtor, in its discretion, to continue to honor its practices, programs, and policies with respect to its Employees, as such practices, programs, and policies were in effect as

1698658 v4/NY

of the Petition Date. Payment of all Employee Obligations in accordance with the Debtor's prepetition business practices is in the best interests of the Debtor's estate, its creditors, and all parties in interest and will enable the Debtor to continue to operate its business in an economic and efficient manner without disruption. As explained more fully above, the Debtor's Employees are central to its operations as a service-oriented business and are vital to this chapter 11 case. A significant deterioration in employee morale at this critical time undoubtedly would have a devastating impact on the Debtor, its clients and vendors, the value of the Debtor's assets and business, and the Debtor's ability to continue operations. The total amount sought to be paid herein is relatively modest compared with the size of the Debtor's overall business and the importance of the Employees to the Debtor's chapter 11 case.

49. In other chapter 11 cases, courts in this District have approved payment of prepetition claims for compensation and benefits similar to those described herein.[4] See, e.g., In re Uno Restaurant Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010); In re Finlay Enterprises, Inc., Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 3, 2009); In re General Motors Corp., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009); In re U.S. Shipping Partners L.P., Case No. 09-12711 (RDD) (Bankr. S.D.N.Y. Apr. 30, 2009); In re General Growth Properties, Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 11, 2009); In re Bearing Point, Inc., Case No. 09-10691 (REG) (Bankr. S.D.N.Y. March 13, 2009); In re Tronox Inc., et al., Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Jan. 13 and Feb. 6, 2009); In re Lyondell Chemical Co., et al., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 9 and 26, 2009); In re Lenox Sales, Inc., et al., Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. 2008); In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579  (ALG) (Bankr. S.D.N.Y. 2008); In re

---

[4] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion. Copies of these orders are available upon request of Debtor's counsel.

<u>Lexington Precision, *et al.*</u>, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. 2008); <u>In re PRC, LLC,</u> <u>*et. al.*</u>, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. 2008); <u>In re Silicon Graphics, Inc., *et al.*</u>, Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. 2006).

50.     Accordingly, by this Motion, the Debtor seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code to pay Employee Obligations as they become due and owing during the pendency of this case and to continue, uninterrupted, its practices, programs and policies with respect to its Employees, as such practices, programs, and policies were in effect as of the Petition Date.

51.     Furthermore, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay Employee Obligations

52.     The Debtor further requests that the Court authorize the applicable Banks, identified on <u>Exhibit A</u> annexed hereto, to receive, process, honor, and pay all prepetition and postpetition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations.  The Debtor also seeks authority to issue new postpetition checks, or effect new electronic fund transfers, on account of the Employee Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

53.     As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers and direct deposit transfers in respect of the Employee Obligations may be dishonored or rejected by the Banks.

16

54.     The Debtor represents that each of these checks or transfers is or will be drawn on specific Accounts that can be readily identified as relating directly to payment of Employee Obligations.  Accordingly, the Debtor believes that prepetition checks and transfers other than those for Employee Obligations will not be honored inadvertently.

55.     Authorization to pay all amounts on account of Employee Obligations shall not be deemed to constitute postpetition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay all amounts on account of Employee Obligations shall not affect the Debtor's right to contest the amount or validity of any such claims, including without limitation, the Payroll Taxes that may be due to any Taxing Authority.

## NOTICE

56.     The Debtor has served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) the entities listed on the Consolidated List of Creditors Holding the 40 Largest Unsecured Claims, (iii) the Internal Revenue Service, and (iv) the Banks listed on Exhibit A hereto.  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that further notice of this Motion is neither required nor necessary.

57.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

1698658 v4/NY

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: February 21, 2011
      New York, New York

Respectfully submitted,

By:     /s/ James A. Beldner
        James A. Beldner

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb (LG 2565)
James A. Beldner (JB 7166)
Lesley A. Kroupa (LK 2620)

Proposed Attorneys for Debtor and Debtor in Possession

18

# EXHIBIT A

# BANK ACCOUNTS

| Bank Name and Address | Account Description | Account No. |
|---|---|---|
| **Capital One N.A.**<br>**99 Smithtown Bypass**<br>**Hauppauge, NY 11788** | Lehr Operating | xxxxxxxx72 |
| | Lehr Operating 2 | xxxxxxxx67 |
| | Sullivan & Cromwell | xxxxxxxx98 |
| | Fidelity | xxxxxxxx06 |
| | Strand | xxxxxxxx14 |
| | CBS/CRG | xxxxxxxx22 |
| | Covington & Burling | xxxxxxxx30 |
| | Google | xxxxxxxx48 |
| | Amalgamated, Unite Here, Makor | xxxxxxxx55 |
| | Kramer Levin | xxxxxxxx63 |
| | Renaissance Technologies | xxxxxxxx71 |
| | Goldman Sachs/AT&T | xxxxxxxx66 |
| | The Limited | xxxxxxxx54 |
| | Carpenters | xxxxxxxx97 |
| | Viacom/MTV | xxxxxxxx12 |
| | Goldman NY | xxxxxxxx52 |
| | Warburg Pincus | xxxxxxxx94 |
| | Economist | xxxxxxxx54 |
| | Payroll (II) | xxxxxxxx60 |
| | Flexplan (checking)<br>(Smartflex) | xxxxxxxx89 |
| | Money Market | xxxxxxxx05 |
| | Reimburseables | xxxxxxxxx43 |
| **HSBC Bank USA, N.A.**<br>**145 Fifth Avenue**<br>**New York, NY 10010**<br>**212-375-1273** | Project Related | xxx-xxxx7-1 |
| **Citibank**<br>**100 Citibank Drive**<br>**San Antonio, TX 78245-3214** | Project Related | xxx-xxxxx88 |
| **JP Morgan Chase Bank, N.A.**<br>**P.O. Box 659754**<br>**San Antonio, TX 78265-9754** | Project Related | xx-xxxx-x64 |
| **Gotham**<br>**1412 Broadway**<br>**New York, NY 10018**<br>**212-944-2599** | Employee Medical Benefits | xxx-xxx-73 |
| **Amalgamated Bank**<br>**52 Broadway**<br>**New York, NY 10004**<br>**212-894-3000** | Project Related | xxxxxxx48 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
                       :

In re                          :    **Chapter 11**
                       :

**Lehr Construction Corp.,**     :    **Case No. 11-_____ (___)**
                       :

      **Debtor.**           :
                       :

-------------------------------------------------------------- x

### INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon the motion, dated February 21, 2011 (the "Motion"),[1] of Lehr Construction Corp., as debtor and debtor in possession (the "Debtor"),[2] for an order pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing payment of wages, compensation, certain severance, and employee benefits and (ii) authorizing the banks identified in **Exhibit A** (the "Banks") to honor and process checks and electronic funds transfers related to such obligations, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion appearing adequate and appropriate under the circumstances, and

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

[2] The last four digits of the Debtor's federal tax identification number are 3507.

it appearing that no other or further notice need be provided; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtor, its creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY

ORDERED that the Motion is granted to the extent provided herein on an interim basis; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized, but not required, to satisfy certain prepetition Employee Obligations (as defined below) without further Order of the Court, and in accordance with the Debtor's stated policies, including, without limitation, all obligations with respect to (i) wages and salaries, (ii) payroll taxes, social security taxes, Medicare taxes, (iii) paid time-off benefits, health and welfare benefit plans, (iv) savings plans, (v) business expense reimbursements, (vi) severance obligations (up to the statutory priority cap), (vii) other employee benefit programs, and (viii) all obligations with respect to insurance policies and coverage related to the foregoing (collectively, the "Employee Obligations"); and it is further

ORDERED that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized, but not required, to pay its Employees amounts owed prior to the Petition Date related to Wage Obligations, Severance Obligations, and Expense Reimbursements up to the statutory cap in the aggregate; and it is further

ORDERED that the Debtor is authorized, but not required, to continue to honor its practices, programs, and policies with respect to its employees as such practices, programs, and

policies were in effect as of the Petition Date, including, but not limited to the Employee Obligations; and it is further

ORDERED that the Debtor is authorized, but not required, to pay costs and expenses incidental to the payment of the Employee Obligations, including all administration and processing costs and payments to outside professionals or independent contractors, in the ordinary course of business, in order to facilitate the administration and maintenance of the Debtor's programs and policies related to the Employee Obligations; and it is further

ORDERED that nothing in this Order nor any action taken by the Debtor in furtherance of the implementation hereof shall be deemed an approval of the assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order shall impair the ability of the Debtor or appropriate party in interest to contest any claim of any creditor pursuant to applicable law or otherwise dispute, contest, setoff, or recoup any claim, or assert any rights, claims or defenses related thereto; and it is further

ORDERED that each Bank and all other applicable banks or financial institutions are authorized, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay all checks drawn on or direct deposit and funds transfer instructions relating to the Debtor's Accounts and any other transfers that are related to Employee Obligations, and the costs and expenses incident thereto; provided, however, that sufficient funds are available in the Accounts to make such payments; provided, further, that any such bank or financial institution may rely on the representations of the Debtor regarding which checks that were drawn or instructions that were issued by the Debtor before the Petition Date should be honored

postpetition pursuant to an order of this Court and that any such bank or financial institution shall not have any liability to any party for relying on the representations of the Debtor as provided herein; and it is further

ORDERED that the Debtor is authorized (consistent with this Order) to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests related to Employee Obligations to the extent that such checks or transfers have been dishonored or rejected as a consequence of the commencement of the Debtor's chapter 11 case; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order; and it is further

ORDERED that a final hearing on the relief requested in the Motion shall be scheduled for _____, 2011 at ___:___ __.m. (prevailing Eastern time); and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion.


Dated: _____, 2011
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

1698658 v4/NY

# EXHIBIT A

# BANK ACCOUNTS

| Bank Name and Address | Account Description | Account No. |
|---|---|---|
| **Capital One N.A.**<br>**99 Smithtown Bypass**<br>**Hauppauge, NY 11788** | Lehr Operating | xxxxxxxx72 |
| | Lehr Operating 2 | xxxxxxxx67 |
| | Sullivan & Cromwell | xxxxxxxx98 |
| | Fidelity | xxxxxxxx06 |
| | Strand | xxxxxxxx14 |
| | CBS/CRG | xxxxxxxx22 |
| | Covington & Burling | xxxxxxxx30 |
| | Google | xxxxxxxx48 |
| | Amalgamated, Unite Here, Makor | xxxxxxxx55 |
| | Kramer Levin | xxxxxxxx63 |
| | Renaissance Technologies | xxxxxxxx71 |
| | Goldman Sachs/AT&T | xxxxxxxx66 |
| | The Limited | xxxxxxxx54 |
| | Carpenters | xxxxxxxx97 |
| | Viacom/MTV | xxxxxxxx12 |
| | Goldman NY | xxxxxxxx52 |
| | Warburg Pincus | xxxxxxxx94 |
| | Economist | xxxxxxxx54 |
| | Payroll (II) | xxxxxxxx60 |
| | Flexplan (checking)<br>(Smartflex) | xxxxxxxx89 |
| | Money Market | xxxxxxxx05 |
| | Reimburseables | xxxxxxxx43 |
| **HSBC Bank USA, N.A.**<br>**145 Fifth Avenue**<br>**New York, NY 10010**<br>**212-375-1273** | Project Related | xxx-xxxx7-1 |
| **Citibank**<br>**100 Citibank Drive**<br>**San Antonio, TX 78245-3214** | Project Related | xxx-xxxxx88 |
| **JP Morgan Chase Bank, N.A.**<br>**P.O. Box 659754**<br>**San Antonio, TX 78265-9754** | Project Related | xx-xxxx-x64 |
| **Gotham**<br>**1412 Broadway**<br>**New York, NY 10018**<br>**212-944-2599** | Employee Medical Benefits | xxx-xxx-73 |
| **Amalgamated Bank**<br>**52 Broadway**<br>**New York, NY 10004**<br>**212-894-3000** | Project Related | xxxxxxx48 |