COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb
James A. Beldner
Lesley A. Kroupa

Proposed Attorneys for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
                                                          :
In re                                                     :        Chapter 11
                                                          :
LEHR CONSTRUCTION CORP.,                                  :        Case No. 11-10723 (SHL)
                                                          :
            Debtor.                                       :
                                                          :
                                                          :
-------------------------------------------------------- x
```

## NOTICE OF DEBTOR'S <u>EMERGENCY</u> MOTION AND MEMORANDUM OF LAW FOR INTERIM AND FINAL (I) APPROVAL OF POSTPETITION FINANCING, (II) AUTHORITY TO USE CASH COLLATERAL, (III) GRANTING OF CERTAIN LIENS, (IV) GRANTING ADEQUATE PROTECTION, <u>AND (V) MODIFYING AUTOMATIC STAY</u>

**PLEASE TAKE NOTICE** that a hearing on the above referenced motion (the "<u>Motion</u>") dated March 16, 2011 of Lehr Construction Corp., the debtor and debtor in possession (the "<u>Debtor</u>"), for an interim order approving postpetition financing and use of cash collateral, and certain related relief, all as more fully set forth in the Motion, shall be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in Room 723 of the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), One Bowling Green, New York, New York 10004, on **March 18, 2011 at 10 a.m. (Prevailing**

**Eastern Time)** (the "Hearing Date").

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system and (b) by all other parties in interest on a 3.5 inch disk, compact disc, or flash drive, preferably in WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers of the Honorable Sean H. Lane) and served upon: (i) the Debtor, Lehr Construction Corp. (Attn: Frederick Coffey); (ii) attorneys to the Debtor, Cooley LLP (Attn: James A. Beldner, Esq.); (iii) the Office of the United States Trustee for the Southern District of New York (Attn: Susan Golden, Esq.), and (iv) Klestadt & Winters LLP, proposed counsel to the Committee (Attn: Tracy Klestadt, Esq.), in each case so as **to be received no later than 6:00 p.m. on March 17, 2011 (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the Motion, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

2

**PLEASE TAKE FURTHER NOTICE** that a final hearing regarding the requested relief in the Motion shall be set by the Court and notice of such hearing date and objection deadline shall be provided by the Debtor.

Dated: March 16, 2011
New York, New York

By: /s/ James A. Beldner
James A. Beldner

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb
James A. Beldner
Lesley A. Kroupa

*Proposed Attorneys for Debtor and
Debtor in Possession*

1705884 v2/NY

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb
James A. Beldner
Lesley A. Kroupa

Proposed Attorneys for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                           :
In re                                  :      Chapter 11
                                             :
LEHR CONSTRUCTION CORP.,         :
                                             :      Case No. 11-10723 (SHL)
                 Debtor.                :
                                             :
                                             :
-------------------------------------------------------------- x

**DEBTOR'S EMERGENCY MOTION AND MEMORANDUM OF LAW FOR INTERIM
AND FINAL (I) APPROVAL OF POSTPETITION FINANCING, (II) AUTHORITY TO
USE CASH COLLATERAL, (III) GRANTING OF CERTAIN LIENS, (IV) GRANTING
ADEQUATE PROTECTION, AND (V) MODIFYING AUTOMATIC STAY**

        Lehr Construction Corp., as debtor and debtor in possession (the "<u>Debtor</u>" or "<u>Lehr</u>"),[1]

respectfully represents:

## I. <u>BANKRUPTCY RULE 4001 CONCISE STATEMENT</u>[2]

        1.       By this motion, the Debtor requests entry of interim and final orders (collectively,

the "<u>DIP Order</u>") granting (i) authorization to obtain postpetition financing pursuant to

sections 105(a), 361, 362, 363, 364 and 507 of chapter 11 of title 11 of the United States Code

(as amended, the "<u>Bankruptcy Code</u>") and Rule 4001 of the Federal Rules of Bankruptcy

---

[1]       The last four digits of the Debtor's federal tax identification number are 3507.

[2]       Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the DIP Loan or
        the DIP Order, as applicable.

Procedure (the "Bankruptcy Rules"), (ii) approval to use cash collateral pursuant to section 363 of the Bankruptcy Code and (iii) authorization to grant adequate protection pursuant to sections 361, 363(e), 364(c) and 507 of the Bankruptcy Code to the Debtor's prepetition secured lender (collectively, the "DIP Financing"). Pending a final hearing (the "Final Hearing") on this motion, the DIP Loan will be implemented on an interim basis, pursuant to the terms of the Dip Order, attached hereto as **Exhibit A**, as approved by this Court.

2.     Material provisions of the DIP Financing are set out at the following sections of the DIP Agreement and, as applicable, the DIP Order:

(a)     <u>Borrowing Limit</u>: $1 million

(b)     <u>Interest Rate</u>: 6% per annum, increasing to 8% upon Event of Default until such Event of Default is cured or waived.

(c)     <u>Maturity Date</u>:  The later of (i) September 30, 2011 and (ii) the date of entry of an order by this Court confirming any plan of liquidation filed by the Debtor.

(d)     <u>Events of Default</u>:  Customary for postpetition financing arrangements in chapter 11 case.

(e)     <u>Liens</u>:

(i)     DIP Liens on the Collateral pursuant to section 364(c)(3) of the Bankruptcy Code, as described in the DIP Loan and Security Agreement; <u>provided</u>, <u>however</u> that the DIP Liens shall not be satisfied from proceeds of actions arising under chapter 5 of the Bankruptcy Code (except section 549 of the Bankruptcy Code); <u>provided</u>, <u>further</u>, that the DIP Liens shall be subordinate in all respects to the liens currently held by the Prepetition Lender.

(ii)     <u>Carve-Out</u>: accrued and unpaid fees and expenses, pursuant to the Budget, through delivery of Carve-Out Notice (as defined in DIP Order)

(f)     <u>Fees</u>:  There are **no fees** associated with the DIP Financing.

3.     In addition, the relevant provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi) are set out at the following sections of the DIP Agreement and the DIP Order:

(a)     ***Grant of Priority or a Lien on Property of the Estate*** (DIP Order, ¶ 4);

(b)     ***Adequate Protection or Priority for a Claim That Arose Before the Commencement of the Case*** (DIP Order, ¶ 8(g));

(c)     ***Determination of the Validity, Enforceability, Priority or Amount of a Claim That Arose Before the Commencement of the Case*** (DIP Order ¶ E(ii));

(d)     ***Roll-Up*** (Not applicable);

(e)     ***Waiver or Modification of the Automatic Stay*** (DIP Order, ¶13);

(f)     ***Waiver or Modification of Authority to File a Plan, Seek an Extension of Time in Which the Debtor has the Exclusive Right to File a Plan, Request Use of Cash Collateral, or Request Authority to Obtain Credit*** (Not Applicable);

(g)     ***Establishment of Deadlines for Filing a Plan, for Approval of a Disclosure Statement, for a Hearing on Confirmation, or for Entry of a Confirmation Order*** (Not Applicable);

(h)     ***Release, Waiver or Limitation on any Claim or Cause of Action Belonging to the Estate*** (DIP Order, ¶6); or

(i)     ***Release, Waiver or Limitation on Rights under Section 506(c)*** (DIP Order, ¶7).

## II.     <u>BACKGROUND</u>

**A.     General**

4.     On February 21, 2011 (the "<u>Petition Date</u>"), the Debtor commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtor is authorized to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

1705884 v2/NY

5.     On March 11, 2011, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee").

6.     Lehr Construction Corp., a New York corporation, was founded in 1979 and has evolved from a small entrepreneurial business to one of the most respected builders in New York.  Lehr specializes in interior construction and serves clients mainly throughout the New York metropolitan area.  Lehr serves as construction manager and/or general contractor for its clients and Lehr's construction professionals work closely with their in-house estimating, purchasing, quality control and value engineering professionals to ensure projects are completed on schedule, within budget, and with impeccable quality.

7.     Lehr's projects range from minor renovations to interior office build-outs over a million square feet.  Lehr's broad range of clients include retail stores, financial service firms, educational organizations, entertainment and media firms, and many others.

8.     The Debtor's headquarters is located in New York, New York and it has a warehouse facility in Woodhaven, New York.  The Debtor's primary assets include contract rights and accounts receivable for its on-going and completed projects.

9.     Due to business exigencies described more fully below and in the *Declaration of Frederick Coffey* (attached hereto as **Exhibit B**), Lehr has a need to obtain credit and use Cash Collateral (defined below) to sustain its ongoing business operations and existence, to allow it to maintain business relationships and confidence with vendors, suppliers, and clients to satisfy working capital and other operational needs.

10.     Absent immediate access to the DIP Loan (defined below) and use of the Cash Collateral of its Prepetition Lender (defined below), Lehr would likely have to shut down suddenly, which would cause significant harm to creditors, employees, and other parties in

4

interest and which would materially impair the ability of Lehr to complete its outstanding construction obligations. Lehr's Prepetition Lender and the proposed DIP Lender have worked with Lehr to provide it with access to needed liquidity while providing necessary and appropriate protections to the interests of the secured creditors whose collateral will be used to support Lehr's continued operations and to conduct this case. Approval of the proposed DIP Loan is urgently needed.

**B.  The Debtor's Prepetition Debt Structure**

11.    The Debtor is a party to that certain Irrevocable Standby Letter of Credit Number 30002626 dated May 5, 2010 (the "<u>Prepetition Letter of Credit</u>") from Capital One Bank (the "<u>Prepetition Lender</u>") for the benefit of NBA Properties Inc. (the "<u>NBA</u>").   The Prepetition Letter of Credit is required by the NBA in connection with a construction project being completed by the Debtor for the NBA scheduled for completion in June 2011.  The Prepetition Letter of Credit provides for a line of credit of up to an aggregate principal amount of $3,000,000.   The Prepetition Letter of Credit expires on the earlier of (i) the completion of Lehr's construction project for the NBA and (ii) November 30, 2011.  The Prepetition Letter of Credit automatically renews for additional one year periods absent a sixty day termination notice from Capital One Bank.  As of the date hereof, no draws have been made on the Prepetition Letter of Credit. The Prepetition Letter of Credit is secured by security interests in and liens on substantially all of the Debtor's assets (the "<u>Collateral</u>"), as evidenced by that certain UCC fixture filing recorded as Document ID 200609015861205 on September 1, 2006 that encumbers substantially all of the Debtor's property (the "<u>Fixture Filing</u>") (attached hereto as **<u>Exhibit C</u>**).

5

### III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

13.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 361, 362, 363, 364 and 507.

### IV.    RELIEF REQUESTED

14.    By this motion, the Debtor requests authorization from the Court to obtain postpetition financing up to the principal amount of $1 million (the "DIP Loan") from Gerald Lazar, an individual and chairman of the Debtor's board of directors, as lender ("Lazar" or the "DIP Lender"), pursuant to the terms of this motion, the DIP Order and that certain proposed DIP Note (collectively, the "DIP Agreement").

15.    The proposed financing will be provided by Lazar, a principal of the Debtor. There are no fees payable to Lazar under the terms and conditions of the proposed financing. The proposed financing will be subordinate to all obligations under the existing Prepetition Letter of Credit and all related obligations.  As such, the liens created under the DIP Loan are subordinate liens with respect to liens currently held by the Prepetition Lender.

### V.    Debtor's Proposed Postpetition Financing

#### A.    Need for Postpetition Financing

16.    As described more fully in the Coffey Declaration, the Debtor has faced a number of challenges which together have had a negative impact on its overall financial performance. Over the last two years, the decline in the real estate market and the tightening of the credit markets have had a significant adverse impact on the real estate market in general, and the interior construction and renovation business in particular. Additionally, the Debtor recently has

experienced operational challenges which have adversely impacted the performance of its interior construction and renovation business. Chiefly, the District Attorney of New York County has investigated the Debtor as part of a larger investigation of the interior construction industry. This investigation has irreparably harmed the Debtor's ability to attract and retain new clients.

17. In response to the Debtor's deteriorating financial performance, management has taken decisive action in an effort to stabilize its operations and reduce its overall cost structure. Specifically, the Debtor has reduced its workforce and filed this chapter 11 case to establish a venue for the orderly wind-down of its operations upon completion of its existing construction projects. A small amount of additional working capital is urgently needed to continue and sustain its business in the ordinary course through this chapter 11 case.

**B.      The Postpetition Financing Arrangement**

18. Upon the filing of this chapter 11 case, the Debtor and its financial advisor, Rosen Seymour Shapps Martin & Company LLP ("RSSM") analyzed the Debtor's anticipated cash flow needs for the remaining duration of this chapter 11 case and determined that a small amount of additional working capital would be necessary. In analyzing this issue, the Debtor recognized that the obligations owed to the Prepetition Lender are secured by substantially all of the Debtor's assets, such that either (i) the liens of the Prepetition Lender would have to be primed to obtain postpetition financing or (ii) the Debtor would have to find a postpetition lender willing to extend credit that would be junior to the liens of the Prepetition Lender. It quickly became clear that borrowing from another postpetition lender that required security senior to the Prepetition Lender could only be accomplished on a contested basis. Moreover, given the generally poor economic conditions, the Debtor realized that sources of new capital from third parties, if available at all, would be significantly more expensive than obtaining postpetition financing

7

from the DIP Lender. The Debtor believes that the pricing and fee structure of any alternative proposal would be less favorable than that offered by the DIP Lender – which (i) does not require the payment of any fees to the DIP Lender on account of the DIP Loan and (ii) is junior to the liens of the Prepetition Lender.

19.     In view of these circumstances, the DIP Lender was willing to extend postpetition financing on the terms and conditions described herein. Ultimately, the Debtor concluded that the DIP Agreement proposed by the DIP Lender is desirable and has determined that entry into the DIP Agreement addresses the Debtor's working capital and liquidity needs, and should be approved.

20.     The Debtor and the DIP Lender engaged in good faith, arms'-length negotiations with respect to the terms and conditions of the proposed DIP Loan. These negotiations culminated in the proposed DIP Agreement, which is attached as **Exhibit D**. Significantly, the DIP Agreement provides the Debtor with immediate access to $1 million in availability, pending this Court's consideration and entry of the DIP Order. This commitment should allow the Debtor to meet all of its administrative obligations during this chapter 11 case.

21.     The Debtor and DIP Lender have agreed upon a budget (the "Budget"), annexed hereto as **Exhibit E**, projecting cash flows for three weeks. The Debtor believes that the Budget is achievable and will allow the Debtor to operate without the accrual of unpaid administrative expenses.

**C.     Liens and Claims Provided in the DIP Agreement**

22.     Upon entry of the Final Order, all loans and obligations under the DIP Loan shall pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable security interests in, and liens upon the Collateral

(the "DIP Liens"). The DIP Liens shall be subordinate in all respects to the existing liens that secured the obligations of the Debtor under or in connection with the Prepetition Letter of Credit.

**D.    Provisions to be Highlighted Pursuant to Bankruptcy Rules 4001(b)-(c) and 4001-2 of the Local Bankruptcy Rules for the Southern District of New York**

23.    The Debtor believes that the following constitute provisions to be described in according with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York:

(a)    **Waiver of Section 506(c) Surcharge:**  The DIP Order provides for the Debtor to waive its ability to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code.  The proposed waiver of the estate's rights will be effective only after notice to parties in interest and entry of the Final Order granting such relief (DIP Order, ¶7).

(b)    **Avoidance Actions**:  The DIP Order provides that the neither the DIP Liens, the Prepetition Replacement Lien or Prepetition Administrative Claim will be payable from the proceeds of any Avoidance Actions, except those arising under section 549 of the Bankruptcy Code (DIP Order, ¶ 3, 8(h)(i)).

(d)    **Binding the Estate to Validity, Perfection or Amount of Secured Debt:** Although the DIP Order includes certain stipulations by the Debtor related to the validity, amount and perfection of the prepetition liens, the DIP Order reserves until June 1, 2011 the right of non-debtor parties or a statutory committee to investigate the validity, perfection and enforceability of the prepetition obligations under the Prepetition Letter of Credit (DIP Order, ¶ 6).

9

24.     These provisions were thoroughly negotiated and are necessary for the Debtor to effectuate the DIP Loan and procure the financing made available under the DIP Agreement in a sufficient amount and on a timely basis.

**E.     Use of Cash Collateral and Proposed Adequate Protection**

25.     In order to address its immediate working capital needs and fund this chapter 11 case, the Debtor also requires the use of cash collateral of the Prepetition Lender (the "Cash Collateral").  The use of Cash Collateral will provide the Debtor with the additional necessary capital with which to operate its business, pay its employees, maximize value and successfully effectuate an orderly wind-down of the Debtor's operations.

26.     The Prepetition Lender has consented to the Debtor's use of Cash Collateral in the ordinary course of business in accordance with the Budget, subject to adequate protection liens and payments discussed below and the other terms and conditions set forth in the DIP Order. The Debtor will demonstrate at the hearing regarding this Motion that the proposed adequate protection for the Prepetition Lender satisfies the requirements of sections 363(e) of the Bankruptcy Code.

27.     Under section 363(e) of the Bankruptcy Code, the Prepetition Lender is entitled to adequate protection of their interests in the Collateral, to the extent their liens in the Collateral constitute valid and perfected security interests as of the Petition Date, equal in amount to the aggregate diminution in value of their interest in such Collateral.

28.     As adequate protection for any diminution in the value of their Collateral from the Debtor's use of Cash Collateral, the Prepetition Lender shall be granted a replacement lien on the Collateral (the "Prepetition Replacement Lien").  The Prepetition Replacement Lien shall be subject to the Carve-Out and shall be senior to the DIP Liens.  The Prepetition Replacement Lien shall be valid, perfected, enforceable and effective as of the date of the entry of the DIP Order

without any further action by the Debtor or the Prepetition Lender and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements.

29.     In addition to the Prepetition Replacement Lien, the Debtor proposes to, among other things, (i) grant the Prepetition Lender an allowed administrative claim (the "Prepetition Administrative Claim") against the Debtor's estate under section 507(b) of the Bankruptcy Code for the amount by which adequate protection for any diminution in value is insufficient, subject only to the Carve-Out and (ii) make payments to the Prepetition Lender for reasonable fees and expenses incurred before or after the Petition Date.

## VI.     BASIS FOR RELIEF REQUESTED

**A.     The DIP Loan Should Be Approved.**

30.     Approval of the DIP Agreement will provide the Debtor with immediate access to additional funds to pay its operating expenses, including postpetition wages and salaries and utility, sub-contractor and supplier costs.  Unless these expenditures are made, the Debtor could be forced to cease operation, which could result in irreparable harm to its business and could jeopardize the Debtor's ability to complete its existing construction projects.  The credit provided under the DIP Loan and the use of Cash Collateral will enable the Debtor to continue to satisfy its clients' needs, pay employees, and operate its business in the ordinary course.  The additional funds provided by the DIP Loan will provide confidence to the Debtor's creditors that will enable and encourage them to continue their relationships with the Debtor until the current construction projects are completed.  Finally, the implementation of the DIP Agreement will be viewed favorably by the Debtor's employees and clients, thereby promoting an orderly wind-down of the Debtor's operations through this chapter 11 case.  Accordingly, the timely approval of the relief requested herein is imperative.

11

31.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (1) with priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the Bankruptcy Code, (2) secured by a lien on property of the estate that is not otherwise subject to a lien, or (3) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364(c).  The Debtor proposes to obtain the financing set forth in the DIP Agreement by providing, inter alia, security interests and liens pursuant to sections 364(c)(3) of the Bankruptcy Code.

32.     The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to borrow up to $1 million under the DIP Agreement and to use such proceeds to fund its operations.   The Debtor has been unable to procure sufficient financing (i) in the form of unsecured credit allowable under section 503(b)(1), (ii) as an administrative expense under section 364(a) or (b), (iii) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1), or (iv) without granting priming liens pursuant to section 364(d).   The Debtor has not been able to obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

33.     Having determined that financing is available only under sections 364(c)(3) of the Bankruptcy Code, the Debtor negotiated with the DIP Lender in good faith, and at arms'-length. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith.  See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe

12

Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); see also In re Curlew Valley Assocs., 14 B.R. 506, 5 13-14 (Bankr. D. Utah 1981); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985).

34.     The terms and conditions of the DIP Loan are fair and reasonable, were negotiated by well-represented parties in good faith and at arms'-length, and the DIP Loan reflects the exercise of the Debtor's sound business judgment.  Accordingly, the DIP Lender and all obligations incurred under the DIP Loan should be accorded the benefits of section 364(e) of the Bankruptcy Code.

**B.      The Court Should Authorize the Use of Cash Collateral.**

35.     In addition to the need for debtor in possession financing, the Debtor's other pressing concern is the need for use of Cash Collateral required to be able to pay operating expenses, including payroll, and to pay vendors to ensure a continued supply of goods essential to its continued viability.

36.     Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The Debtor requires the use of the Cash Collateral to fund day-to-day operations.  Indeed, absent such relief, the Debtor's business could be brought to an immediate halt, with damaging consequences for the Debtor and its estate and creditors.  The interests of the Prepetition Lender in the Debtor's Cash Collateral will be protected by the

adequate protection set forth above. The Prepetition Lender has consented to the use of the Cash Collateral on the terms set forth herein and in the Interim DIP Order. Accordingly, this Court should approve the request to use Cash Collateral in the operation of the Debtor's business and administration of this chapter 11 case.

**C.     The Court Should Authorize the Debtors to Provide Adequate Protection.**

37.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code, provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

38.     What constitutes adequate protection must be decided on a case-by-case basis. See In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987); In re Martin, 761 F.2d 472, 474 (8th Cir. 1985); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The focus of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. 11 U.S.C. § 361; see In re 495 Central Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).

39.     In consideration for the Prepetition Lender's consent to the Debtor's use of Cash Collateral and entry into the DIP Agreement, the Debtor proposes to provide the adequate protection described in the DIP Order. The replacement liens, the payment of reasonable fees and expenses of the Prepetition Lender's professionals and other protections offered to the Prepetition Lender will sufficiently protect its interest in any collateral taken as security under the DIP Loan. Accordingly, the adequate protection proposed here is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and 363(e).

14

**D.      Modification of the Automatic Stay Is Appropriate.**

40.      The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and superpriority claims described above with respect to the DIP Lender and the Prepetition Lender, as the case may be, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, (ii) permit the DIP Lender to exercise, upon the occurrence and during the continuance of an Event of Default and after five business days' notice thereof, all rights and remedies under the DIP Agreement, and (iii) implement the terms of the proposed DIP Order.

41.      Stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

**E.      Interim Approval of the DIP Loan and Use of Cash Collateral Should be Granted.**

42.      Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Bankruptcy Code section 363 and to obtain credit under Bankruptcy Code section 364 may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable to the debtor's estate, subject to the rights of parties in interest at the Final Hearing.

43.      The Court should schedule and conduct a preliminary hearing on the motion and authorize the Debtor from and after the entry of the interim DIP Order until the Final Hearing to obtain credit under the terms contained in the DIP Agreement and utilize Cash Collateral.

44.     The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate on an ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a Final Hearing on the motion, the Debtor will be immediately and irreparably harmed. The availability of the interim loan under the DIP Agreement will provide necessary assurance to the Debtor's vendors, sub-contractors, employees, and clients of the Debtor's ability to meet its near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a severe negative impact on the value of the Debtor's business, to the detriment of all parties in interest. Furthermore, the lack of interim access to credit would result in accelerated cash demands on the Debtor. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor and facilitating a successful and orderly wind-down of the Debtor's operations.

**F.      Notice**

45.     The Debtor has served notice of this Motion on: (i) the Office of the United States Trustee for the Southern District of New York (Attn: Susan Golden, Esq.); (ii) Jaspan Schlesinger LLP (Attn: Antonia M. Donohue, Esq. and Frank C. Dell'Amore, Esq.) as counsel for the Prepetition Lender; (iii) Sanford Rosen, Rosen &Associates LLP, as counsel to the DIP Lender, (iv) Klestadt & Winters LLP, proposed counsel to the Committee (Attn: Tracy Klestadt, Esq.), and (v) the Debtor's 40 largest unsecured creditors. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

46.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: March 16, 2011

Respectfully submitted,

By:     /s/ James A. Beldner
        James A. Beldner

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Lawrence C. Gottlieb
James A. Beldner
Lesley A. Kroupa

Proposed Attorneys for Debtor and Debtor in Possession

**EXHIBIT A**

**Proposed DIP Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                                              :
In re                                                         :      Chapter 11
                                                              :
LEHR CONSTRUCTION CORP.,                                      :
                                                              :      Case No. 11-10723 (SHL)
              Debtor.                                         :
                                                              :      Re:_____
                                                              :
                                                              :
------------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING PURSUANT TO SECTION 364(C)(3)
OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH
COLLATERAL PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE, (III) GRANTING CERTAIN LIENS, (IV)
GRANTING ADEQUATE PROTECTION TO THE PREPETITION
LENDER, AND (V) MODIFYING THE AUTOMATIC STAY**

        This matter is before the Court on the motion filed by Lehr Construction Corp., as

debtor and debtor in possession (the "<u>Debtor</u>" or "<u>Lehr</u>"),[1] in the above captioned chapter 11

case dated March 16, 2011 (the "<u>Motion</u>") requesting entry of a DIP Order:[2]

        (1)     authorizing and approving, pursuant to sections 105, 361, 362, and 364 of

chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for Lehr to

obtain postpetition financing up to the principal amount of $1,000,000 (the "<u>DIP Loan</u>") from

Gerald Lazar, an individual ("<u>Lazar</u>" or the "<u>DIP Lender</u>") to (A) fund, among other things,

ongoing working capital, general corporate, and other financing needs of the Debtor, (B) pay

certain costs and expenses of administration of the chapter 11 case, (C) provide the DIP Lender

---

[1]       The last four digits of the Debtor's federal tax identification number are 3507.

[2]       Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and
the DIP Agreement, as applicable.

with Adequate Protection (as defined below), and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Loan;

(2)　　authorizing and empowering Lehr to execute and enter into the DIP Loan and to perform such other and further acts as may be required in connection with the DIP Loan;

(3)　　requesting, pursuant to section 364(c)(3) of the Bankruptcy Code, that the financing under the DIP Loan be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable security interest in, and liens upon (collectively, the "DIP Liens") the collateral described in the DIP Loan and Security Agreement (attached hereto as Exhibit D) (except for claims arising under section 549 of the Bankruptcy Code which shall be included in the Collateral) (collectively, the "Collateral"), as provided for by section 364(c)(3) of the Bankruptcy Code subject only to the Carve-Out as provided for herein;

(4)　　seeking the Court's authorization pursuant to sections 361 and 363(c) of the Bankruptcy Code to authorize use of Cash Collateral (as defined under section 363 of the Bankruptcy Code) and provide adequate protection to the Prepetition Lender (as defined below) on account of its claims under the Prepetition Letter of Credit, from such use of Cash Collateral and the terms of the financing being granted herein;

(5)　　requesting, pursuant to Bankruptcy Rule 4001, that this Court approve (a) the DIP Loan as set forth in the DIP Agreement (as defined below) and (b) the grant of adequate protection to the Prepetition Lender all on an interim basis (the "DIP Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Hearing having been provided by the Debtor as set forth in paragraph I below, and the Hearing having been held, and upon consideration of all the

pleadings, allegations and assertions filed with this Court; and upon the record made by the Debtor at the Hearing and the *Declaration of Frederick Coffey in Support of Postpetition Financing Pursuant to Local Bankruptcy Rule 1007-2*, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A. On February 21, 2011 (the "Petition Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. An official committee of unsecured creditors of the Debtor (the "Committee") was appointed by the Office of the United States Trustee on March 11, 2011.

C. No request for the appointment of a trustee or examiner has been made in this case.

D. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E. Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtor acknowledges, agrees and stipulates that:

(i) The Debtor is a party to that certain Irrevocable Standby Letter of Credit Number 30002626 dated May 5, 2010 (the "Prepetition Letter of Credit") from Capital One Bank (the "Prepetition Lender") for the benefit of NBA Properties Inc. (the "NBA"). The Prepetition Letter of Credit is required by the NBA in connection with a construction project being completed by the Debtor for the NBA scheduled for completion in June 2011. The Prepetition Letter of Credit provides for a line of credit of up to an aggregate principal amount of

$3,000,000. The Prepetition Letter of Credit expires on the earlier of (i) the completion of Lehr's construction project for the NBA and (ii) November 30, 2011. The Prepetition Letter of Credit automatically renews for additional one year periods absent a sixty day termination notice from Capital One Bank. As of the date hereof, no draws have been made on the Prepetition Letter of Credit. The Prepetition Letter of Credit is secured by security interests in and liens on (the "Prepetition Liens") substantially all of the Debtor's assets (the "Prepetition Collateral"), as evidenced by that certain UCC fixture filing recorded as Document ID 200609015861205 on September 1, 2006 that encumbers substantially all of the Debtor's property (the "Fixture Filing," together with the Prepetition Letter of Credit and other documents related thereto, the "Prepetition Loan Documents").

(ii)     As of the Petition Date and immediately prior to giving effect to this DIP Order, (a) the Prepetition Letter of Credit is a valid and binding agreement and contingent obligation of the Debtor, (b) the Prepetition Liens constitute valid, binding, enforceable and perfected priority security interests and liens, which are not subject to avoidance, reduction, disallowance, recharacterization, impairment or subordination of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (c) no objection, offset, defense or counterclaim of any kind or nature to the Debtor's obligations under the Prepetition Loan Documents exists.

(iii)     Upon a draw by the NBA on the Prepetition Letter of Credit, the Prepetition Lender shall hold an allowed claim against the Debtor's estate in the full amount of such draw (the "Prepetition Lender Claim").

(iv)     The Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Liens and the security for any of those obligations, and

to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choices of action against the Prepetition Lender and/or any of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

F.     The Debtor's business has an immediate need to obtain the DIP Loan and use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, sub-contractors, suppliers and clients, to make payroll and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtor to sufficient working capital and liquidity and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtor and to the ability of the Debtor to complete its outstanding construction obligations. Without such credit and use of Cash Collateral, the Debtor would not be able to operate its business and the Debtor's estate would be irreparably harmed.

G.     The Debtor is unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Agreement and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Agreement, the "Post-Petition Financing Documents"). The Debtor has been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtor without (i) providing the DIP Lender the DIP Liens as provided herein and in the Post-Petition Financing Documents and (ii) without concurrently providing for the Adequate Protection to the Prepetition Lender on the terms and conditions as set forth herein.

H.     The DIP Lender has indicated a willingness to agree and consent to, and as applicable, provide financing to the Debtor and the Prepetition Lender has agreed to permit the

use of Cash Collateral by the Debtor subject to, (i) the entry of this DIP Order, (ii) the terms and conditions of the DIP Agreement, and (iii) findings by the Court that such postpetition financing and use of Cash Collateral is essential to the Debtor's estate, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens, and other protections granted pursuant to this DIP Order and the Post-Petition Financing Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this DIP Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Each of the DIP Lender and Prepetition Lender has acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this DIP Order and the other Post-Petition Financing Documents and the reliance of each of the DIP Lender and Prepetition Lender on the assurances referred to above is in good faith.

I. Notice of the Hearing and the proposed entry of this DIP Order has been provided to (i) the forty (40) largest creditors listed in the Debtor's consolidated list of creditors (excluding insiders), (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (iii) counsel to the DIP Lender, (iv) counsel to the Prepetition Lender (v) each of the financial institutions listed in the Debtor's *Motion for an Order, Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtor to (I) Continue to Use Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, And (III) Waive Requirements of Section 345(b) of the Bankruptcy Code* (Docket No. 4), (vi) all known parties asserting a lien against the Collateral, (vii) counsel to the Committee; and (viii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the Bankruptcy Rules. Notice of the Motion

and the relief requested thereby and this DIP Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this DIP Order.

J.  The Debtor has requested immediate entry of this DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this DIP Order, the Debtor's businesses, properties and estates will be immediately and irreparably harmed.

K.  The ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and other financial and general corporate liquidity and use of Cash Collateral is in the best interests of the Debtor and its creditors and estate. The financing and use of Cash Collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's business and estates and to allow the orderly continuation of the Debtor's business.

L.  Based upon the record presented by the Debtor to this Court: (i) the terms of the DIP Loan and use of Cash Collateral are the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Loan and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtor, the DIP Lender and the Prepetition Lender, and any credit extended, letters of credit issued, loans made, credit support provided and other financial accommodations extended to the Debtor by the DIP Lender and use of Cash Collateral by the Debtor shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

1707025 v3/NY

M.     The consent of the Prepetition Lender granted herein is expressly limited to (i) the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this DIP Order and (ii) the postpetition financing being provided by the DIP Lender as contemplated by this DIP Order and the DIP Agreement. Nothing in this DIP Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Lender is or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.     <u>Disposition</u>. The Motion is granted on an interim basis as set forth in this DIP Order. The total amount of the DIP Loan is $1,000,000.  Any objections that have not previously been withdrawn are hereby overruled. This DIP Order shall immediately become effective upon its entry.

2.     <u>Authorization to Borrow</u>. Upon execution and delivery of that certain DIP Loan and Security Agreement, a copy of which is in substantially the form annexed hereto as **<u>Exhibit A</u>**, and DIP Note of even date (collectively the "<u>DIP Agreement</u>") by and among the Debtor and the DIP Lender, in substantially the form annexed to the Motion and provided that the Debtor is not in default under the terms of this DIP Order, the Debtor is immediately authorized to borrow the DIP Loan from the DIP Lender (together with interest, fees, charges and expenses payable under the Post-Petition Financing Documents), pursuant to the terms and conditions of the DIP Agreement and use such proceeds in accordance with the terms of the DIP Agreement, the budget annexed hereto as **<u>Exhibit B</u>** (the "<u>Budget</u>"), and this DIP Order. Upon execution and delivery of the Post-Petition Financing Documents, the Post- Petition Financing Documents shall constitute legal, valid, and binding obligations of the Debtor, enforceable

against the Debtor in accordance with their terms. Financing and advances under the DIP Agreement will be made to (i) fund the Debtor's working capital and other general corporate needs and (ii) pay such other amounts required or allowed to be paid pursuant to the DIP Agreement, this DIP Order and any other orders of this Court.

3.    <u>DIP Loan Claims</u>. For all of the Debtor's obligations and postpetition indebtedness arising under the DIP Loan and the Post-Petition Financing Documents, the DIP Lender is granted, pursuant to section 364(c)(3) of the Bankruptcy Code, subject only to the Carve-Out (as defined below), an allowed DIP Loan claim (the "<u>DIP Loan Claim</u>") which claim shall be payable from and have recourse to the Collateral. The DIP Loan Claim shall be deemed a legal, valid, binding, enforceable, and perfected claim, not subject to subordination, impairment or avoidance, for all purposes in the case and any successor case.

4.    <u>DIP Liens</u>.  As security for the repayment of the Dip Loan, pursuant to sections 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Liens on and in the Collateral and all proceeds thereof, which liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination, impairment or avoidance, for all purposes in this chapter 11 case and any successor case. The DIP Liens granted herein shall be subordinate in all respects to the Prepetition Liens and the Prepetition Replacement Liens (as defined below).

5.    <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Liens, DIP Loan, the Adequate Protection and liens and claims held by the Prepetition Lender shall be subject to the following: (i) unpaid fees of the Clerk of the

Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) accrued professional fees and expenses of the Debtor and the Committee (the "Professional Fees") incurred to the extent consistent with the Budget, but unpaid, prior to delivery of a notice of an Event of Default (the "Carve-Out Notice"); (iii) Professional Fees incurred subsequent to delivery of the Carve-Out Notice to the extent consistent with the Budget in an aggregate amount not to exceed $200,000; and (iv) the approved professional fees and expenses incurred by any court appointed Chapter 7 Trustee up to an aggregate amount of $25,000 (collectively, (i)–(iv), the "Carve-Out"). The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of an Event of Default under the Post-Petition Financing Documents and the DIP Lender's delivery of a Carve-Out Notice to the Debtor, counsel for the Debtor, and counsel to the Committee or (ii) the Maturity Date. Notwithstanding anything herein to the contrary, no Prepetition Collateral (as defined herein), Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or DIP Loan shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Loan Claim, or the security interests and DIP Liens of the DIP Lender in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Lender's or any Prepetition Lender's assertion, enforcement or realization on the Collateral in accordance with the Post-Petition Financing Documents or this DIP Order or any Avoidance Actions against the DIP Lender or Prepetition Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary

1707025 v3/NY

proceedings, or other litigation against the Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Letter of Credit, or the Adequate Protection granted herein; provided however, up to the amount of $50,000 shall be permitted to be used by professionals of the Committee to investigate the liens, claims and interests of the Prepetition Lender, with respect to the Prepetition Letter of Credit. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtor, the DIP Lender, the Prepetition Lender, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to the DIP Lender or Prepetition Lender or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtor). During the pendency of this chapter 11 case, the Debtor shall fund sufficient cash to satisfy the Carve-Out on a monthly basis (the "Carve-Out Reserve") to be held in trust by the Debtor in a segregated account for the benefit of the Professionals, the Clerk of the Court and the U.S. Trustee, to be applied to U.S. Trustee fees when due, the Clerk's fees when payable and to Professional Fees pursuant to one or more orders of the Court, with any excess to be subject to the DIP Liens of the DIP Lender and the Replacement Liens of the Prepetition Lender.

6. <u>Investigation Rights</u>. Notwithstanding anything herein to the contrary, including the Debtor's stipulations and releases herein solely as they relate to the Prepetition Lender, the Committee and all non-debtor parties in interest (including any trustee appointed or elected in the case prior to the Investigation Termination Date (as defined below)) shall have

until June 1, 2011 (the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, and enforceability of the Prepetition Liens and the amount and allowability of the Prepetition Obligations, and to file a motion or otherwise seek authorization from the Court to commence, file and prosecute any objection, claim or other adversary proceeding with respect to the Prepetition Liens (collectively, an "<u>Action</u>"). If the Committee, or any non-debtor party in interest, determines that there may be a challenge to the Prepetition Liens, upon three (3) days' written notice to the Debtor, the DIP Lender and his counsel, and the Prepetition Lender and its counsel, such Committee or other non-debtor party in interest shall be permitted to seek authorization from the Court to commence, file and prosecute an Action, or if vested with authority from the Court, to file and prosecute an Action (each, a "<u>Challenge</u>"), and shall have only until the Investigation Termination Date to (a) file the motion for authorization to file, commence and prosecute any Action, or (b) otherwise seek authorization from the court to file, commence and prosecute any Action, on behalf of the Debtor's estate setting forth the basis of any such challenge, claim or cause of action. If the Committee, or any non-debtor party in interest is granted authorization from the Court to commence, file and prosecute an Action, such party shall have thirty (30) days from entry of a final order granting such authorization to file and commence an Action (the "<u>Filing Deadline</u>"). If a party does not file a Challenge on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor, the DIP Lender, and the Prepetition Lender), or does not commence an Action on or before the Filing Deadline (or such other later date as extended by the written consent of the Debtor, the DIP Lender, and the Prepetition Lender), then the agreements, acknowledgements, releases and stipulations contained in paragraph E of this DIP Order shall be irrevocably binding on all other parties, the estates, Committee and all parties in interest (including without limitation

a receiver, administrator, or trustee appointed in this chapter 11 case or any successor case or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this chapter 11 case or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Lender.  If any Action is timely filed on or before the Filing Deadline, all other claims and actions against the Prepetition Lender not expressly asserted in such Action or amended Action shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this DIP Order (a) confers standing on any party to file or prosecute such claims and actions described herein or (b) precludes the Prepetition Lender from seeking allowance of all or any portion of the Prepetition Letter of Credit prior to the occurrence of the Investigation Termination Date.

7. **Limitation on Additional Surcharges**.  Neither the Collateral, Prepetition Collateral nor the DIP Lender or Prepetition Lender shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtor or any other party in interest without the prior written consent of the DIP Lender and Prepetition Lender and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtor's ongoing operation by the DIP Lender.  The DIP Lender and Prepetition Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8. **Cash Collateral**.

(a) **Use of Cash Collateral**. The Debtor may use Cash Collateral of the Prepetition Lender to pay for the ordinary and necessary postpetition operating expenses as

categorized in the Budget. Ordinary and necessary postpetition expenses shall be defined as those items set forth in the Budget and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than ten percent (10%). The Debtor shall obtain the Prepetition Lender's written permission before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Accounts, as hereinafter defined, in excess of ten percent (10%). If the Debtor and the Prepetition Lender cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of the Prepetition Lender for expenses not included in the categories included in the Budget, the Debtor may submit the matter to this Court by motion for determination of the issue if the Prepetition Lender fails to respond to a written request within five (5) business days after such written request is received by the Prepetition Lender and the Prepetition Lender's counsel, or the Prepetition Lender denies a written request within five (5) business days after such written request is received by the Prepetition Lender and the Prepetition Lender's counsel.

(b)     <u>Payment to Insiders</u>. No Cash Collateral shall be used in payment of any kind whatsoever to Debtor's officers, directors, shareholders, employees, relatives or any representatives or affiliates thereof, or any insiders as that term is defined by 11 U.S.C. §101(31), except as provided in the annexed Budget.

(c)     <u>Insurance</u>. The Debtor shall maintain property, casualty, and liability insurance coverage as provided in the Prepetition Loan Documents in connection with the Prepetition Collateral. The Debtor shall promptly furnish the Prepetition Lender with proof of such insurance upon request. In the event that the insurance coverage for the Prepetition Collateral is allowed to lapse for any reason, the Prepetition Lender may, notwithstanding any applicable provision of the Bankruptcy Code, force-place insurance coverage. In the event that

the Prepetition Lender is required to obtain force-placed insurance coverage, the Prepetition Lender may provide the Debtor with a demand to reimburse the Prepetition Lender for such coverage, and if, five (5) business days following the receipt of such notice, the Debtor has not reimbursed the Prepetition Lender for such insurance coverage, the Prepetition Lender may seek relief, on five (5) days notice from this Court, from the automatic stay of 11 U.S.C. §362(a) to commence and complete foreclosure of the Prepetition Collateral.

(d)    <u>Taxes</u>. The Debtor shall remain current on all postpetition tax obligations arising out of its ownership and/or operation of its business. The Debtor shall tender evidence of payment of all postpetition tax obligations promptly to the Prepetition Lender upon the payment thereof. In the event that Debtor fails to make any required postpetition tax payment, the Prepetition Lender may advance such funds and seek immediate reimbursement from Debtor notwithstanding any applicable provision of the Bankruptcy Code. In the event that the Prepetition Lender advances such tax payments and Debtor does not reimburse the Prepetition Lender within five (5) business days of having received notice thereof, the Prepetition Lender may proceed on five (5) days notice for relief from the automatic stay of 11 U.S.C. §362(a), to commence and complete a seizure of the Collateral.

(e)    <u>Financial Information</u>. The Debtor shall timely file its interim statements and operating reports with the office of the United States Trustee. The Debtor shall also provide the Prepetition Lender on or before such filings with copies of all financial information and reports, prepared on or after the Petition Date, that the Debtor files with this Court and the Office of the United States Trustee, prepared for internal review or audit, or delivered to any third parties whatsoever, including, but not limited to, monthly operating

reports, interim statements, operating reports, bankruptcy schedules, financial statements and accountings.

(1)     Upon reasonable notice, but no less than forty-eight (48) hours written notice from the Prepetition Lender, the Debtor shall provide the Prepetition Lender with such other financial information as it may reasonably request, including but not limited to providing access for the Prepetition Lender and the Prepetition Lender's auditors to the Debtor's books and records, including but not limited to, all financial records relating to the operation or condition of the Prepetition Collateral, whether that information is maintained in the hands of the Debtor, affiliates of the Debtor, or the accountants, attorneys, or agents of any of them.

(f)     <u>Cash Collateral Termination Date</u>. Notwithstanding any provision herein, the Debtor's right to use the Prepetition Lender's Cash Collateral terminates on September 1, 2011 (the "<u>Cash Collateral Termination Date</u>"), unless extended by stipulation or order.

(1)     Additionally, unless the Prepetition Lender otherwise agrees in writing, the Cash Collateral Termination Date shall be defined as the earliest of:  (a) the date an order is entered by the Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Bankruptcy Code; (b) the date an Order is entered by the Court granting the Prepetition Lender, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against the Prepetition Collateral; (c) the date an order is entered by the Court granting a motion to dismiss the above-captioned case; (d) the date an order is entered by the Court granting a motion to appoint a trustee in the above-captioned case; and (e) the date of confirmation of a plan of liquidation.

(g)     <u>Adequate Protection</u>. To adequately protect the Prepetition Lender against any diminution in the value of its Prepetition Collateral (including Cash Collateral), the Prepetition Lender is hereby granted a valid, binding, enforceable and perfected continuing replacement first-priority lien and security interest in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents of the Debtor, including all postpetition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds thereof, of any kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by the Prepetition Lender on the Petition Date, whether or not constituting prepetition collateral or postpetition collateral (collectively referred to herein as the "<u>Replacement Lien</u>") senior to all other liens against the Debtor's estate existing as of the Petition Date pursuant to 11 U.S.C. § 363. Such lien is subject only to: (i) the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) reasonable claims under Section 726(b) of the Bankruptcy Code with the exception of any claims against for cost and expense of litigation against Bank; (iii) any valid, duly perfected, unavoidable liens existing at the time of the bankruptcy filing having priority over the liens asserted by the Prepetition Lender under the Prepetition Letter of Credit; and (iv) the Carve-Out. Notwithstanding the foregoing, the Debtor and the Prepetition Lender acknowledge that the continuing replacement first-priority lien and security interest described in this provision shall not attach to any avoidance actions or claims or causes of action under sections 11 U.S.C. §§ 544, 545, 547, 548 and 549 (except liens on recoveries under section 549 on account of Prepetition Collateral as to which the lender has a postpetition lien), and the proceeds thereof, or a superpriority administrative claim payable from the proceeds of such claims and causes of action.

1707025 v3/NY

(1)    The Debtor shall execute and deliver to the Prepetition Lender all such agreements, financing statements, instruments and other documents as the Prepetition Lender may reasonably request to evidence, confirm, validate or perfect its security interests and liens granted pursuant hereto.

(2)    This DIP Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estate of the Debtor granted to the Prepetition Lender as set forth herein, without the necessity of filing, recording or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Prepetition Lender in this DIP Order.  If the Prepetition Lender shall, in its discretion, elect for any reason to file any such security interests and liens, the Debtor is hereby authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Prepetition Lender's reasonable request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Petition Date.  The Prepetition Lender may, in its discretion, file a copy of this DIP Order in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this DIP Order.

(h)    <u>Administrative Expenses</u>. The Prepetition Lender's Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate, except as provided for in the Budget or as authorized by this Court.

(i)    Rights Reserved. The entry of this DIP Order is without prejudice to, and does not constitute a waiver of, expressly or impliedly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including its right to seek relief from the automatic stay under §362 of the Bankruptcy Code and to pursue direct claims against any guarantor(s) of the Prepetition Letter of Credit, nor shall the Prepetition Lender need to obtain leave from any Court to do so.

(j)    Prepetition Loan Documents. During this chapter 11 case, the Prepetition Lender may continue to charge the Debtor with interest, reasonable fees and expenses as provided in the Prepetition Loan Documents.  During the term of this chapter 11 case, the Debtor shall fully perform and comply with all of its covenants and agreements set forth in the Prepetition Loan Documents, subject to the provisions of the Bankruptcy Code and any DIP Orders of the Bankruptcy Court.

(k)    Granting of Additional Security Interests or Liens. Except as otherwise provided in this DIP Order, the Debtor shall be enjoined and prohibited from, at any time during this chapter 11 case, granting security interests or liens on the collateral subject to the Replacement Lien (including the Cash Collateral) or any portion thereof, to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which security interests or liens are senior to or *pari passu* with the security interests or liens of the Prepetition Lender, as the case may be without order of this Court after notice and hearing.

(l)    Diminution of Value. The Prepetition Lender shall be entitled to the protection of Section 363(a) of the Bankruptcy Code with respect to diminution of the Prepetition Lender's Prepetition Collateral in the event that its Prepetition Collateral decreases in

value during the pendency of this chapter 11 case, in the event that this DIP Order or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

(m)     <u>Cash Collateral Event of Defaults</u>. Failure by the Debtor to fulfill any of the obligations set forth in this DIP Order shall constitute an event of default ("<u>Cash Collateral Event of Default</u>").  Should a Cash Collateral Event of Default occur, the Prepetition Lender may file and serve by electronic mail or by facsimile, if such facsimile number is available, an affidavit (the "<u>Bank Affidavit</u>"), identifying the Cash Collateral Event(s) of Default, upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case (the "<u>Appearing Parties</u>").  The Debtor shall have five (5) business days to either cure the Cash Collateral Event of Default or the Debtor or any other party provided with notice in accordance to this decretal paragraph may file a counter-affidavit (the "<u>Counter-Affidavit</u>") opposing the allegations raised in the Bank Affidavit with specificity.  If a Counter-Affidavit is filed, then a hearing will be scheduled at the earliest possible convenience of this Court on no less than two (2) business days written notice to the Debtor, the Prepetition Lender, the Appearing Parties, and the Office of the U.S. Trustee (the "<u>Interested Parties</u>") to determine whether a Cash Collateral Event of Default has occurred and whether the Prepetition Lender is entitled to relief from the automatic stay enabling it to take possession of its Prepetition Collateral.  If, within five (5) business days after the service of the Bank Affidavit, the Debtor fails to cure the Cash Collateral Event of Default or if the Debtor or any of the other Interested Parties fail to serve upon counsel for the Prepetition Lender a Counter-Affidavit and file the Counter-Affidavit with this Court, then an *ex parte* order shall be entered terminating the Debtor's right to use Cash Collateral and modifying the automatic stay to enable the Prepetition

1707025 v3/NY

Lender to take possession of its Prepetition Collateral (the "<u>Termination Order</u>"). Nothing contained herein shall be construed to preclude the Prepetition Lender from filing a motion seeking relief from the automatic stay or from seeking any other appropriate relief in the Debtors' bankruptcy cases at any other time during this Case.

9.     <u>Fees and Expenses of the DIP Lender</u>. The Debtor shall promptly following receipt of a written summary invoice, reimburse the DIP Lender for its reasonable out-of-pocket costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the chapter 11 case or under the DIP Loan whether incurred prepetition or postpetition. None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

10.     <u>Restrictions on the Debtor</u>. Other than the Carve-Out, no claim or lien having a priority superior or *pari passu* with those granted by this DIP Order to the DIP Lender or Prepetition Lender shall be granted by the Debtor, while any portion of the DIP Loan (or refinancing thereof), Adequate Protection or the commitment thereunder remains outstanding without the written consent of the DIP Lender and the Prepetition Lender. Except as expressly permitted by the DIP Agreement and this DIP Order, the Debtor will not, at any time during this chapter 11 case, grant mortgages, security interests, or liens in the Collateral or Prepetition Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

11. <u>Additional Perfection Measures.</u> The DIP Lender and Prepetition Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the Post-Petition Financing Documents and this DIP Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Lender and Prepetition Lender may, in their sole discretion, file this DIP Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date, with the priorities set forth herein.

12. <u>Access to Collateral.</u> Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Order or the Post-Petition Financing Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Agreement, upon emergency application to the Court on five business days notice to the affected landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default has occurred and is continuing under the Post- Petition Financing Documents, the DIP Lender may seek, unless such access is controlled by any separate agreement by and between such landlord or licensor and the DIP Lender in which case the separate agreement will control (the "<u>Separate Agreement</u>"), Court approval to enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and may seek further

authorization that it shall be entitled to all of the Debtor's rights and privileges as lessee under such lease or licensee or under such license without interference from the landlords or licensor thereunder, with Court authorization that the DIP Lender shall only pay rent or royalties of the Debtor that first accrue after the DIP Lender's written notice referenced above and that is payable during the period of such occupancy or use by the DIP Lender as the case may be, calculated on a per diem basis. Nothing herein shall require the DIP Lender to assume any lease or license as a condition to the rights afforded to the DIP Lender in this paragraph nor shall anything be construed as authorizing the commencement of "going out of business" sales on shortened notice.  The rights of any affected landlord to object to any of the relief the DIP Lender may seek pursuant to this paragraph 13 are reserved.

13.    Automatic Stay.  (a)  Subject only to the provisions of the DIP Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in the DIP Agreement), all rights and remedies provided for in the Post-Petition Financing Documents (including, without limitation, the right to freeze monies or balances in the Debtor's accounts or set off monies or balances of the Debtor in accounts maintained by the DIP Lender, the right to charge default rate of interest, terminate commitments and cease funding under the DIP Agreement and termination of any Cash Collateral use); provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Lender shall be required to give five (5) business days prior written notice to the Debtor, its bankruptcy counsel, the Committee's counsel, the Prepetition Lender and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or termination of the commitments under

1707025 v3/NY

the DIP Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Lender under the Post-Petition Financing Documents and this DIP Order shall survive the Maturity Date. The Debtor and/or the Committee shall have the initial burden of proof at any hearing on any request by the Debtor and/or the Committee to re-impose or continue the automatic stay as provided for herein; provided, however, that the only issue to be determined at such hearing is whether an Event of Default has occurred and is continuing. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

(b)     In the event the DIP Lender commences the exercise of any enforcement or liquidation remedies against the Collateral consistent with the terms of the DIP Agreement, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Prepetition Lender to exercise all rights and remedies provided for in the Prepetition Note and the Prepetition Loan Documents.

14.     Binding Effect. The provisions of this DIP Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Debtor, and their respective successors and assigns, including any trustee hereafter appointed for the Debtor's estate, whether in this chapter 11 case or in the event of the conversion of the case to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this DIP Order.

15.     Survival. The provisions of this DIP Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of liquidation in this chapter 11 case; (ii) converting the chapter 11 case to a chapter 7 case unless permitted under the Post-

Petition Financing Documents; or (iii) dismissing the chapter 11 case unless permitted under the Post-Petition Financing Documents, and the terms and provisions of this DIP Order as well as the DIP Loan Claim, the DIP Liens, and the Adequate Protection granted pursuant to this DIP Order and/or the Post-Petition Financing Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this DIP Order, and the Post-Petition Financing Documents and to the maximum extent permitted by law until the DIP Loan is indefeasibly paid in full in cash and discharged.

16. <u>After Acquired Property</u>. Except as otherwise provided in this DIP Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to (i) the DIP Lender, pursuant to the Post-Petition Financing Documents and this DIP Order, and (ii) the Replacement Lien granted to the Prepetition Lender pursuant to this DIP Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a valid, enforceable, perfected, and unavoidable purchase money security interest lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

17. <u>Access to the Debtor</u>. In accordance with the provisions of access in the Post-Petition Financing Documents, the Debtor shall permit representatives, agents, and/or employees of the DIP Lender and its counsel to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper

operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

18. <u>Authorization to Act</u>. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this DIP Order and the DIP Agreement, which may be reasonably required or necessary for the Debtor's full and timely performance under the DIP Loan and this DIP Order, including, without limitation:

(a) the execution of the Post-Petition Financing Documents;

(b) the non-material modification or amendment of the DIP Agreement or any other Post-Petition Financing Documents without further order of this Court, in each case, in such form as the Debtor and the DIP Lender may agree in accordance with the terms of the DIP Facility; <u>provided</u>, <u>however</u>, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be provided to counsel for the Committee, the Prepetition Lender and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; <u>provided further</u>, <u>however</u>, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c) the non-refundable payments to the DIP Lender of the fees referred to in the DIP Agreement and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the Post-Petition Financing Documents.

1707025 v3/NY

19.     Insurance Policies. Upon entry of this DIP Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the Collateral.

20.     Subsequent Reversal. If any or all of the provisions of this DIP Order or the Post-Petition Financing Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any Debtor to the DIP Lender or Prepetition Lender that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "Effective Date"), or the validity, enforceability or priority of the DIP Loan Claim, DIP Liens, Adequate Protection or other grant authorized or created by this DIP Order and the Post-Petition Financing Documents; and (ii) the Dip Loan and Adequate Protection pursuant to this DIP Order and the Post-Petition Financing Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this DIP Order and the Post-Petition Financing Documents, and the validity of any such credit extended or security interest granted pursuant to this DIP Order and the Post-Petition Financing Documents and use of Cash Collateral is and shall be protected by section 364(e) of the Bankruptcy Code.

21.     Effect of Dismissal of Case. If the chapter 11 case is dismissed, or converted, then neither the entry of this DIP Order nor the dismissal or conversion shall affect the rights of the DIP Lender and the Prepetition Lender (to the extent of Adequate Protection provided hereunder) under their respective documents or this DIP Order, and all of the respective rights and remedies thereunder of the DIP Lender and the Prepetition Lender (to the extent of

Adequate Protection provided hereunder) shall remain in full force and effect as if the case had not been dismissed or converted. If an order dismissing this chapter 11 case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens and DIP Loan Claim granted to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to this DIP Order and the Post-Petition Financing Documents shall continue in full force and effect and shall maintain their priorities as provided in this DIP Order until all postpetition indebtedness shall have been paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Agreement (and that such DIP Liens, DIP Loan Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Lender shall continue in full force and effect and shall maintain their priorities as provided in this DIP Order until such Adequate Protection has been satisfied, (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Prepetition Liens, DIP Loan Claim, and Adequate Protection referred to herein, and (iv) any hearing on a motion to dismiss the chapter 11 case shall require at least twenty-one (21) days prior notice to the DIP Lender and Prepetition Lender.

22. <u>Findings of Fact and Conclusions of Law</u>. This DIP Order constitutes findings of fact and conclusions of law based upon facts now extant and fully disclosed and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof, subject to modifications by a party or parties in interest for cause shown.

1707025 v3/NY

23.	<u>Controlling Effect of DIP Order</u>. To the extent any provision of this DIP Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Loan, the provisions of this DIP Order shall control.

24.	Notice of the Motion and Hearing as provided herein shall be deemed good and sufficient notice of such Motion and Hearing.

Dated: _____, 2011
New York, New York

_____
United States Bankruptcy Judge

1707025 v3/NY

EXHIBIT A

DIP Agreement

1707025 v3/NY

EXHIBIT B

Budget

1707025 v3/NY

**EXHIBIT B**

**Coffey Declaration**

1705884 v2/NY

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
          :

In re                           :    **Chapter 11**
          :

**LEHR CONSTRUCTION CORP.,**       :    **Case No. 11-10723 (SHL)**
          :

      **Debtor.**                : 
          :

-------------------------------------------------------------- x

### DECLARATION OF FREDERICK COFFEY
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

I, Frederick Coffey, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.     I am the President of the above-captioned debtor (the "Debtor", "Lehr" or the "Company"). I am familiar with the Debtor's day-to-day operations, business and financial affairs.

2.     I am a co-founder of Lehr and have more than thirty-five years of industry management experience. I have hands-on management responsibilities for many of Lehr's largest projects.

3.     On February 21, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.     On the date hereof, the Debtor filed with this Court an emergency motion to obtain (i) postpetition financing and (ii) the Court's authorization to use cash collateral (the

"Motion").[1]  I am authorized by the Debtor to submit this Declaration on its behalf in support of the Motion.

5.      I have reviewed the Motion, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of, the Debtor's business, (b) avoid immediate and irreparable harm to the Debtor's sub-contractors and numerous other third parties, and (c) maximize and preserve the value of the Debtor's chapter 11 estate.

6.      I am familiar with the Debtor's day-to-day operations, financial affairs, business affairs and books and records.  Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my review of relevant documents; (iii) information supplied to me by other members of the Debtor's management team or professionals retained by the Debtor; or (iv) my opinion based on my experience and knowledge of the Debtor's operations and financial condition.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### Immediate Need for the DIP Loan and Use of the Prepetition Lender's Cash Collateral

7.      The Debtor has faced a number of challenges which together have had a negative impact on its overall financial performance.  Over the last two years, the decline in the real estate market and the tightening of the credit markets have had a significant adverse impact on the real estate market in general, and the interior construction and renovation business in particular.  Additionally, the Debtor recently has experienced operational challenges which have adversely impacted the performance of its interior construction and renovation business.  Chiefly, the District Attorney of New York County has investigated the Debtor as part of a larger

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Motion.

investigation of the interior construction industry. This investigation has irreparably harmed the Debtor's ability to attract and retain new clients.

8. In response to the Debtor's deteriorating financial performance, management has taken decisive action in an effort to stabilize its operations and reduce its overall cost structure. Specifically, the Debtor has reduced its workforce and filed this chapter 11 case to establish a venue for the orderly wind-down of its operations upon completion of its existing construction projects. A small amount of additional working capital is urgently needed to continue and sustain its business in the ordinary course through this chapter 11 case.

9. Upon the filing of this chapter 11 case, the Debtor and its financial advisor, Rosen Seymour Shapps Martin & Company LLP ("RSSM") analyzed the Debtor's anticipated cash flow needs for the remaining duration of this chapter 11 case and determined that a small amount of additional working capital would be necessary. In analyzing this issue, the Debtor recognized that the obligations owed to the Prepetition Lender are secured by substantially all of the Debtor's assets, such that either (i) the liens of the Prepetition Lender would have to be primed to obtain postpetition financing or (ii) the Debtor would have to find a postpetition lender willing to extend credit that would be junior to the liens of the Prepetition Lender. It quickly became clear that borrowing from another postpetition lender that required security senior to the Prepetition Lender could only be accomplished on a contested basis. Moreover, given the generally poor economic conditions, the Debtor realized that sources of new capital from third parties, if available at all, would be significantly more expensive than obtaining postpetition financing from the DIP Lender. The Debtor believes that the pricing and fee structure of any alternative proposal would be less favorable than that offered by the DIP Lender – which (i) does not

require the payment of any fees to the DIP Lender on account of the DIP Loan and (ii) is junior to the liens of the Prepetition Lender.

10.     In view of these circumstances, the DIP Lender was willing to extend postpetition financing on the terms and conditions described in the Motion.  Ultimately, the Debtor concluded that the DIP Agreement proposed by the DIP Lender is desirable and has determined that entry into the DIP Agreement addresses the Debtor's working capital and liquidity needs, and should be approved.

11.     The Debtor and the DIP Lender engaged in good faith, arms'-length negotiations with respect to the terms and conditions of the proposed DIP Loan.  These negotiations culminated in the proposed DIP Agreement, which is attached as <u>Exhibit D</u> to the Motion. Significantly, the DIP Agreement provides the Debtor with immediate access to $1 million in availability, pending this Court's consideration and entry of the DIP Order.  This commitment should allow the Debtor to meet all of its administrative obligations during this chapter 11 case.

12.     The Debtor and DIP Lender have agreed upon a budget (the "<u>Budget</u>"), annexed as <u>Exhibit E</u> to the Motion, projecting cash flows for two weeks.  The Debtor believes that the Budget is achievable and will allow the Debtor to operate without the accrual of unpaid administrative expenses.

13.     The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate on an ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a Final Hearing on the motion, the Debtor will be immediately and irreparably harmed. The availability of the interim loan under the DIP Agreement will provide necessary assurance to the Debtor's vendors, sub-contractors, employees, and clients of the Debtor's ability to meet its

near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a severe negative impact on the value of the Debtor's business, to the detriment of all parties in interest. Furthermore, the lack of interim access to credit would result in accelerated cash demands on the Debtor. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor and facilitating a successful and orderly wind-down of the Debtor's operations

Accordingly, I respectfully request that the Court grant all of the relief requested in the Motion and such other and further relief as may be just and appropriate.

Dated: March 16, 2011

**LEHR CONSTRUCTION CORP.**

By: /s/Frederick Coffey
Name: Frederick Coffey
Title: President

**EXHIBIT C**

**Fixture Filing**

1705884 v2/NY

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC Direct Services
2727 Allen Parkway
Houston, TX 77019, USA
nyack@uccdirect.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME Lehr Construction Corp. | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 902 Broadway | | CITY New York | STATE NY  POSTAL CODE 10010 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any None  [X] NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE  POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME NORTH FORK BANK | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 275 BROADHOLLOW ROAD | | CITY MELVILLE | STATE NY  POSTAL CODE 11747 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**
All personal property now owned or hereafter acquired by the Debtor including but not limited to all goods, consumer goods, farm products, inventory, equipment, furniture, money, instruments, accounts receivable, contract rights, documents, chattel paper and general intangibles, all of which collectively is the Collateral. All products of Collateral and all additions and accessions to, replacements of, insurance or condemnation proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits, and proceeds arising from the sale, lease, encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA NY-0-21819088-20150

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-200609015861205

**EXHIBIT D**

**DIP Agreement**

# DIP LOAN AND SECURITY AGREEMENT

**THIS DEBTOR IN POSSESSION LOAN AND SECURITY AGREEMENT**, is entered into as of March 16, 2011 by and between LEHR CONSTRUCTION CORP., a New York corporation and debtor in possession (the "**Borrower**"), and Gerald Lazar, an individual, (the "**DIP Lender**").

W I T N E S S E T H:

**WHEREAS**, on February 21, 2011 (the "**Filing Date**"), the Borrower filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and

**WHEREAS**, the Borrower has requested that the DIP Lender make a term loan to the Borrower in the principal amount of $1,000,000 (the "**Loan**"), and the Lender has agreed to make such loan subject to the terms and conditions set forth below;

**NOW, THEREFORE**, the Borrower and the DIP Lender hereby agree as follows:

## ARTICLE I.
## DEFINITIONS

SECTION 1.1.    General Definitions.  As used herein, the following terms shall have the meanings herein specified (to be equally applicable to both the singular and plural forms of the terms defined):

"Agreement" means this Debtor-In-Possession Loan and Security Agreement, as amended, supplemented or otherwise modified from time to time.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as that title may be amended from time to time, or any successor statute.

"Bankruptcy Court" has the meaning specified in the first recital.

"Base Rate" means six percent (6%) per annum.

"Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or permitted by law to close.

"Carve-Out" has the meaning specified in the Orders and includes, without limitation, those fees of the clerk of the Bankruptcy Court, fees of the United States Trustee for the Southern District of New York, and the professional fees and expenses incurred by the Borrower and the Official Committee of Unsecured Creditors in connection with the Chapter 11 Case.

"Chapter 11 Case" means the Borrower's chapter 11 case pending in the Bankruptcy Court, Case No. 11-10723 (SHL).

"Closing Date" means the date of execution and delivery of this Agreement.

"Collateral" means all Receivables, Equipment, Inventory, and all other property of the Borrower and all other collateral specified in this Agreement.

"Collections" means all cash, funds, checks, notes, instruments, any other form of remittance tendered by account debtors in respect of payment of Receivables of the Borrower and any other payments received by the Borrower with respect to any other Collateral.

"DIP Lender" has the meaning specified in the introductory paragraph.

"DIP Loan Documents" means this Agreement and all documents and instruments to be delivered by the Borrower under or in connection with this Agreement, as each of the same may be amended, supplemented or otherwise modified from time to time, including, without limitation, the Note.

"Effective Date" means the date on which all of the conditions specified in Section 5.1 shall have been satisfied.

"Equipment" means all machinery, equipment, furniture, fixtures, leasehold improvements, tools, materials, storage and handling equipment, computer equipment and hardware, including central processing units, terminals, drives, memory units, printers, keyboards, screens, peripherals and input or output devices, and other equipment of every kind and nature and wherever situated now or hereafter owned by the Borrower or in which the Borrower may have any interest as lessee or otherwise (to the extent of such interest), together with all additions and accessions thereto, all replacements and all accessories and parts therefor, all manuals, blueprints, warranties and records in connection therewith and all rights against suppliers, warrantors, manufacturers, and sellers or others in connection therewith, together with all substitutes for any of the foregoing.

"Event of Default" means the occurrence of any of the events specified in Section 5.1.

"Expiration Date" means the earliest of (i) the Maturity Date and (ii) the occurrence of an Event of Default.

"Filing Date" has the meaning specified in the first recital.

"Final Order" means an order of the Bankruptcy Court, in form and substance satisfactory to the Lender, approving the financing transactions under the DIP Loan Documents on a final basis.

"Interim Order" means an order of the Bankruptcy Court which is in form and substance satisfactory to the Lender, approving on an interim and limited basis after an interim hearing under Fed. R. Bankr. P. 4001(c) pending entry of a Final Order the financing transactions under the DIP Loan Documents.

2

"Inventory" means all present and future goods intended for sale, lease or other disposition including, without limitation, all raw materials, work in process, finished goods and other retail inventory, goods in the possession of outside processors or other third parties, consigned goods (to the extent of the consignee's interest therein), materials and supplies of any kind, nature or description which are or might be used in connection with the manufacture, packing, shipping, advertising, selling or finishing of any such goods, all documents of title or documents representing the same and all records, files and writings with respect thereto.

"Lien" means any lien, claim, charge, pledge, security interest, assignment, hypothecation, deed of trust, mortgage, lease, conditional sale, retention of title or other preferential arrangement having substantially the same economic effect as any of the foregoing, whether voluntary or imposed by law.

"Maturity Date" means the later of September 30, 2011 and the date of entry of an order confirming the Debtor's Reorganization Plan.

"Obligations" means and includes all loans, advances, debts, liabilities, obligations, covenants and duties owing by the Borrower to the DIP Lender of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, in each case, which may arise under, out of, or in connection with, the Orders, this Agreement, the Note, the other DIP Loan Documents or any other agreement executed in connection herewith. The term includes, without limitation, all interest, charges, expenses, , attorneys' fees, and any other sum properly chargeable to the Borrower under this Agreement, the Note, the other DIP Loan Documents or any other agreement executed in connection herewith or therewith.

"Orders" means the Interim Order and the Final Order.

"Permitted Liens" means (i) such of the following as to which no enforcement, collection, execution, levy or foreclosure proceeding shall have been commenced and be continuing (unless such enforcement, collection, levy or foreclosure is being contested by the Borrower in good faith by appropriate proceedings diligently conducted and for which adequate reserves are being maintained in accordance with GAAP): Liens for taxes, assessments and other governmental charges or levies or the claims or demands of landlords, carriers, warehousemen, mechanics, laborers, materialmen and other like Persons arising by operation of law in the ordinary course of business for sums which are not yet due and payable, and (ii) deposits or pledges to secure the payment of bid or performance bonds, or other obligations of a like nature incurred in the ordinary course of business, including, without limitation, the Senior Lien.

"Person" means any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, unincorporated organization, joint stock company, association, corporation, institution, entity, party or government (including any division, agency or department thereof) or any other legal entity, whether acting in an individual, fiduciary or other capacity, and, as applicable, the successors, heirs and assigns of each.

3

"Receivables" means all present and future accounts, cash, contract rights, promissory notes, chattel paper, investment property, documents, tax refunds, rights to receive tax refunds, bonds, certificates, insurance policies, insurance proceeds, patents, patent applications, copyrights (registered and unregistered), royalties, licenses, license rights, permits, franchise rights, authorizations, customer and supplier lists, rights of indemnification, contribution and subrogation, leases, computer tapes, programs, discs and software, trade secrets, computer service contracts, trademarks, trade names, service marks and names, logos, goodwill, deposits, causes of action, choses in action, judgments, designs, blueprints, plans, know-how, all other general intangibles, claims against third parties of every kind or nature, investment securities, notes, drafts, acceptances, letters of credit, rights to receive payments under letters of credit, book accounts, security accounts, deposit and other accounts and all money, balances, credits, deposits or other financial assets therein or represented thereby, credits and reserves and all forms of obligations whatsoever owing, instruments, documents of title, leasehold rights in any merchandise or goods, and books, ledgers, files and records with respect to any collateral or security, together with all right, title, security and guaranties with respect to any Receivable, including any right of stoppage in transit.

"Reorganization Plan" means a plan of reorganization (or liquidation) for the Borrower proposed in the Chapter 11 Case pursuant to Sections 1121, et seq. of the Bankruptcy Code, in form and substance satisfactory to the DIP Lender.

"Senior Obligations" means the Borrower's obligations to Capital One Bank.

"Senior Lien" means the Lien securing the Senior Obligations.

"Superpriority Claim" means a claim against the Borrower in the Chapter 11 Case which is an administrative expense having priority over any and all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code, subject, however to the Carveout.

"Term Loan" has the meaning specified in Section 2.1(a).

"Term Loan Note" has the meaning specified in Section 2.1(b).

## ARTICLE II.
## THE TERM LOAN

Section 2.1 General Provisions

(a) The DIP Lender agrees, subject to the terms and conditions of this Agreement, to make a one-time term loan to the Borrower on the Effective Date in the principal amount of $1,000.000 (the "**Term Loan**").

(b) The Term Loan shall be evidenced by a promissory note payable to the order of the Lender in the form of **Exhibit "A "** (as amended, supplemented or otherwise modified

4

from time to time, the "**Term Loan Note**") executed by Borrower and delivered to the Lender on the Effective Date.

(c) The principal amount of the Term Loan together with all accrued and unpaid interest thereon shall be payable on or before the Maturity Date, provided that the entire outstanding principal amount of the Term Loan, together with all accrued and unpaid interest thereon, shall become due and payable on the Expiration Date. Amounts repaid on account of the Term Loan may not be re-borrowed.

(d) The Borrower may, at any time and from time to time, prepay the Term loan, in whole or in part without premium or penalty.

Section 2.2 Application of Proceeds. The proceeds of Term Loan shall be used by the Borrower (i) to pay fees provided for under this Agreement and the DIP Lenders' costs, fees and expenses (including attorneys' fees and expenses) incurred in connection with the preparation, negotiation and delivery of this Agreement and the other DIP Loan Documents and (ii) for general corporate purposes relating to the Borrower's post-Filing Date operations, subject to the terms of this Agreement and the Orders, as applicable.

Section 2.3 Term. The term of this Agreement shall be for a period from the Effective Date to but not including the Expiration Date unless sooner terminated in accordance with the terms of this Agreement. Notwithstanding the foregoing, the Borrower shall have no right to terminate this Agreement at any time that any principal of or interest on any Term Loan is outstanding, except upon prepayment of all Obligations and the satisfaction of all other conditions set forth in the DIP Loan Documents with respect thereto.

## ARTICLE III.
## SECURITY

SECTION 3.1 General. To secure the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all of the Obligations, the Borrower hereby grants to the Lender a Lien on and security interest in all of its right, title and interest in and to its Receivables, Equipment, Inventory and all other personal property in all of its forms, wherever located, whether now owned or hereafter acquired, and all additions and accessions thereto and substitutions and replacements therefor and improvements thereon, and all proceeds (whether in the form of cash or other property) and products thereof including, without limitation, all proceeds of insurance covering the same and all tort claims in connection therewith.

SECTION 3.2 Recourse to Security. Recourse to security shall not be required for any Obligation hereunder and the Borrower hereby waives any requirement that the DIP Lender exhaust any right or take any action against any of the Collateral before proceeding to enforce the Obligations against the Borrower.

1707998 v2/NY

SECTION 3.3 <u>Continuation of Liens, Etc.</u>  The Borrower shall defend the Collateral against all claims and demands of all Persons at any time claiming any interest therein, other than claims relating to Liens permitted by the DIP Loan Documents.  The Borrower agrees to comply with the requirements of all state and federal laws to grant to the DIP Lender valid and perfected first priority security interests in the Collateral subject to the Senior Lien.  The DIP Lender is hereby authorized by the Borrower to sign the Borrower's name on any document or instrument as may be necessary or desirable to establish and maintain the Liens covering the Collateral and the priority and continued perfection thereof or file any financing or continuation statements or similar documents or instruments covering the Collateral whether or not the Borrower's signature appears thereon.  The Borrower agrees, from time to time, at the DIP Lender's request, to file notices of Liens, financing statements, similar document or instruments, and amendments, renewals and continuations thereof, and cooperate with the DIP Lender's representatives, in connection with the continued perfection (and the priority status thereof) and protection of the Collateral and the DIP Lender's Liens thereon.  The Borrower agrees that the DIP Lender may file a carbon, photographic or other reproduction of this Agreement (or any financing statement related hereto) as a financing statement.

SECTION 3.4 <u>Power of Attorney</u>.  The Borrower hereby appoints and constitutes the DIP Lender as the Borrower's attorney-in-fact to sign the Borrower's name on any of the documents, instruments and other items to make any filings under the Uniform Commercial Code covering any of the Collateral, and, upon the occurrence and during the continuance of an Event of Default, (i) to give or sign the Borrower's name to any notices or statements necessary or desirable to create or continue the Lien on any Collateral granted hereunder, and (ii) to make any payment or take any act necessary or desirable to protect or preserve any Collateral. This power of attorney is coupled with an interest and is irrevocable.

## ARTICLE IV.
## INTEREST, FEES AND EXPENSES

SECTION 4.1 <u>Interest</u>.  Interest on the Term Loan shall accrue at the Base Rate, and the Borrower shall pay all accrued interest at such time as the Borrower is required to pay the principal amount of the Term Loan.

SECTION 4.2 <u>Interest After Event of Default</u>.  From the date of occurrence of any Event of Default until the earlier of the date upon which (i) all Obligations shall have been paid and satisfied in full or (ii) such Event of Default shall have been cured or waived, interest on the Term Loan shall be payable on demand at a rate <u>per</u> <u>annum</u> equal to six percent (8%).

SECTION 4.3 <u>Calculations</u>.  All calculations of interest and fees hereunder shall be made by the DIP Lender on the basis of a year of three hundred sixty days for the actual number of days elapsed in the period for which such interest or fees are payable.  Each determination by the DIP Lender of an interest rate, fee or other payment hereunder shall be conclusive and binding for all purposes, absent manifest error.

## ARTICLE V.

1707998 v2/NY

## CONDITIONS OF LENDING

SECTION 5.1 <u>Conditions to the Term Loan</u>.  The obligation of the DIP Lender to make the Term Loan is subject to the satisfaction of the following conditions prior to or concurrent with the Term Loan:

(a)  The DIP Lender shall have received the following, each dated the date of the Term Loan or as of an earlier date acceptable to the Lender, in form and substance satisfactory to the DIP Lender:

(i)  the Interim Order, entered by the Bankruptcy Court in the Chapter 11 Case not later than fifteen days after the hearing before the Bankruptcy Court on the Borrower's request to obtain the Term Loan, which shall be in full force and effect and shall not have been appealed, vacated, stayed, reversed, modified or amended; and

(ii)  the Term Loan Note, duly executed by the Borrower and payable to the order of the DIP Lender.

(b)  There shall be no pending or, to the knowledge of the Borrower after due inquiry, threatened litigation, proceeding, inquiry or other action seeking an injunction or other restraining order, damages or other relief with respect to the transactions contemplated by this Agreement or the other DIP Loan Documents.

(c)  The Borrower shall have paid all reasonable fees and expenses of the DIP Lender in connection with the negotiation, preparation, execution and delivery of the DIP Loan Documents (including, without limitation, the fees and expenses of counsel to the DIP Lender).

## ARTICLE VI.
## REPRESENTATIONS AND WARRANTIES

SECTION 6.1 <u>Representations and warranties of the Borrower</u>.  The Borrower represents and warrants as follows (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct in all material respects only as of such specified date):

(a)  <u>Authority</u>.  The Borrower has the requisite corporate power and authority to execute, deliver and perform its obligations under each of the DIP Loan Documents to which it is a party.  All action necessary for the execution, delivery and performance by each Loan Party of the DIP Loan Documents to which it is a party (including the consent of shareholders where required) has been taken.

(b)  <u>Enforceability</u>.  Upon entry of the Interim Order by the Bankruptcy Court in the Chapter 11 Case, this Agreement is and, when executed and delivered, each other DIP Loan Document to which the Borrower is a party, will be, the legal, valid and binding obligation of the Borrower enforceable in accordance with its terms, except as enforceability may be limited by

7

(i) bankruptcy, insolvency or similar laws affecting creditors' rights generally and (ii) general principles of equity.

(c) <u>No Conflict</u>.  The execution, delivery and performance by the Borrower of each DIP Loan Document to which it is a party does not and will not contravene (i) upon entry of the Interim Order, the agreement of the Borrower or (ii) any requirement of law (unless the DIP Loan Documents are rejected by the Bankruptcy Court).

(d) <u>Consents and Filings</u>.  No consent, authorization or approval of, or filing with or other act by, any shareholders of the Borrower, any governmental authority or any other Person is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement or any other DIP Loan Document, the consummation of the transactions contemplated hereby or thereby or the continuing operations of the Borrower following such consummation, except the entry of the Interim Order by the Bankruptcy Court in the Chapter 11 Case and the consent of the holder of the Senior Lien.

(e) <u>Title to Property</u>.  The Borrower has (i)  good and marketable title to all of its other property, in each case free and clear of Liens other than Permitted Liens.

(f) <u>Rights in Collateral; Priority of Liens</u>.  All of the Collateral is owned or leased by the Borrower , free and clear of any and all Liens in favor of third parties other than Liens in favor of the Lender and the Permitted Liens.  Upon the filing of a Uniform Commercial Code financing statement with the Secretary of State of New York naming the Borrower as debtor and the DIP Lender as secured party, and describing therein as Collateral "all assets" or "all personal property" of the Borrower, and entry of the applicable Orders, the Liens granted pursuant to the DIP Loan Documents constitute valid, enforceable and perfected first Superpriority Liens on the Collateral subject, however, to the Senior Lien and the Carveout.

SECTION 6.2. <u>Survival of Representations and Warranties</u>.  All representations and warranties made by the Borrower in this Agreement and in each other DIP Loan Document to which it is a party shall survive the execution and delivery hereof and thereof and the closing of the transactions contemplated hereby and thereby.

**SECTION VII**
**Covenants**

Section 7.1 <u>Affirmative Covenants</u>.

(a) <u>Corporate Existence</u>.  The Borrower shall, (i) maintain its corporate existence, (ii) maintain in full force and effect all material licenses, bonds, franchises, leases, trademarks, qualifications and authorizations to do business, and all material patents, contracts and other rights necessary or advisable to the profitable conduct of its businesses, and (iii) continue in, and limit its operations to, the same lines of business as presently conducted by it.

8

(b) <u>Maintenance of Property</u>.  The Borrower shall keep all property useful and necessary to its business in good working order and condition (ordinary wear and tear excepted) in accordance with its past operating practices.

(c) <u>Taxes</u>.  The Borrower shall pay, when due, (i) all post-Filing Date tax assessments, and other governmental charges and levies imposed against it or any of its property and (ii) all post-Filing Date lawful claims that, if unpaid, might by law become a Lien upon its property; <u>provided</u>, <u>however</u>, that, unless such tax assessment, charge, levy or claim has become a Lien on any of the property, it need not be paid if it is being contested in good faith, by appropriate proceedings diligently conducted and an adequate reserve or other appropriate provision shall have been established therefor as required in accordance with GAAP.

(d) <u>Insurance</u>.  The Borrower shall maintain public liability insurance, business interruption insurance, third party property damage insurance and replacement value insurance on its assets (including the Collateral) as in effect as of the Filing Date.

Section 7.2 <u>Negative Covenants</u>.

(a) <u>Liens, Etc.</u>  The Borrower will not directly or indirectly, at any time create, incur or assume any Lien on or with respect to any assets, other than:

(i)     Liens created hereunder; and

(ii)     The Permitted Liens.

(b) <u>Dip Financing</u>.  The Borrower will not, directly or indirectly, incur or apply to the Bankruptcy Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents or as expressly authorized pursuant to the Orders or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than (A) as expressly contemplated by the Orders or (B) as approved by the DIP Lender.

(c) <u>Alteration of Rights of DIP Lender</u>.  The Borrower will not, directly or indirectly, seek to limit, affect or modify, or apply (or permit the application by any Person) to the Bankruptcy Court to limit, affect or modify any of the DIP Lender's rights with respect to the Obligations, including rights with respect to the Collateral and the priority thereof and payment of various amounts, pursuant to any Reorganization Plan or otherwise.

(d) <u>Chapter 11 Claims</u>.  Except for the Carve-Out and in connection with, and only to the extent incurred on or after a Reorganization Plan is approved by the Bankruptcy Court, the Borrower shall not apply (or permit the application by any Person) to the Bankruptcy Court for the authority to, directly or indirectly, incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than post-Filing Date Permitted Liens) against the Borrower or any of its assets in the Chapter 11 Case to be *pari passu* with, or senior to, the Liens and claims of the DIP Lender granted and arising hereunder and under the Orders.

9

## ARTICLE VIII.
## SUBORDINATION

SECTION 8.1 Subordination

(a) Except as specified in subsection (b) hereof, all Obligations, and all rights and remedies of the DIP Lender with respect thereto, are and shall continue to be subject, subordinate and junior in right of payment to the Senior Obligations until the date of the indefeasible payment in full of the Senior Obligations and whether or not such interest, fees, costs or expenses are allowed or allowable in the Chapter 11 Case.

(b) So long as no Event of Default has occurred and is continuing, the DIP Lender may receive and retain (A) interest on the Obligations, and (B) the principal payments. Any amounts received by any DIP Lender as payment on the Obligations in violation of this subsection shall be held in trust for the Senior Lender and turned over to the Senior Lender in the form received and applied against the Senior Obligations until the Senior Obligations have been indefeasibly paid in full.

## ARTICLE IX.
## EVENTS OF DEFAULT

SECTION 9.1. Events of Default. The occurrence of any of the following events shall constitute an "Event of Default":

(a) the Borrower shall fail to pay any principal, interest, fees, expenses or other Obligations when payable, whether at stated maturity, by acceleration, or otherwise; or

(b) the Borrower shall default in the performance or observance of any agreement, covenant, condition, provision or term contained in this Agreement or any other DIP Loan Document and such failure continues for a period of fifteen days after receipt of written notice from the Lender (unless such default shall be of such nature that it cannot be reasonably cured within such fifteen day period); or

(c) the Borrower shall default in the performance or observance of any agreement, covenant, condition, provision or term contained in agreements with respect to the Senior Obligations permitting the holder of the Senior Obligations to accelerate the Senior Obligations;

(d) the Borrower shall dissolve, wind up or otherwise cease to conduct its business; or

(e) the Bankruptcy Court shall enter an order dismissing the Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code, or appointing a trustee in the Chapter 11 Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Borrower's business (beyond those set forth in Sections 1106(a)(3) or (4) under Bankruptcy Code Section 1106(b)); or

10

(f)  the Borrower shall fail to comply with the terms of the Orders in any material respect; or

(g)  an order of the Bankruptcy Court shall be entered granting a claim or Lien that ranks *pari passu* with or senior to any claim or Lien granted to or for the benefit of the DIP Lender under this Agreement or any of the Orders, or

(h)  any Person shall file a Reorganization Plan not approved by the DIP Lender; or

## SECTION X.
## Acceleration

(a)  Upon the occurrence and during the continuance of an Event of Default, the DIP Lender may take any or all of the following actions:

(i)  declare all Obligations immediately due and payable without presentment, demand, protest or any other action or obligation of the DIP Lender.

(ii)  remove for copying all documents, instruments, files and records (including the copying of any computer records) relating to the Borrower's Receivables or use (at the expense of the Borrower) such supplies or space of the Borrower at the Borrower's places of business necessary to administer and collect such Receivables;

(iii)  accelerate or extend the time of payment, compromise, issue credits, or bring suit on the Borrower's Receivables (in the name of the Borrower or the DIP Lender) and otherwise administer and collect such Receivables;

(iv)  sell, assign and deliver the Borrower's Receivables with or without advertisement, at public or private sale, for cash, on credit or otherwise, subject to applicable law; and

(v)  foreclose the security interests created pursuant to the DIP Loan Documents by any available procedure, or take possession of any or all of the Collateral, without judicial process and enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same.

(b)  The DIP Agent may bid or become a purchaser at any sale, free from any right of redemption, which right is expressly waived by the Borrower.  If notice of intended disposition of any Collateral is required by law, it is agreed that five days' notice shall constitute reasonable notification.  The Borrower will assemble the Collateral and make it available at such locations as the DIP Lender may specify, whether at the premises of the Borrower or elsewhere, and will make available to the DIP Lender the premises and facilities of the Borrower for the purpose of the DIP Lender's taking possession of or removing the Collateral or putting the Collateral in saleable form.  The Borrower hereby grants the DIP Lender a license to enter and

11

occupy any of the Borrower's leased or owned premises and facilities, without charge, for up to one hundred twenty days to exercise any of the DIP Lender's rights or remedies.

(c)     If an Event of Default shall have occurred and be continuing, subject to the rights of the Senior Lender, the DIP Lender shall apply the proceeds of any collection or sale of Collateral as well as any Collateral consisting of cash:

FIRST, to the payment of all costs and expenses incurred by the DIP Lender in connection with such collection or sale or otherwise in connection with this Agreement, including all court costs and the reasonable fees and expenses of its agents and legal counsel, the repayment of all advances made by the DIP Lender hereunder or under any other DIP Loan Document on behalf of the Borrower and any other costs or expenses incurred by the DIP Lender in connection with the exercise of any right or remedy hereunder or under any other DIP Loan Document;

SECOND, to the payment in full of the other Obligations; and

THIRD, to the Borrower or its successors or assigns, or as a court of competent jurisdiction may otherwise direct.

## ARTICLE XI.
## GENERAL PROVISIONS

SECTION 11.1. Notices.  Except as otherwise provided herein, all notices and other communications hereunder shall be in writing and sent by certified or registered mail, return receipt requested, by overnight delivery service, with all charges prepaid, or by telecopier followed by a hard copy sent by regular mail, if to the DIP Lender, then to Rosen & Associates, 747 Third Avenue, New York, New York 10017 (Attn: Sanford P. Rosen, Esq.), with a copy to Gerald Lazar, 902 Broadway, New York, New York 10010; if to Borrower, then to Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036 (Attn: James A. Beldner, Esq.).  All such notices and correspondence shall be deemed given (i) if sent by certified or registered mail, three Business Days after being postmarked, (ii) if sent by overnight delivery service, when received at the above stated addresses or when delivery is refused and (iii) if sent by telecopier transmission, when such transmission is confirmed.

SECTION 11.2. Delays; Partial Exercise of Remedies.  No delay or omission of the DIP Lender to exercise any right or remedy hereunder shall impair any such right or operate as a waiver thereof.  No single or partial exercise by the DIP Agent or any DIP Lender of any right or remedy shall preclude any other or further exercise thereof, or preclude any other right or remedy.

12

SECTION 11.3 <u>Amendments and Waivers</u>. No amendment, modification or waiver of any provision of this Agreement or any other DIP Loan Document shall be effective unless it is pursuant to a written agreement and signed by the Borrower and the DIP Lender.

SECTION 11.4 <u>Assignment</u>

(a) <u>Borrower Assignment</u>.  The Borrower shall not assign this Agreement or any rights or obligations hereunder without the prior written consent of the the DIP Lender.

(b) <u>Counterparts</u>.  This Agreement and any waiver or amendment hereto may be executed in counterparts and by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.  This Agreement and each of the other DIP Loan Documents may be executed and delivered by telecopier or other facsimile transmission all with the same force and effect as if the same were a fully executed and delivered original manual counterpart.

Section 11.5 <u>Severability</u>.  In case any provision in or obligation under this Agreement, any Note or any other DIP Loan Document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

Section 11.6 <u>Entire Agreement; Successors and Assigns</u>.  This Agreement and the other DIP Loan Documents constitute the entire agreement between the parties, supersede any prior written and verbal agreements between them, and shall bind and benefit the parties and their respective successors and permitted assigns.

Section 11.6 <u>Orders</u>.  To the extent that any term or provision of this Agreement or any other DIP Loan Document is inconsistent with the terms or provisions of the Interim Order or the Final Order, it is agreed that the Interim Order or the Final Order, as the case may be, shall govern.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their proper and duly authorized officers as of the date first set forth above.

LEHR CONSTRUCTION CORP.

By: _____
Name:
Title:


Gerald Lazar


_____

13

**EXHIBIT E**

**Budget**

1705884 v2/NY

# Lehr Cash Flow/Budget

| Week Ending | 3/25 | 4/1 | 4/8 |
|---|---|---|---|
| | | | |
| **Total Sales** | 700,000 | 5,033,000 | 200,000 |
| | | | |
| **Cash Collected** | 2,900,000 | 350,000 | 2,400,000 |
| | | | |
| | | | |
| **Disbursements** | | | |
| **Sub Contractors** | 2,221,000 | 1,250,000 | 1,836,000 |
| **Labor – Field** | 112,000 | 95,000 | 95,000 |
| **Insurance** | 60,000 | 60,000 | 60,000 |
| **Rent** | - | 84,000 | - |
| **Taxes** | 18,000 | 18,000 | 18,000 |
| **Office Expense** | 9,000 | 9,000 | 10,000 |
| **Payroll** | 180,000 | 180,000 | 172,000 |
| **Fees - Professional** | - | - | - |
| | | | |
| **Total Disbursements** | 1,014,000 | 1,696,000 | 2,191,000 |
| | | | |
| | | | |
| **Net Cash Flow (Cash collected less disbursements)** | 300,000 | <1,346,000> | 209,000 |
| **Cash – Beginning of Period** | 2,052,000 | 2,352,000 | 1,006,000 |
| **Net Cash - End of period** | 2,352,000 | 1,006,000 | 1,215,000 |
| | | | |
| | | | |
| **Receivables** | 18,464,000 | 23,147,000 | 20,947,000 |
| | | | |