Todd M. Galante (TG-5532)
Jason C. DiBattista (JD-2859)
**LeClairRyan, A Professional Corporation**
830 Third Avenue
Fifth Floor
New York, New York 10022
Telephone: (212) 430-8020
Facsimile: (212) 430-8079

*Counsel for F&G Mechanical Corporation and
Meadowlands Fire Protection*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
                         :

In re:                        :

                         :    Chapter 11

LEHR CONSTRUCTION CORP.,    :

                         :    Case No. 11-10723 (SHL)

           Debtor.     :

                         :

                         :
-------------------------------------------------------- x

**LIMITED OBJECTION OF F&G MECHANCIAL CORPORATION AND
MEADOWLANDS FIRE PROTECTION TO DEBTOR'S MOTION FOR ENTRY OF AN
ORDER AUTHORIZING PAYMENT OF PREPETITION CRITICAL CONSTRUCTION
VENDOR CLAIMS AND TO PROVIDE ADEQUATE ASSURANCE OF FUTURE
PERFORMANCE FOR SUBCONTRACTORS AND MATERIALMEN
<u>WHO HAVE STATUTORY LIEN RIGHTS</u>**

      F&G Mechanical Corporation ("<u>F&G</u>") and Meadowlands Fire Protection ("<u>MFP</u>"), by

and through their undersigned counsel, hereby submit this limited objection (the "<u>Limited</u>

<u>Objection</u>") to the motion of Lehr Construction Corporation (the "<u>Debtor</u>") for entry of an order

authorizing payment of prepetition critical construction vendor claims and to provide adequate

assurance of future performance for subcontractors and materialmen who have statutory lien

rights (the "Critical Vendor Motion").  In support of the Limited Objection, F&G and MFP

respectfully state as follows:

**JURISDICTION**

1.       This Court has jurisdiction over this Chapter 11 case, the Critical Vendor Motion

and the Limited Objection pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) and (O) and 1334.  The

Critical Vendor Motion and the Limited Objection are core proceedings as defined in 28 U.S.C.

§ 157.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.       The Secaucus, New Jersey NBA Project**

2.       The Debtor  entered into an agreement with NBA Properties, Inc. (the "NBA"), in

connection with a construction project located at 100 Plaza Drive, Secaucus, New Jersey 07094

(the "Project") being completed by the Debtor, as general contractor, for the NBA, the Project

tenant (the "NBA Agreement").

3.       The NBA Agreement requires that the NBA make certain periodic payments to

the Debtor on account of construction and related costs in connection with the Project.

4.       The Debtor, as general contractor, contracted with various sub-contractors to

perform work in connection with the Project.

5.       On or about December 16, 2010, the Debtor issued Purchase Order No. 155282

(the "F&G Purchase Order") to F&G in the amount of $1,463,000.00 in connection with the

installation of certain heating, ventilation and air conditioning (HVAC) systems by F&G in

connection with the Project.[1]

---

[1]        A copy of the F&G Purchase Order was attached as Exhibit A to the Motion to Compel (as defined below),
filed with the Court on March 14, 2011.

6.　　F&G counter-executed the F&G Purchase Order as sub-contractor on or about January 28, 2011.

7.　　On or about December 16, 2010, the Debtor issued Purchase Order No. 155281 (the "MFP Purchase Order" and together with the F&G Purchase Order, the "Purchase Orders") to MFP in the amount of $486,000.00 in connection with the installation of certain fire prevention/protection systems by MFP in connection with the Project.[2]

8.　　MFP counter-executed the MFP Purchase Order as sub-contractor on or about February 1, 2011.

9.　　On or about February 18, 2011, F&G issued Invoice No. 6356 to the Debtor (the "F&G Invoice"), in the original contract amount of $1,463,000.00, and setting forth, among other things, the payment terms in connection therewith.[3]

10.　　On or about February 23, 2011, MFP issued Invoice No. 52969 to the Debtor (the "MFP Invoice" and together with the F&G Invoice, the "Invoices"), in the original contract amount of $486,000.00, and setting forth, among other things, the payment terms in connection therewith.[4]

11.　　F&G and MFP commenced work on the Project in or about late January, 2011, including but not limited to providing goods, materials and services in connection with the Project, as a sub-contractor, pursuant to the Purchase Orders and the Invoices.

**B.　The Chapter 11 Case**

12.　　On February 21, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), Case No.

---

[2]　　A copy of the MFP Purchase Order was attached as Exhibit B to the Motion to Compel.

[3]　　A copy of the F&G Invoice was attached as Exhibit C to the Motion to Compel.

[4]　　A copy of the MFP Invoice was attached as Exhibit D to the Motion to Compel.

11-10723 (SHL) (the "Chapter 11 Case") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

13.     To date, the Debtor has not made any payments to F&G and/or MFP on account of either pre-petition or post-petition amounts owed to F&G and MFP pursuant to the Purchase Orders and the Invoices.

14.     On March 14, 2011, F&G and MFP filed its *Motion for Entry of an Order Pursuant to Sections 503(b)(1), 507(a), 365(d)(2) and 362(d)(1) of the Bankruptcy Code: (i) Compelling Allowance and Immediate Payment of Post-Petition Administrative Expense Claims Once Such Funds are Received by the Debtor from the NBA; and (ii) Compelling the Debtor to Assume or Reject Certain Executory Contracts or, in the Alternative, Modifying the Automatic Stay to Permit F&G and MFP to Terminate the Executory Contracts at Their Sole Discretion* (the "Motion to Compel").

15.     The Motion to Compel was accompanied by a motion for an order shortening the time period for notice of the Motion to Compel.  On March 16, 2011, the Court entered the order shortening time, and scheduled a hearing on the Motion to Compel for March 23, 2011 at 11:00 a.m.

## C.     The Critical Vendor Motion

16.     At the urging of certain of its critical and essential sub-contractors, including F&G and MFP, on March 9, 2011, the Debtor filed its *Motion for Entry of an Order Authorizing Payment of Prepetition Critical Construction Vendor Claims and to Provide Adequate Assurance of Future Performance for Subcontractors and Materialmen Who Have Statutory Lien Rights* (the "Critical Vendor Motion").  A hearing on the Critical Vendor Motion is scheduled for March 23, 2011 at 11:00 a.m.

17.     In connection with the Critical Vendor Motion, the Debtor seeks authorization to, among other things:

- pay and all outstanding pre-petition obligations owed to its Critical Construction Vendors;

- continue to pay any post-petition obligations to its Critical Construction Vendors in the ordinary course of business; and

- segregate the funds its receives from the NBA for payment to such Critical Construction Vendors into a separate bank account for the benefit of the Critical Construction Vendors that have lien rights pursuant to New Jersey law.

*See* Critical Vendor Motion, ¶ 7.

18.     In addition, in the Critical Vendor Motion, the Debtor requests the following relief:

- if any Critical Construction Vendor does not continue to provide services on such terms, then (a) any payment on account of a prepetition claim received by such Critical Construction Vendor shall be deemed, in the Debtor's sole discretion, an improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written request by the Debtor and (b) upon recovery by the Debtor, any prepetition claim of such Critical Construction Vendor shall be reinstated as if the payment had not been made;

- if there exists an outstanding post-petition balance due from the Debtor to such Critical Construction Vendor, the Debtor may elect to recharacterize and apply any payments made pursuant to this Order to such outstanding post-petition balance, and the Critical Construction Vendor shall repay immediately in cash to the Debtor such paid amounts that exceed the post-petition obligations then outstanding and without any claim right of setoff or recoupment against the Debtor resulting thereby;

- nothing in the Critical Vendor Motion shall impair or prejudice the Debtor's or, to the extent permitted by applicable law, the official committee of unsecured creditors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Construction Vendor. The Debtor does not concede that any liens (whether contractual, possessory, common law, statutory, or otherwise) or claims satisfied pursuant to the Critical Vendor Motion are valid, and the Debtor expressly reserves all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims; and

- Nothing in the Critical Vendor Motion, nor as a result of the Debtor's payment of any Critical Construction Vendor Claims pursuant to this Order, shall be deemed or construed as: (a) prejudicing any right the Debtor may have to contest the amount of or basis for any prepetition obligations owed to any Critical Construction Vendor; or (b) an admission as to the validity or priority of any claim against the Debtor; or (c) an assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code between the Debtor and any Critical Construction Vendor.

*See* Id.

## LIMITED OBJECTION

19. To be clear, F&G and MFP wholeheartedly support the Debtor's efforts to obtain authorization to identify and select Critical Construction Vendors (as defined in the Critical Vendor Motion), to pay any and all pre-petition obligations to those essential service providers, and to segregate the funds it receives from the NBA for payment to such Critical Construction Vendors into a separate bank account for the benefit of the Critical Construction Vendors. In fact, the Debtor filed the Critical Vendor Motion only after being urged to do so by various sub-contractors on the Project, including F&G and MFP, which had voiced their legitimate concerns regarding the Project and queried the Debtor's willingness to pay them in full as critical vendors with respect to pre-petition goods, services and materials provided. The Debtor's primary purpose and clear intention in filing the Critical Vendor Motion was, therefore, to guarantee full payment to those vendors that the Debtor deems critical and essential comfort, and in fact require the Debtor to make those payments as soon as it receives said funding from the NBA (to the extent said funds are not already received) - therefore ensuring the maintenance of smooth operations in conjunction with the Project.

20. However, the Critical Vendor Motion, in its current form, gives F&G and MFP no such protections and/or assurances, as it (i) fails to include a list (either attached to the motion

itself, or filed under seal) of the vendors that the Debtor deems "critical" – leaving MFP and F&G twisting in the wind with respect to their significant pre-petition claims and whether such claims will be paid in full as part of the Debtor's payments to critical vendors (if approved); (ii) does not identify the amount of the pre-petition claims proposed to be paid to each individual critical vendor; and (iii) in the event the Critical Vendor Motion is granted, does not actually <u>require</u> the Debtor to make the pre-petition payments to the selected vendors by a date certain – it gives the Debtor authorization to make such payments their sole discretion.

21.    In this regard, F&G and MFP have incurred over $1.1 million in unpaid debt to date since they commenced work with respect to the Project in or about late January 2011 (which amount continues to accrue daily) and have continued to provide critical and essential goods, materials and services to the Debtor despite the Chapter 11 filing.  In addition, F&G and MFP have thus far forestalled the filing of, among other things, mechanics' liens and the taking of other actions with respect to the Project in reliance on the Debtor's statements that it would place F&G and MFP on its critical vendor list, if approved, and pay them in full.

22.    In exchange for their continued provision of goods, services and materials, F&G and MFP require certainty that (i) they will be included as one of the Debtor's Critical Construction Vendors; and (ii) be paid in full for all pre-petition claims against the Debtor immediately upon the Debtor's receipt of such funds from the NBA (to the extent that those funds have not already been received), as well as require assurances from the Debtor that such claims are allowed in full and not subject to dispute, attack or avoidance.  Since that is the intent of the Critical Vendor Motion anyway, providing F&G and MFP (as well as the other critical vendors) with such commitments should not be objectionable and should be included in any order issued with respect to the Critical Vendor Motion.

23.     Indeed, the Debtor acknowledges in the Critical Vendor Motion the extreme prejudice that sub-contractors such as F&G and MFP would suffer if they are not paid timely (as opposed to waiting to be paid in accordance with a confirmed bankruptcy plan):

> [i]n addition, many of the subcontractors have small operations and rely on a limited number of their own customers for their continued viability.  Such subcontractors have limited access to capital and can ill afford their own loss of operating revenues.

*See* Critical Vendor Motion, at ¶ 7.

24.     Simply put, it is not unreasonable to request that the Debtor commit to providing specific critical vendors with specific relief in the Critical Vendor Motion itself (or under seal as appropriate), as opposed to giving the Debtor an "out" to do as it pleases with respect to critical vendors such as F&G and MFP and/or others, which entities continued to perform essential services and provide valuable goods to the Debtor even in the face of a surprise Chapter 11 filing and having not been paid anything as yet.

25.     Moreover, the Critical Vendor Motion appears to seek to impose additional contractual obligations upon whichever parties are ultimately identified as Critical Construction Vendors, which is inappropriate.  For instance, as set forth more fully above, among other things, the Debtor proposes that if any Critical Construction Vendor does not continue to provide services post-petition, then (a) any payment on account of a prepetition claim received by such Critical Construction Vendor shall be deemed, in the Debtor's sole discretion, an improper post-petition transfer and, therefore, recoverable by the Debtor in cash upon written request by the Debtor and (b) upon recovery by the Debtor, any prepetition claim of such Critical Construction Vendor shall be reinstated as if the payment had not been made.  In addition, the Debtor proposes that if there exists an outstanding post-petition balance due from the Debtor to such Critical Construction Vendor, the Debtor may elect to recharacterize and apply any payments

made pursuant to this Order to such outstanding post-petition balance, and the Critical Construction Vendor shall repay immediately in cash to the Debtor such paid amounts that exceed the post-petition obligations then outstanding and without any claim right of setoff or recoupment against the Debtor resulting thereby.   Finally, notwithstanding the Debtor's proposed payment in full of pre-petition arrearages to the critical vendors, the Debtor seeks to retain the right to contest the pre-petition claims of the critical vendors.

26.     F&G and MFP, as well as the Debtor's other subcontractors, have valid and enforceable executory contracts with the Debtor that have not been assumed or rejected.[5]   *See* 11 U.S.C. § 365.   It is completely inequitable and unfair to allow the Debtor to essentially extort additional contractual terms (which are naturally favorable to the Debtor) from the critical sub-contractors, including F&G and MFP, in exchange for the Debtor's placement of the sub-contractors, including F&G and MFP, on the list of Critical Construction Vendors.   The Debtor has advised F&G and MFP on several occasions that they are in fact critical vendors entitled to full payment of their pre-petition claims, as well as other related protections.   In order to officially receive that status, F&G and MFP should not have additional, potentially onerous contractual and other conditions forced upon them, *i.e.*, "[i]n return for paying Critical Construction Vendor Claims, the Debtor will require that the applicable supplier or vendor provide favorable credit terms for the postpetition delivery of goods and services to the NBA Project."   *See* Critical Vendor Motion, ¶ 13.[6]

---

[5]      As indicated above, F&G and MFP filed the Motion to Compel on March 14, 2011, addressing this and other related issues.

[6]      Moreover, absent receipt of critical vendor status and the various protections associated therewith, F&G and MFP may, among other things, file mechanics' liens against the NBA and/or the owner of the property in conjunction with the Project.  F&G and MFP expressly reserve any and all such rights to assert and pursue such liens and any other appropriate actions.

27.     The bottom line is that, absent critical vendor protections and the protections sought in the Motion to Compel (scheduled for hearing the same day) F&G and MFP will have the option to cease working on the Project, which is a lose-lose situation for all parties. Therefore, F&G and MFP respectfully request that the Court grant the Limited Objection to the extent set forth herein.

**WHEREFORE**, F&G and MFP respectfully request the entry of an order granting the Limited Objection to the extent set forth herein, and granting such other and further relief as the Court deems just and proper.

Dated:  March 17, 2011

Respectfully submitted,

**LeClairRyan,**
A Professional Corporation

By:   */s/ Jason C. DiBattista*
Jason C. DiBattista (JD-2859)
Todd M. Galante (TG-5532)
830 Third Avenue, Fifth Floor
New York, New York 7102
Telephone:  (212) 430-8020
Facsimile:  (212) 430-8079

*Counsel for F&G Mechanical Corporation and Meadowlands Fire Protection*