UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
In re:                                              :    Chapter 11
                                                    :
LEHR CONSTRUCTION CORP.                             :    Case No. 11-10723 (SHL)
                                                    :
                        Debtor.                     :
                                                    :
--------------------------------------------------------X

# MEMORANDUM OF DECISION

A P P E A R A N C E S:

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Lehr Construction Corp.*
437 Madison Avenue
New York, New York 10022
  By:  Michael S. Weinstein, Esq.
       Jonathan L. Flaxer, Esq.

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
*Counsel for Robert B. Samuels, Inc.*
One North Lexington Avenue
White Plains, New York 10601
  By:  Jonathan S. Pasternak, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Robert B. Samuels ("Samuels") moves for permission to continue prosecuting a state court action against former principals of the Chapter 11 Debtor Lehr Construction Corp (the "Motion") [ECF No. 1074].[1] Samuels' complaint in that state court action—which is currently stayed—alleges that these Lehr principals are personally liable to Plaintiffs under Article 3-A of New York's Lien Law. Samuels complains that the principals allowed funds received by general contractor Lehr to be used for Lehr's general corporate purposes when the funds should have

---

[1] Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are to Case No. 11-10723.

been held in trust for subcontractor Samuels. The Trustee disagrees, arguing that claims for diversion of these funds were released by a settlement the Trustee reached on behalf of the estate with these same principals. The Trustee contends that permitting Samuels to resume its state court action will undermine or eliminate a trustee's abilities to settle with similar defendants in the future.

## BACKGROUND

### I. The Debtors' Business Operations, Trust Obligations, and Bankruptcy

The background here is not in dispute. Lehr served as a construction manager and general contractor for customers in the New York metropolitan area. *See* Trustee's Opp'n ¶ 1 [ECF No. 1119]. Lehr subcontracted electrical work to Samuels, which Lehr's customers needed to permanently improve eight premises in New York City. *See* Samuels' Mot. to Dissolve Stay ¶¶ 4-7 [ECF No. 1074]; Trustee's Opp'n ¶ 2; Samuels' New York State Action Complaint (defined below) ¶¶ 17-20, 26-29, 35-38, 44-47, 53-56, 62-65, 71-74, 80-83 [ECF No. 1074-1, Ex. 1] (identifying the eight premises). Lehr's customers paid for the work Lehr and its subcontractors performed for the eight New York City premises jobs. Trustee's Opp'n ¶ 3; *see also* Samuels' Mot. to Dissolve Stay ¶ 8 ("Upon information and belief," Lehr received payment in full for the eight NYC premises projects). Samuels, however, has not been paid for the electrical work and materials it provided to improve Lehr's payors' premises. Samuels' Mot. to Dissolve Stay ¶¶ 16, 23, 30, 37, 44, 51, 58, 65.

Under Article 3-A of New York's Lien Law, when a general construction contractor such as Lehr is hired to improve real property, it is obligated to hold funds paid by those real property owners (here, Lehr's eight NYC premises customers) in trust for the benefit of the subcontractors that worked to improve each respective payors' real property and to pay other expenses that

2

arose from improving that payors' real property. *See* NY Lien Law Article 3-A, § 71. When the customers paid Lehr for the eight New York City jobs, the payments created "trust assets" for eight separate trusts—created by Article 3-A of New York's Lien Law—and Lehr was the trustee for each. The Trustee reviewed Lehr's books and records and determined that "Lehr generally deposited payments from customers in commingled bank accounts and paid subcontractors from such accounts." Supplemental Declaration of Jonathan L. Flaxer in Support of Halper's Settlement ¶ 5 [ECF No. 706]; *see also* Declaration of Jonathan L. Flaxer in Support of Halper's Settlement ¶ 11 [ECF No. 689] (Lehr violated New York's Lien Law by failing to adequately maintain and monitor financial information, leading to the Trustee's difficulty determining for each job the amounts billed to or collected from a client. Lehr also used funds it held in trust under Article 3-A for non-Article 3-A purposes). All funds collected from the eight NYC jobs were commingled, and since his appointment the Trustee has not held "any non-commingled funds collected from any of the projects identified . . . by Samuels." Supp. Decl. of Flaxer in Support of Halper's Settlement ¶ 6. In discussing whether any funds "would be subject to 3-A because they would be traceable" to a customer's payment for a particular job, Trustee's counsel represented that "there are no such funds." Hr'g Tr. 58:2-16, Feb. 13, 2013 [ECF No. 731].[2]

---

[2] At a hearing on Halper's settlement agreement, Trustee's counsel represented that no traceable 3-A funds exist.

> The Court: What we're talking about is whether there are any 3-A funds. What I understand that to be is whether there are any separate 3-A funds that existed here . . . such that they would be subject to 3-A because they would be traceable. . . .
>
> Mr. Furth: Just to be clear, I will represent on the record right now there are no such funds . . . .

Hr'g Tr. 58:2-16, Feb. 13, 2013.

3

In February 2011, Lehr filed for protection under Chapter 11 of the Bankruptcy Code. A few months later, the Court appointed a Chapter 11 Trustee, Jonathan L. Flaxer. *See* Order Directing the Appointment of Chapter 11 Trustee [ECF No. 191]. Shortly after his appointment, the Trustee began to wind-down approximately thirty unfinished construction jobs. *See* Declaration of Flaxer in Support of Halper's Settlement ¶ 10 [ECF No. 689]. Prior to the Trustee's appointment, eight NYC customers paid Lehr in full under the terms of their general contracts, in providing funds for Lehr to pay the subcontractors that worked on the eight NYC jobs. *See* Samuels' Objection to Halper's Settlement ¶ 10 [ECF No. 700]. Those funds were used elsewhere, however, leaving inadequate funds to pay the subcontractors for work done to improve the eight NYC premises. *See id*. ¶¶ 27-28, 34-35, 41-42, 48-49, 55-56, 62-63, 69-70. Lehr's failure to pass payments on to its subcontractors left almost all of Lehr's outstanding jobs "upside down" when the Trustee was appointed, meaning that a customer's remaining obligation to Lehr under a general contract was insufficient to cover Lehr's remaining obligation to its subcontractors under subcontracts for that job. Supp. Decl. of Flaxer in Support of Halper's Settlement ¶ 4. The Trustee estimated that $3,500,000 remained in unpaid 3-A liabilities, and that $2,700,000 of that is owed to Lehr's subcontractors and "attributable to trust fund diversions. The remainder is . . . attributable to a variety of other factors, including unpaid accounts receivable." Hr'g Tr. 52:14-24, Feb. 13, 2013 [ECF No. 731].

**II.     State Court Actions Against Non-Debtor Former Lehr Principals for 3-A Trust Fund Diversion**

In June 2011, Samuels filed a state court complaint alleging that Lehr knowingly and wrongfully diverted 3-A trust assets, and that its non-debtor former principals were personally

4

liable for knowingly participating in that diversion.[3]  *See also* Samuels' Mot. to Dissolve Stay ¶ 10 [ECF No. 1074] (naming Gerald Lazar and/or Frederick Coffey as knowing participants in addition to Steve Halper, Todd Phillips, and John Does).  Approximately eight months later, another one of Lehr's subcontractors—Marlin Mechanical, Inc.—filed a similar complaint in the same state court and also alleged Lehr's principals were personally liable for knowingly participating in diverting 3-A funds.[4]  *See* Mem. in Support of Staying Marlin Mechanical's State Court Litigation, at 5, 8 [Case No. 12-01219, ECF No. 2].  Samuels asserts that Article 3-A trust beneficiaries can hold principals liable in a civil action for diverting trust assets under the New York Lien Law.  *See* Samuels' Mot. to Dissolve Stay ¶¶ 72-78.  Samuels' state court case seeks $1,499,000 but it has also filed a proof of claim against Lehr's estate for $1,702,147.60.  *See* Supp. Decl. of Flaxer in Support of Halper's Settlement ¶ 7.

In May 2012, the Court granted the Trustee a preliminary injunction to enjoin Marlin from prosecuting its pending state court action against the non-debtor principals.  *See* Order Enjoining Marlin from Further Prosecution of New York State Court Action [Case No. 12-01219, ECF No. 15].[5]  This Court explained—as recognized by the District Court in a related

---

[3]    Samuels' New York State Court Action is styled as Robert B. Samuels, Inc., on behalf of itself and as representative for all others who may be deemed beneficiaries of certain Trusts created pursuant to Article 3-A of the Lien Law.  These plaintiffs sue Steve Halper, Todd Phillips and John Doe Nos. 1 through 10, as persons liable for the diversion of Trust Funds.  It was filed in the New York State Supreme Court in the County of New York, under Index Number 107488/2011.

[4]    The defendants in the February 2012 State Court Action, brought by Marlin Mechanical, Inc., were Todd Phillips, Jeffrey Lazar, Gerald Lazar, Janet Lazar, Frederick Coffey, and Stephen Halper.

[5]    Paragraph 4 of the Order Enjoining Marlin from Further Prosecution of the New York State Court Action provides:

> 4. To the extent that the Marlin State Court Action is not void ab initio, pursuant to section 105(a) of the Bankruptcy Code, Marlin, its agents, servants, employees, attorneys, and all those acting in concert or participation with them, or acting on their behalf, Marlin and all parties having notice of this Order, are hereby preliminarily enjoined from any further prosecution of, or further action in connection with, the Marlin State Court Action and are hereby preliminarily enjoined from proceeding with any related action against the State Court

decision—that it would reach the merits of whether certain funds constituted Article 3-A trust funds during the claims adjudication process, *see In re Lehr Constr. Corp.*, 2014 WL 5870289, at *1 (S.D.N.Y. Nov. 6, 2014) (citation omitted), and that the estate of Lehr could be irreparably harmed "by the depletion of assets available to satisfy claims of the bankruptcy estate against the State Court Defendants." *See* Order Enjoining Marlin from Further Prosecution of New York State Court Action, at 2. The bankruptcy estate's claims included the Trustee's "potential causes of action" for, "*inter alia*, negligence and breach of fiduciary duty relating to Lehr's misuse of trust funds prior to the Trustee's appointment." Trustee's Opp'n ¶ 9. Additionally, the Court noted that the Trustee might reduce or eliminate Marlin's damage claims through distributions during the case. *See* Order Enjoining Marlin from Further Prosecution of New York State Court Action, at 2 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101, 1106 (2d Cir. 1988)).

After the Court granted the Trustee's request for an injunction to stay Marlin's state court action, Samuels agreed to the Trustee's request for a stay of Samuel's state court action. *See* Order Approving Stipulation Agreeing to Enjoin Further Prosecution of its New York State Court Action [ECF No. 604]. In June 2012, the Court approved the parties' stipulation that enjoined Samuels—by consent and without the need for an adversary proceeding—from further prosecuting its state court action against the non-debtor principals. *See id.* Samuels now seeks relief from that stipulation and order.

---

> Defendants until the earlier of thirty (30) days after the effective date of a confirmed chapter 11 plan in this chapter 11 case, or one hundred twenty (120) days after conversion of this chapter 11 case to [a] case under chapter 7 of the Bankruptcy Code.

*See* Order Enjoining Marlin from Further Prosecution ¶ 4, dated May 3, 2012 [Case No. 12-01219, ECF No. 15].

### III. The Trustee's Settlement Agreements with Lehr's Former Principals and Related Proceedings

In 2013 and 2014, the Trustee reached settlement agreements with various principals of Lehr, including Halper, Phillips, the Coffeys, and the Lazars. Trustee's Opp'n ¶¶ 9-19; *see also* Order Approving Settlement with Halper, dated July 10, 2013 [ECF No. 849]; Order Approving Settlement with Phillips, dated July 10, 2013 [ECF No. 850]; Order Approving Settlement with Lazar Individuals, dated May 21, 2014 [ECF No. 1006]; Order Approving Settlement with Coffey Individuals, dated May 21, 2014 [ECF No. 1007].

The Trustee's first proposed settlement agreement included a permanent injunction that would enjoin "claims [against Halper, a non-debtor former principal of Lehr] for violation of Article 3-A of the New York Lien Law," and the Trustee explained that the injunction would "[m]ost notably" cover "claims that could have been brought by subcontractors against Halper including the claims asserted in the Marlin Complaint and the Samuels Complaint" pending in New York state court. *See* Trustee's Mem. of Law in Support of Halper Settlement ¶ 36 [ECF No. 688]. Samuels objected to the scope of the proposed injunction in the settlement agreement and the Court denied the Trustee's motion without prejudice because there was no showing that a permanent injunction of Marlin and Samuels' Article 3-A claims against Halper met the requisite standards in this circuit for such third-party releases. Hr'g Tr. 11:1-16, May 8, 2013.[6] This Court further explained that "[w]ith respect to a permanent injunction of creditor suits against a third party, a bankruptcy court generally may not enjoin creditor claims [that are] independent and personal." Hr'g Tr. 10:15-18, May 8, 2013. Ultimately, the express language that enjoined claims against Halper "for violation of Article 3-A" was deleted and Halper's settlement

---

[6]  More specifically, the settlement sought to enjoin "claims for violation of Article 3-A of New York's Lien Law," without addressing the requirements set forth in *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142-44 (2d Cir. 2005). *See* Hr'g Tr. 10:7-16, May 8, 2013.

7

agreement was otherwise approved. *See* Order Approving Settlement with Halper, at 4 [ECF No. 849].

The debate about the scope of permissible releases under the Trustee's settlement agreement arose again when Samuels objected to other settlements of the Trustee. The Court approved settlement injunctions in each agreement that were substantially the same in substance as the Halper agreement. Trustee's Opp'n ¶ 20 (referring to these collectively as the "Settlement Injunctions"). The Settlement Injunctions all more or less contain the same language featured in the Halper Settlement:

> Issuance of the permanent injunction, precluding any creditor of the Estate who filed or could have filed a claim in the Debtor's chapter 11 case from asserting any claim against [the relevant former Lehr principal] which relates in any way to the Debtor or [the relevant former Lehr principal's] role or conduct as an employee of the Debtor that is duplicative or derivative of claims that could have been brought by the Trustee against [the relevant former Lehr principal] is necessary and appropriate to carry out the provisions of the Bankruptcy Code.
>
> .    .    .    .
>
> Consistent with the Court's ruling of May 8, 2013, any creditor of the Estate who filed or could have filed a claim in the Debtor's chapter 11 case is permanently enjoined from asserting any claim against [the relevant former Lehr principal] relating to the Debtor or the [relevant former Lehr principal's] role or conduct as an employee or shareholder of the Debtor that is duplicative or derivative of claims that could have been brought by the Trustee against [the relevant former Lehr principal], but not as to any claim against [the relevant former Lehr principal] held solely by an individual creditor. This Court retains exclusive jurisdiction to address and rule on any disputes concerning the scope and effect of this injunction.

Order Approving Settlement with Halper, at 4-5. This Court explained that the Settlement Injunctions "drew the distinction . . . between generalized claims that the [T]rustee has and can settle and claims that are particular to creditors [and] which the trustee cannot settle without

8

satisfying" the Second Circuit's standard set forth in *In re Metromedia*. Hr'g Tr. 45:9-25, May 8, 2013. This Court noted—and the Trustee did not dispute—that the Trustee "ha[d] expressed no intent on seeking to invoke *Metromedia*" in the Phillips or Halper cases, *see* Hr'g Tr. 45:20-25, May 8, 2013, or for any other settlement agreements. The Trustee conceded that the "duplicative and derivative" language in the Settlement Injunctions is "consistent with the line about what is the trustee's in a generalized claim versus what is an individual claim." Hr'g Tr. 38:25-39:10, May 8, 2013. In ruling on the Halper and Phillips motions to approve settlement agreements, this Court was concerned that the potential Article 3-A claims were "specific claims owned by a creditor and that the trustee does not have," *see* Hr'g Tr. 47:8-11, May 8, 2013, and denied the Trustee's attempts to release them, but retained jurisdiction for the purpose of determining whether a claim brought by an Article 3-A claimant was duplicative of the trustee's generalized claims. *Id.* at 47:11-18.

Subsequent to the filing of the Motion, the parties agreed to vacate the Stipulation Agreeing to Enjoin Further Prosecution. *See* Mutual Agreement to Vacate PI Order [ECF No. 1124]. Thus, the only remaining question presented by the Motion was "whether the injunctions contained in the orders approving the Trustee's settlements with several former Lehr employees enjoins the claims that Samuels seeks to pursue in its state court action." *Id*.

## DISCUSSION

I.  **Legal Standards**

   A.  **A Chapter 11 Trustee Can Settle the Estate's Causes of Action**

      1.  **Chapter 11 Trustee's Role and Standing to Sue**

"Property interests in bankruptcy are created and defined by state law, unless federal law requires a different result." *In re Cabrini Med. Ctr.*, 489 B.R. 7, 16 (S.D.N.Y. 2012) (citing

9

*Butner v. United States*, 440 U.S. 48, 55 (1979)). In general, "[p]roperty of the [bankruptcy] estate under Section 541 'includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property . . . .'"[7] *In re Food Mgmt. Grp., LLC v. Rattet*, 380 B.R. 677, 691 (Bankr. S.D.N.Y. 2008) (quoting *Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (additional citation omitted)). "Upon the commencement of a bankruptcy case, the trustee succeeds to a debtor's rights, including the ability to sue and be sued." *In re Food Mgmt. Grp., LLC*, 380 B.R. at 693. The trustee in a Chapter 11 case takes on the "role as legal representative of the bankruptcy estate." *Smart World Techs., LLC, v. Juno Online Servs. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 (2d Cir. 2005) (citing 11 U.S.C. § 323(a) ("The trustee in a case under [title 11] is the representative of the estate.")).

Although "Congress intended [Section] 541(a) to be broad in scope," the trustee does not seize control over a cause of action that belongs solely to a debtor's creditors or shareholders. *See In re Food Mgmt. Grp., LLC*, 380 B.R. at 692 (quoting *In re Betty Owens Schs., Inc.*, 1997 WL 18827, at *2 (S.D.N.Y. Apr. 17, 1997)). Instead, the trustee's causes of action are limited to those that the "bankrupt corporation could have instituted if it had not filed for bankruptcy protection." *See id.* at 691 ("'Under the Bankruptcy Code[,] the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted' if it had not filed for bankruptcy protection." (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991)) (additional citation omitted)); *McHale v. Alvarez*

---

[7] Section 541(a)(1) of the Bankruptcy Code provides that property of the estate includes "'all legal or equitable interests of the debtor in property as of the commencement of the case,' 'wherever located and by whomever held.'" *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 478 (S.D.N.Y. 2012) (quoting 11 U.S.C. § 541(a)). This broad definition includes "the estate's causes of action." *Picard v. Madoff (In re BLMIS)*, 458 B.R. 87, 123 (Bankr. S.D.N.Y. 2011) (citing *In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005)), *aff'd sub nom.*, *In re Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, 740 F.3d 81 (2d Cir. 2014).

(*In re The 1031 Tax Grp., LLC*), 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008) ("The trustee stands in the shoes of the debtor, and may bring any suit that the debtor could have brought before bankruptcy." (citing *In re Granite Partners, L.P.*, 194 B.R. 318, 323-24 (Bankr. S.D.N.Y. 1996))).

In addressing a trustee's standing to sue, courts examine whether a cause of action "belonged" to the debtor at the commencement of the bankruptcy case. *See, e.g., In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *6 (Bankr. S.D.N.Y. June 15, 2012) ("If a cause of action 'belongs' to the *debtor* at the commencement of the case, it is property of the debtor's estate, and the trustee has authority to pursue it." (quoting In *re Ozark Rest. Equip. Co.,* 816 F.2d 1222, 1225 (5th Cir. 1983))); *In re Madoff*, 848 F. Supp. 2d at 479. If a cause of action "belonged" to the debtor when the bankruptcy commenced, the trustee has exclusive standing to assert it, *see In re The 1031 Tax Grp., LLC*, 397 B.R. at 679 (citing *Granite Partners*, 194 B.R. at 324); if a cause of action "belongs" solely to creditors, then the trustee has no standing to assert it. *Id*. (citing *Granite Partners*, 194 B.R. at 324-25). To determine whether the cause of action belonged to the debtor at commencement or belongs to a specific creditor, courts look to the "nature of the wrongs alleged" to see if the alleged injury is "primary," "particularized," "special," "direct," "personal," "distinct," or "individualized" to creditors; alternatively, the cause of action could allege a "secondary harm," or secondary injury to creditors that flows from the debtor to creditors, or a "general one with no particularized injury arising from it." *See, e.g.*, *In re Madoff*, 848 F. Supp. 2d at 479 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).

The Second Circuit has declared that "'[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee

11

is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.'" *See id.* (quoting *St. Paul Fire*, 884 F.2d at 701. Courts "look to the underlying wrongs as pleaded in the complaint and whether the plaintiff alleges a particularized injury" to determine whether a debtor's estate has standing to bring a claim. *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 404 (Bankr. S.D.N.Y. 2013) (quoting *In re The 1031 Tax Grp., LLC*, 397 B.R. at 679).

Claims involving "virtually identical factual allegations arising out of the same conduct by the defendants," where there are "no additional allegations of fact . . . directed toward [plaintiffs] specifically, or any duty owed specifically to the [plaintiffs] by the defendants," are considered "general." *See In re Madoff*, 848 F. Supp. 2d at 479. On the other hand, "[a] cause of action is considered 'personal' if there is injury to only one or a select group of specific creditors, and other creditors have no interest in the action." *In re Cabrini Med. Ctr.*, 2012 WL 2254386, at *7 (citing *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348-49 (7th Cir. 1987).

To decide whether an injury was general to a corporation or personal to its creditors, best practices suggest that a court may consider multiple factors, including:

> to whom any allegedly breached duty was owed; what was the injury underlying the claims; who suffered the injury; who would gain from the recovery, or lose out if the recovery were awarded to a different successful plaintiff; and, to the extent different from any of the foregoing, whether *any* creditor of the debtor could assert the claim . . . or just those creditors suffering a particularized injury.

*In re Magnesium Corp. of Am.*, 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009).

In assessing trustee standing, a trustee cannot simply allege damage to the debtor to negate the "particularized" nature of a harm done to a creditor. *See Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 43 (D. Conn. 1994) ("*Hirsch I*"), *aff'd on other grounds*, 72 F.3d 1085, 1094

(2d Cir. 1995) ("The trustee must do more than simply allege damage to the debtors; the facts alleged . . . must support this allegation. If the facts . . . suggest that the claims actually belong to the creditors, a blanket allegation of damage to the debtors will not confer standing . . . ."). Where "[i]t appears from the complaint that the only ones injured by the defendants' conduct . . . were the creditors[,] [t]he trustee cannot circumvent the standing requirement simply by imputing this injury to the debtor." *Hirsch I*, 178 B.R. at 44.

### 2.    The Trustee's Authority to Settle

As the "legal representative of the bankruptcy estate," *see In re Smart World Techs., LLC,* 423 F.3d at 175, the trustee "has the legal obligation to pursue [the estate's] claims or to settle them, based upon the best interests of the estate." *See In re Dewey & Leboeuf LLP*, 2012 WL 5985445, at *7 (Bankr. S.D.N.Y. Nov. 29, 2012) (citing *In re Smart World Techs., LLC*, 423 F.3d at 175). The trustee is therefore "vested with the power to settle" the actions it has standing to bring. *In re Ambac Fin. Grp., Inc.*, 2011 WL 6844533, at *2 (S.D.N.Y. Dec. 29, 2011) (citing *In re Smart World Techs., LLC*, 423 F.3d at 175). But, in general, a trustee is not vested with the power to settle a cause of action it lacks standing to bring. *See id.*[8]

In settling a claim that belongs to the estate, a court can approve a trustee's settlement agreement and issue an order to extinguish the settled claims. *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365 (2002) (citing *Sobchack v. Am. Nat'l Bank & Trust Co. of*

---

[8]    "[A] bankruptcy court generally has limited authority to approve releases of a non-debtor's independent claims." *In re BLMIS*, 740 F. 3d at 88 (citing *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia*), 416 F.3d 136, 141-43 (2d Cir. 2005)). "With regard to permanent injunctions of creditor suits against a third party issued in connection with a settlement agreement between the third party and the trustee, a bankruptcy court generally may not enjoin creditor claims against the third party when those claims are independent and 'personal to the creditor.'" *In re Madoff*, 848 F. Supp. 2d at 488 (quoting *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365-66 (Bankr. S.D.N.Y. 2002)). In the context of plan confirmation, for example, "a nonconsensual release of non-debtor claims by the bankruptcy court 'should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan.'" *In re Madoff*, 848 F. Supp. 2d at 488 (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-143 (2d Cir. 2005)).

*Chicago* (*In re Ionosphere Clubs, Inc.*), 17 F.3d 600, 604 (2d Cir. 1994)).  Additionally, "a bankruptcy court may enjoin actions that are derivative or duplicative of claims brought by the trustee, or that could have been brought by the trustee in the first instance." *In re Madoff*, 848 F. Supp. 2d at 488 (citing *In re Dreier LLP*, 429 B.R. 112, 133-34 (Bankr. S.D.N.Y. 2010) ("[T]he Court has the jurisdiction . . . to bar general creditors . . . from recovering their claims . . . where their claims are based on the debtors' misconduct, and there is no independent basis for an action against [a third party defendant] other than its receipt of the transfers from [the debtor]."); *Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. at 365 ("The settlement extinguishes the settled claims and in approving [the settlement] the court may enjoin creditors from prosecuting the settled claims derivatively in another court.") (citing *In re Ionosphere Clubs, Inc.*, 17 F.3d at 604, 607).

"A claim based on rights 'derivative' of, or 'derived' from, the debtor's typically involves property of the estate." *In re Bernard L. Madoff Inv. Sec. LLC* ("*In re BLMIS*"), 740 F.3d 81, 88 (2d Cir. 2014).  And while a trustee can enforce entitlements of the debtor, a trustee "represents the unsecured creditors of the debtor; and in that sense when . . . suing on behalf of the debtor [the trustee] is really suing on behalf of the creditors of the debtor." *Id.* (citing *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994)).  Courts recognize the difference between "a creditor's interests in the claims of the debtor against a third party, which are enforceable by the trustee, and the creditor's own direct claim against the third party, which only the creditor . . . can enforce." *See id.* (citing *Steinberg*, 40 F.3d at 893)).

Although the scope of a duplicative claim is inexact, claims have been counted as duplicates where a trustee had standing to assert a cause of action based on certain facts, conduct, duties and law, and creditors asserted a virtually identical cause of action, without any additional facts, conduct, duties or law. *See In re Madoff*, 848 F.Supp. 2d at 473 ("As explained above, the

14

claims asserted in the Florida Actions are duplicative of the fraudulent transfer claims already asserted by the Trustee in the New York Action, and the Trustee's standing to assert those [fraudulent transfer claims in the New York Action is] not contested."). Derivative claims are tied to derivative injuries, which are "based upon 'a secondary effect from harm done to the debtor.'" *In re BLMIS*, 740 F.3d at 89 (quoting *St. Paul*, 884 F.2d at 704). By contrast, a claim is not derivative where it can be "directly traced to the third party's conduct." *Id.* ("[A]n injury is said to be 'particularized' when it can be directly traced to the third party's conduct.").

### B. New York Lien Law Article 3-A and Breach of Fiduciary Duty Claims

Article 3-A of New York's Lien Law provides for the definition and enforcement of trusts that are "designed for the protection of materialmen and laborers." *Scriven v. Maple Knoll Apts., Inc.*, 361 N.Y.S.2d 730 (App. Div. 1974); *see* NY Lien Law § 79. "The primary purpose of Article 3-A of the [New York] Lien Law is to ensure that those who have directly expended labor and materials to improve real property at the direction of the owner or a general contractor' receive payment for the work actually performed." *Atlas Bldg. Sys., Inc. v. Rende*, 653 N.Y.S.2d 694, 695 (App. Div. 1997) (alterations and internal quotation marks omitted) (quoting *Canron Corp. v. City of New York*, 89 N.Y.2d 147, 155 (1996)). To further this purpose, funds received by a contractor in connection with a contract to improve real property are assets of a trust that must be used for purposes provided by statute. *See* NY Lien Law § 70(1) ("[F]unds . . . received by a contractor under or in connection with a contract for an improvement of real property . . . shall constitute assets of a trust for the purposes provided in § 71."). Those trust assets are used to pay the claims of subcontractors, among others, for the costs of improvement to the property. *See* NY Lien Law § 71(2)(a) (funds "shall be held and applied for payment of the cost of improvement" including to pay the "claims of subcontractors, . . . laborers[,] and materialmen.").

15

A "trust claim" arises under the NY Lien Law when a subcontractor seeks a payment that the trustee is authorized under NY Lien Law § 71(2) to pay with trust funds. *See* NY Lien Law § 71(3)(b); *see also* NY Lien Law § 71(2) (explaining what purposes trust funds can be applied to).

A trust beneficiary has a cause of action personally against principals of an Article 3-A trustee company for the improper diversion of Article 3-A trust funds. *Ippolito v. TJD Dev., LLC*, 920 N.Y.S.2d 108, 118 (App. Div. 2011) (addressing issue as one of first impression). The *Ippolito* court acknowledged that the Lien Law does not expressly provide for civil liability of individual officers or agents but found ample authority for the cause of action. *See id.* In particular, the *Ippolito* court relied upon prior authority that "[a]n officer or agent of a corporation is personally liable for his acts which constitute a conversion of the property of a third person; it is no answer to such liability that the act was done while the officer or agent was acting for the corporation." *Id.* (citing *Fleck v. Perla*, 339 N.Y.S.2d 246, 248 (App. Div. 1972)). Courts have relied on *Ippolito* in recognizing a cause of action under Article 3-A against a trustee's principals for personal liability for knowingly participating in a diversion of trust assets. *Holt Const. Corp. v. Grand Palais, LLC*, 969 N.Y.S.2d 499, 504, *leave to appeal denied*, 22 N.Y.3d 853 (2013) ("This Court has held that the individual officers of a corporate trustee may be held personally liable pursuant to Lien Law article 3–A for knowingly participating in a diversion of trust assets.") (citing *Ippolito*, 902 N.Y.S.2d 108) (additional citations omitted).

In general, "[c]laims based upon a breach of fiduciary duty belong to a corporation, but once bankruptcy ensues, they are enforceable by the trustee." *In re Keene Corp.*, 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994) (citing *Pepper v. Litton*, 308 U.S. 295, 307 (1939)); *accord Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 826-26 (2d. Cir. 1997) ("We

16

agree that a bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries."). In contrast to a specific claim based on Article 3-A, a plaintiff may sue for a breach of fiduciary duty, by proving "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *See Kurtzman v. Bergstol*, 835 N.Y.S.2d 644 (App. Div. 2007) (citing *Ozelkan v. Tyree Bros. Envtl. Servs. Inc.*, 815 N.Y.S.2d 265, 267 (App. Div. 2006)).

## II. The Settlement Injunctions Do Not Preclude Samuels' New York State Court Action

Applying these principles to the current dispute, the Court concludes that the Settlement Injunctions do not prevent Samuels from prosecuting its Complaint in State Court. The Trustee begins from the incorrect premise that Samuels' claim is a general one that belongs to—and can be settled on behalf of—the estate. The Trustee contends that Samuels' claim is a common law breach of fiduciary duty claim that is not brought under Article 3-A of the New York Lien Law, but under general trust common law principles. Opp. ¶ 30 [ECF No. 1119] ("The claim as pleaded . . . in the Samuels Complaint is that certain former Lehr employees 'knowingly participated in the diversion of [3-A] Trust assets' and, therefore, owe damages . . . . [That claim] is a common law, breach of fiduciary duty claim, and is not a claim under the lien law."). But New York case law does not support the Trustee's position. The more recent case law recognizes a trust beneficiary's right to sue for a violation of Article 3-A. *See Ippolito*, 920 N.Y.S.2d at 110, 118 ("beneficiaries of the trust created by operation of Lien Law § 70 . . . had standing to assert a cause of action *pursuant to Lien Law article 3-A against TJC [3-A corporate trustee], or its officers or agents, alleging . . . funds . . . paid to TJC were improperly diverted within the meaning of Lien Liaw § 72*") (emphasis added). And cases after *Ippolito* make clear

that a cause of action pursuant to Lien Law Article 3-A exists. *See Bruce Supply Corp. v. Kofsky (In re Kofsky)*, 351 B.R. 123 (Bankr. S.D.N.Y. 2006) ("Any officer who knowingly causes loss to a trust administered by the corporation is personally liable . . . to the beneficiaries . . . ."); *see also S. Carolina Steel Corp. v. Miller*, 566 N.Y.S.2d 368, 371 (App. Div. 1991) ("Although the Lien Law expressly provides only for an accounting against a trustee, where the officers of a corporate trustee have converted trust funds for their own use, or knowingly participated in a diversion, they may be liable to the trust beneficiary in their individual capacities.").

The Trustee's additional arguments made to suggest Samuels' claim belongs to the estate are also unpersuasive. Unlike in cases cited by the Trustee, the Samuels Complaint alleges a "duty owed specifically" to the 3-A trust beneficiary plaintiffs. *See, e.g., In re The 1031 Tax Grp., LLC*, 397 B.R. at 681 ("director's liability for violating a fiduciary relationship was 'thrust upon him solely because of his capacity as a director'"). This is a claim that is not held by all creditors but only those who are unpaid subcontractors. *See In re Madoff*, 848 F.Supp.2d at 479; *Ippolito*, 920 N.Y.S.2d at 118. Similarly, the injury alleged is not one to the Debtor, which enjoyed the use of the Article 3-A trust for other purposes. Rather, it was an injury to the trust beneficiary when its funds were used for general corporate purposes. *See Hirsch I*, 178 B.R. at 43 ("[T]he trustee has not alleged any distinct way in which the debtors were injured by the asserted wrongdoing of the defendants."); *see also Am. Tissue, Inc. v. Donaldson (In re Am. Tissue, Inc.)*, 351 F. Supp. 2d 79, 93-94 (S.D.N.Y. 2004) (debtor could not characterize its monetary gain as injury). Thus, a claim based on a violation of Article 3-A against Lehr's former principals—regardless of "massive commingling" that might make it "impossible to distribute any damages . . . to the subcontractors as lien law beneficiaries"—must be brought "solely for the benefit of subcontractors." *See Ris v. Coppotelli (In re Colby Const. Corp.)*, 76

18

B.R. 50, 53 (Bankr S.D.N.Y. 1987).[9] Under these circumstances, the Trustee cannot settle the Article 3-A diversion cause of action to recover funds solely for the benefit of the Article 3-A trust beneficiaries. *See In re Ambac Fin. Grp., Inc.*, 2011 WL 6844533, at *2; *In re McCann, Inc.*, 318 B.R. 276, 285 (Bankr. S.D.N.Y. 2004). The Trustee asserts that if a claim "under 3-A" exists solely for subcontractors, it allows recovery only insofar as the subcontractors can identify specific traceable funds. But the Trustee cites to nothing in *Ippolito* or other law to support its assertion. Certainly, the court in *Ippolito* does not identify that as an element for a claim. *See Ippolito*, 920 N.Y.S.2d at 113-14, 118 (Article 3-A trust beneficiaries have standing to bring an action under Lien Law Article 3-A against individual officers or agents of a corporation for improper diversion of trust funds within the meaning of Lien Law Section 72). Indeed, cases after *Ippolito* appear to specifically contemplate causes of action where no such tracing can be done. *See Holt Const. Corp.*, 969 N.Y.S.2d at 597 (decision rendered in 2013 made no mention of tracing where principal had divested and commingled funds in 2006, using some to pay "other various debts in contravention" of the Lien Law).

The Court acknowledges that a broader settlement injunction would enable the Trustee to more easily settle similar claims with similar defendants for greater recoveries. But certain claims are simply not the Trustee's to settle.[10]

---

[9]  The "best practices" factors identified in *Magnesium* also suggest that the Samuels Complaint asserts a cause of action personal to the 3-A claimants, not general to the corporation. *See In re Magnesium*, 399 B.R. at 758. The duty under Article 3-A of the New York Lien Law was owed to the 3-A trust beneficiaries for each individual contract;, the 3-A trust beneficiary plaintiffs alone would benefit in the State Action as opposed to all creditors benefitting equally if the Trustee were permitted to resolve the 3-A claims; and any creditor of the debtor could not assert the diversion of Article 3-A funds claim. *See id.*

[10]  Counsel for Mr. Coffey contends that the language in Mr. Coffey's Settlement Injunction carves out an exception that only allows the prosecution of "any claim . . . held *solely by an individual creditor*." Hr'g Tr. 23:7-17, Dec. 10, 2014; *see* Order Approving Coffey Settlement ¶ 6(a). Counsel argues that because Samuels' New York State Court Action is a class action on behalf of a group of potential Article 3-A beneficiaries, no claim is held solely by an individual creditor, but instead by a group, and therefore is enjoined. *See* Hr'g Tr. 23:7-17, Dec. 10, 2014. But as explained above, the Trustee can only release claims that are duplicative or derivative of the Trustee's

**CONCLUSION**

For the reasons set forth above, the Court grants Samuels' Motion to the extent it seeks to prosecute in State Court a claim against Lehr's principals for violation of their duties to plaintiffs in this action under Article 3-A of New York State's Lien Law. Samuels should submit a proposed order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: New York, New York
      September 2, 2015

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE

---

claims and these 3-A claims are not ones held by all creditors. The Trustee concedes that all the Settlement Injunctions are the same in substance to cover only such duplicate or derivative claims. *See* Hr'g Tr. 30:1-6, Dec. 10, 2014 ("The settlement orders provide essentially a procedure in which . . . this court, not the state court [can] . . . determine whether or not the claims that have been asserted by Samuels are" duplicative or derivative of the Trustee's claims.).