UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                               :

In re                                   :          Chapter 11

                                            :

LEHR CONSTRUCTION CORP.,       :          Case No. 11-10723 (SHL)

                                           :

                  Debtor.         :

---------------------------------------------------------------X

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION FOR LEHR CONSTRUCTION CORP. AND GRANTING RELATED RELIEF

Upon this Court's Order (A) Approving Disclosure Statement; (B) Establishing Treatment of Claims for Notice and Voting Purposes; (C) Establishing Deadlines and Procedures for Temporary Allowance of Claims for Voting Purposes; (D) Approving Solicitation Packages and Procedures for Distribution; (E) Approving Form of Ballots and Notices of Non-Voting Status; (F) Establishing Voting Deadline and Procedures for Tabulation of Votes; (G) Scheduling Hearing on Confirmation of Plan; (H) Approving Form and Manner of Notice of Confirmation Hearing and Procedures for Filing Objections to Confirmation of Plan; and (I) Granting Related Relief [Dkt. No. 1187] (the "**Disclosure Statement Order**"); and under the Disclosure Statement Order, the Court, *inter alia*, having (i) approved the Disclosure Statement (the "**Disclosure Statement**") proposed by Jonathan L. Flaxer, the chapter 11 trustee (the "**Trustee**") for the estate (the "**Estate**") of Lehr Construction Corp. (the "**Debtor**") with respect to the Chapter 11 Trustee's First Amended Plan of Liquidation dated August 31, 2015 (the "**Plan**")[1], and (ii) established October 14, 2015 at 10:30 a.m. (Eastern Time) as the date and time for the commencement of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") pursuant to section 1129 of title 11 of the United States Code (the "**Bankruptcy**

---

[1] All terms not defined herein shall have the meaning ascribed to such term in the Plan.

2374371.3

**Code**"); and in accordance with the Disclosure Statement Order, the Trustee having caused the appropriate form of ballot (the "**Ballot**") to be distributed to the Holders of the following impaired Claims and Equity Securities to solicit votes to accept or reject the Plan: (a) Class 1 (Travelers Claim), (b) Class 3 (Customer Claims), and (c) Class 4 (General Unsecured Claims); and an affidavit of service having been filed with the Court (the "**Solicitation Affidavit of Service**") demonstrating that the Disclosure Statement, a notice of the Confirmation Hearing, the Ballots, and the other solicitation materials in respect of the Plan (collectively, the "**Solicitation Materials**") have been mailed to all required parties in accordance with the Disclosure Statement Order; and pursuant to the Disclosure Statement Order, the deadline for voting to accept or reject the Plan having been fixed as October 5, 2015 (the "**Voting Deadline**"); and on October 8, 2015, counsel to the Trustee having filed the Plan Supplements; and on October 9, 2015, counsel to the Trustee having filed the Declaration of Catherine Nownes-Whitaker Certifying the Tabulation of the Ballots for the Plan (the "**Voting Certification**"); and pursuant to the Disclosure Statement Order, the deadline for objecting to confirmation of the Plan having been fixed at October 5, 2015; and on October 9, 2015, counsel to the Trustee having filed the Memorandum of Law of the Chapter 11 Trustee for Lehr Construction Corp. in Support of Confirmation of the Chapter 11 Trustee's Plan of Liquidation for Lehr Construction Corp. (the "**Confirmation Brief**"); and upon the objection to confirmation of the Plan filed by Marlin Mechanical Corp. [Dkt. No. 1224] (the "**Objection**"); and upon the Trustee's reply to the Objection; and the Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Certification, the Solicitation Affidavit of Service, the Plan Supplements, the Confirmation Brief, and the other papers before the Court in connection with the confirmation of the Plan; and upon the record of the Confirmation Hearing; and the Court having considered all of the foregoing; and the Court

2

finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to

object to confirmation of the Plan were adequate and appropriate, in accordance with Rule

2002(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the

Disclosure Statement Order, as to all parties affected by the Plan and the transactions

contemplated thereby, and (ii) the legal and factual bases set forth at the Confirmation Hearing

and as set forth in this Order (the "**Confirmation Order**") establish just cause for the relief

granted herein; and based upon the foregoing:

### THE COURT HEREBY FINDS AND CONCLUDES THAT: [2]

A.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2)</u>

<u>and 1334(a))</u>.  This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code

and should be confirmed.

B.      <u>Transmittal and Mailing of Materials; Notice</u>.  The Solicitation Materials

were transmitted and served upon all interested parties in compliance with the Disclosure

Statement Order, the Bankruptcy Rules and the Local Bankruptcy Rules, and such transmittal

and service was adequate and sufficient.  Notice of the Confirmation Hearing and all deadlines in

the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and the

Disclosure Statement Order and such notice constitutes good and sufficient notice in accordance

with Bankruptcy Rules 2002(b) and 3020(b)(2), and no other or further notice is required.  Votes

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

for acceptance or rejection of the Plan were solicited in good faith, after transmittal of a

disclosure statement containing adequate information, and otherwise in compliance with

Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017 and 3018.

C.    <u>Classes Deemed To Accept the Plan</u>.  Class 2 is not impaired under the

Plan and, pursuant to section 1126(f) of the Bankruptcy Code, is deemed to have accepted the

Plan.   Class 1 did not vote on the Plan, but is deemed to have accepted the Plan.

D.    <u>Classes Voting in Favor of the Plan</u>.  As evidenced by the Voting

Certification, Classes 3 and 4 are impaired non-insider classes of Claims that voted to accept the

Plan.

E.    <u>Burden of Proof</u>.  The Trustee has met his burden of proving by a

preponderance of the evidence that the Plan satisfies the elements of section 1129(a) and, to the

extent applicable, section 1129(b) of the Bankruptcy Code.

F.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The

Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section

1129(a)(1) of the Bankruptcy Code:

(i)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  The Plan

provides for separate grouping and classification of Claims and Equity Securities

of the Debtor.  In addition to Administrative Claims and Priority Tax Claims,

which need not be classified, the Plan designates separate classes of Claims and

Equity Securities based upon differences in the legal nature and priority of such

Claims and Equity Securities.  The Claims and Equity Securities placed in each

4

class are substantially similar to the other Claims and Equity Securities, as the case may be, in each such class.  Valid business, factual and legal reasons exist for separately classifying the various classes of Claims and Equity Securities created under the Plan, and such classes do not unfairly discriminate among holders of Claims and Equity Securities.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article V of the Plan specifies that Class 2 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles IV, VI, VII, VII and IX specify the treatment of the Classes of Claims and Equity Securities that are impaired under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim or Equity Security in each respective class unless the holder of a Claim agreed to less favorable treatment.   This satisfies section 1123(a)(4) of the Bankruptcy Code.

(v)    Implementation of Plan (11 U.S.C. § 1123(a)(5)).  Article XI, entitled "Implementation of the Plan," sets forth provisions to facilitate implementation of the Plan, including, but not limited to (i) vesting of Estate assets in the Liquidating Debtor (Plan at ¶ 11.2); and (ii) operation of the Liquidating Debtor post-confirmation.  Article X (Plan Administrator), Article XII (The Restitution Fund), Article XIII (Distributions and Reserves), Article

XIV (Distribution of Trust Funds), and Article XVI (Executory Contracts and

Unexpired Leases) of the Plan set forth additional means of implementing the

Plan.  The Plan provides adequate and proper means for its implementation,

thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)   Selection of Officers, Directors and the Trustee (11 U.S.C. §

1123(a)(7)).  Pursuant to Article X of the Plan, the Plan Administrator shall

oversee the liquidation of the Estate in accordance with the terms and conditions

set forth in the Plan.  Paragraph 10.12 of the Plan also provides for the right of the

Plan Administrator to petition the Court to appoint a successor.  The Plan

provides that Jonathan L. Flaxer, presently the Trustee, shall serve as Plan

Administrator.  Thus, the Plan is consistent with the interests of creditors and

equity security holders and with public policy, thereby satisfying section

1123(a)(7) of the Bankruptcy Code.

(vii)   Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's

permissive provisions are appropriate, authorized by section 1123(b) of the

Bankruptcy Code, and not inconsistent with the applicable provisions of the

Bankruptcy Code.

G.   Compliance with Bankruptcy Rule 3016.  The Plan is dated and identifies

the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the

Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).  The Plan describes in

specific and conspicuous language all acts to be enjoined under the Plan and identifies all entities

that are subject to injunctions in accordance with Bankruptcy Rule 3016(c).

2374371.3

H.    <u>Compliance with Bankruptcy Rule 3018</u>.  The solicitation of votes to

accept or reject the Plan satisfies Bankruptcy Rule 3018.  The solicitation materials, including

the Plan, were transmitted to all creditors and Equity Security holders entitled to vote on the Plan

(*i.e.*, all impaired classes) including those voting by proxy.  Sufficient time was prescribed for

such creditors to accept or reject the Plan, and the solicitation materials and related solicitation

procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the

requirements of Bankruptcy Rule 3018.

I.    <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Trustee

has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules and the Disclosure Statement Order in transmitting the Plan, the

Disclosure Statement, the Ballots and the related documents and notices, and in soliciting and

tabulating votes on the Plan thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

J.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Trustee

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in

good faith, this Court has examined the totality of the circumstances surrounding the formulation

of the Plan.

K.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Trustee, the Debtor or by a person issuing securities or

acquiring property under the Plan, for services or for costs and expenses in or in connection with

the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has

2374371.3

been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying

section 1129(a)(4) of the Bankruptcy Code.

L.      Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)).  Article X of the

Plan provides for the appointment of Jonathan L. Flaxer as Plan Administrator.  The appointment

of such person is consistent with the interests of holders of Claims and Equity Securities and

with public policy.  No insider is proposed to serve as an officer or director of the Liquidating

Debtor.  Accordingly, the Plan complies with section 1129(a)(5) of the Bankruptcy Code.

M.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  After confirmation of the

Plan, the Debtor's business will not involve rates established or approved by, or otherwise

subject to, any governmental regulatory commission.  Thus, section 1129(a)(6) of the

Bankruptcy Code is not applicable in this Chapter 11 Case.

N.      Best Interests Test (11 U.S.C. § 1129(a)(7)).  The evidence proffered or

adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been

controverted by competent evidence, and (c) establishes that each holder of a Claim or Equity

Security which is impaired under the Plan has either accepted the Plan, or will receive or retain

under the Plan on account of such Claim or Equity Security property of a value, as of the

Effective Date, that is not less than the amount that such holder would receive or retain if the

Debtor liquidated under chapter 7 of the Bankruptcy Code on such date.  Accordingly, the Plan

satisfies the requirements of section 1129(a)(7).

O.      Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)).

Class 2 is unimpaired under the Plan and is conclusively deemed, pursuant to section 1126(f), to

have voted to accept the Plan.  Classes 1, 3, 4, 5 and 6 are impaired under the Plan.  As

8

evidenced by the Voting Certification, each of Classes 3 and 4 have accepted the Plan by at least

two thirds in amount and a majority in number of the Claims in such Classes actually voting.

The sole claim in Class 1 did not vote on the Plan, but Class 1 is deemed to have accepted the

Plan.  The Plan has not been accepted by all impaired Classes of Claims and Equity Securities

because, pursuant to section 1126(g) of the Bankruptcy Code, the holders Class 5 Subordinated

Claims and Class 6 Equity Securities are deemed to have rejected the Plan.   The Plan is

confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such

non-accepting Classes of Claims and Equity Securities.

      P.      <u>Treatment of Administrative and Priority Tax Claims (11 U.S.C. §</u>

<u>1129(a)(9))</u>.  The treatment of Allowed Administrative Claims and Priority Tax Claims pursuant

to Article II of the Plan and Paragraph 13.1 of the Plan satisfies the requirements of sections

1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

      Q.      <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  As evidenced

by the Voting Certification, Classes 3 and 4 are impaired non-insider classes of Claims that voted

to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy

Code.  Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least

one class of Claims that is impaired under the Plan has accepted the Plan, determined without

including any acceptance of the Plan by any insider, has been satisfied.

      R.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan provides for the

liquidation of the Debtor's remaining assets and a distribution of assets to creditors, whether

classified or unclassified, in accordance with the priority scheme of the Bankruptcy Code and the

terms of the Plan.  The Plan also provides for the payment in full of all Allowed Administrative

2374371.3

Claims, unless a holder of such Claim agrees to a different treatment or unless this Court orders

otherwise. Therefore, the Plan is feasible and meets the requirements of section 1129(a)(11) of

the Bankruptcy Code.

S. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under

section 1930 of title 28 of the United States Code, as determined by this Court, have been paid or

will be paid on the Effective Date pursuant to Paragraph 16.12 of the Plan, thus satisfying the

requirements of section 1129(a)(12) of the Bankruptcy Code.

T. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor

has no obligation to pay retiree benefits within the meaning of section 1129(a)(13) of the

Bankruptcy Code and thus, this requirement is inapplicable to the Plan.

U. <u>Provisions Applicable to Individuals (11 U.S.C. § 1129(a)(14) and (15)</u>.

Because the Debtor is not an individual sections 1129(a)(14) and (15) of the Bankruptcy Code

are not applicable.

V. <u>Provisions Applicable to Trusts (11 U.S.C. § 1129(a)(16)</u>. Because the

Debtor is a corporation, section 1129(a)(16) of the Bankruptcy Code is not applicable.

W. <u>Cramdown Requirements (11 U.S.C. § 1129(b)</u>. The Plan does not

"discriminate unfairly" and is "fair and equitable" with respect to Classes 5 and 6, the Classes

that are impaired and deemed to have rejected the Plan. The Plan does not discriminate unfairly

with respect to such Classes because Classes 5 and 6 are dissimilar to other classes of Claims, the

Plan's segregation of these Classes has a rational basis, the Plan's classification of Subordinated

Claims in Class 5 recognizes the propriety of equitably subordinating creditors that participated

2374371.3

in the Criminal Scheme to the claims of creditors who did not participate in the Criminal Scheme

that are classified in Class 4, and the Plan's Classification of Equity Securities in Class 6

recognizes the fundamental differences in legal rights among the priorities of creditors and

interest holders.  The Plan is "fair and equitable" with respect to such Classes because it does not

provide a recovery on account of any Claim or Equity Security that is junior to Classes 5 and 6.

   X. Principal Purpose (11 U.S.C. § 1129(d)).  The principal purpose of the Plan

is neither the avoidance of taxes nor the avoidance of the provisions of Section 5 of the

Securities Act of 1933 (15 U.S.C. § 77e *et seq.*), and no governmental unit has objected to the

confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of

section 1129(d) of the Bankruptcy Code.

   Y. Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before

the Court in this Chapter 11 Case, the Trustee acted in good faith within the meaning of section

1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy

Code and the Bankruptcy Rules in connection with all of the activities relating to the solicitation

of acceptances of the Plan and all of the activities described in section 1125 of the Bankruptcy

Code.  The Trustee is entitled to the protections afforded by section 1125(e) of the Bankruptcy

Code, and to the release and discharge set forth in Paragraphs 11.7 of the Plan, as applicable.

The Trustee and all parties in interest will be acting in good faith if they proceed to (i)

consummate the Plan and the agreements, settlements, transactions, and transfers contemplated

thereby; and (ii) take the actions authorized or directed by this Order notwithstanding an appeal

of this Order, so long as no stay is in effect pending appeal, even if the Debtor and such parties in

interest act with knowledge of that appeal.

2374371.3

Z.    The Manhattan DA Agreement is in the best interests of the Estate and its

creditors.

AA.    All documents necessary to implement the Plan have been negotiated in

good faith and at arms' length and shall, upon completion of documentation and execution, be

valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

BB.    Satisfaction of Conditions to Confirmation.  The conditions to

confirmation set forth in section 18.1 of the Plan have been satisfied.

CC.    Retention of Jurisdiction.  Subject to the provisions of this Order, the

Court may properly retain jurisdiction over the matters set forth in Article XX of the Plan and/or

section 1142 of the Bankruptcy Code.

DD.    Releases.  The failure to effect the releases and exculpation provisions of

the Plan would impair the Trustee's ability to confirm the Plan.  Accordingly, the release,

discharge, and exculpation provisions set forth in the Plan, including those described in

Paragraphs 10.3, 10.13, 11.7, 19.13 and 19.14 of the Plan, are approved.  Each of the release,

discharge, and exculpation provisions set forth in the Plan:

(i)     may be approved by this Court pursuant to its jurisdiction granted

under 28 U.S.C. §§ 1334(a), (b) and (d);

(ii)    is an essential means of implementing the Plan pursuant to section

1123(a)(5) of the Bankruptcy Code;

(iii)   confers material benefit on, and is in the best interest of the Debtor,

its Estate and creditors; and

12

(iv)     is consistent with sections 105, 1123, 1129 and other applicable

provisions of the Bankruptcy Code.

EE.     <u>Preservation of Causes of Action</u>.  It is in the best interest of the holders of

Claims and Equity Securities that causes of action that are not expressly released or abandoned

under the Plan be retained by the Liquidating Debtor to maximize the value of the Debtor's

Estate.

FF.     <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the

Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all

pleadings and other documents filed, all orders entered, and evidence and argument made,

proffered or adduced at, the hearings held before the Court during the pendency of the Chapter

11 Case.

GG.     <u>Marlin State Court Action</u>.

(i)     On or about February 23, 2012, Marlin Mechanical, Inc.

("**Marlin**") commenced a representative action pursuant to section

77 of the Article 3-A of the New York Lien Law (the "**Marlin**

**State Court Action**") in the New York State Supreme Court, New

York County, Index No. 6505013/2012 against certain former

officers, employees, and directors of the Debtor (the "**State Court**

**Defendants**").

(ii)    By Order dated May 3, 2012 [Adv. Pro. No. 12-01219 (SHL), Dkt.

No. 15] (the "**Preliminary Injunction Order**"), the Court ordered

that:

13

(a)    the Marlin State Court Action was void *ab initio* as violative of the automatic stay of section 362(a) of the Bankruptcy Code to the extent that the Marlin State Court Action concerned property of the Estate, and

(b)    to the extent the Marlin State Court Action did not involve property of the Estate and, thus, was not void *ab initio*, Marlin was preliminarily enjoined from further prosecution of the Marlin State Court Action until the earlier of thirty (30) days after the effective date of a confirmed chapter 11 plan in this Chapter 11 Case.

(iii)    During this Chapter 11 Case, the Court entered orders approving settlements between the Trustee and certain of the State Court Defendants, and in such settlements the Trustee released all of the Estate's claims against the State Court Defendants (collectively, the "**State Court Defendant Releases**").

(iv)    In the Court's Memorandum of Decision dated September 2, 2015 (the "**September Decision**"), the Court held that (a) the Estate did not own certain claims against the State Court Defendants because such claims were owned solely by Article 3-A trust beneficiaries, and (b) the State Court Defendant Releases did not release any claims that not owned by the Estate.

14

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.        Solicitation Procedures.  Votes for the acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other rules, laws and regulations and with the procedures set forth in the Disclosure Statement Order.  The solicitation procedures and solicitation are hereby approved.

2.        Confirmation.  The Plan, which is annexed hereto as Exhibit 1, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and comprise an integral part of this Confirmation Order.

3.        Objections.  All parties have had a full and fair opportunity to litigate all issues raised, or that might have been raised, by an objection to the Plan, including any objections that could have been raised to any documents related thereto.  The Objections, to the extent not previously resolved, resolved herein or withdrawn, are hereby overruled and denied *for the reasons stated on the record at the Confirmation Hearing*.

4.        Claims Bar Date for Ordinary Administrative Claims.  Unless previously filed prior to the Confirmation Date, all requests for payment of or proofs of claim with respect to Ordinary Administrative Claims incurred after December 2, 2011 and that were not previously filed must be filed no later than thirty (30) days after the Effective Date or be forever barred.

5.        Administrative Claims of the Trustee and Professional Persons.  Applications or requests for payment of the Trustee's statutory commission in accordance with the Bankruptcy Code and for the payment of fees and reimbursement of expenses of Professional Persons retained by the Debtor and/or the Trustee shall be filed with thirty (30) days after the Effective Date.  The statutory commission and the fees and expenses of the Professional

2374371.3

Person(s) shall be paid in accordance with, and as soon as practicable after entry of, an order(s)

of the Court approving such commission, fees and expenses.

6.      Plan Classification Controlling.  The classifications of Claims and Equity

Securities for purposes of the distributions to be made under the Plan is appropriate and not

inconsistent with the Bankruptcy Code.

7.      Subordination of Claims.  The Claims identified in the Plan Supplement

shall be equitably subordinated to all other General Unsecured Claims, and shall be classified as

a Class 5 Subordinated Claim.

8.      Plan Administrator.  The appointment of Jonathan L. Flaxer as Plan

Administrator is hereby approved.  The Plan Administrator shall have the rights, powers and

duties specified in the Plan, and serve in accordance with the terms of the Plan until the

appointment of a successor Plan Administrator or his discharge.  The Plan Administrator shall

maintain a bond in the amount of at least 150% of the average monthly cash and cash equivalents

held by the Liquidating Debtor.  Until the earlier of conversion, dismissal or closing of this

Chapter 11 Case, the Plan Administrator, on behalf of the Liquidating Debtor, shall quarterly (a)

file post-confirmation disbursement reports for the previous quarter, and (b) pay all Quarterly

Trustee Fees plus interest, if any.

9.      Vesting of Assets (11 U.S.C. § 1141).  On the Effective Date, all Property

of the Estate, including claims and causes of action (including defenses and counterclaims) of

any type or nature, held by, asserted by, or that could be asserted by the Estate, other than those

abandoned by Article XVII of the Plan, shall vest in the Liquidating Debtor in accordance with

section 1141 of the Bankruptcy Code.

2374371.3

10.    <u>Continuation of Stay</u>.  Pursuant to section 362(c) of the Bankruptcy Code,

the automatic stay of section 362(a) of the Bankruptcy Code shall continue in full force and

effect with respect to the Liquidating Debtor, the Trustee, and/or the Plan Administrator

following the Effective Date of the Plan until the Termination Date, except with respect to

Personal Injury Actions, which shall not be subject to the automatic stay following the Effective

Date.

11.    **Injunction.  Except as otherwise expressly provided herein or in the**

**Plan, all Persons or Entities, together with their respective present and former employees,**

**agents, officers, directors, principals and affiliates, who have held, hold or may hold Claims**

**against or Equity Securities in the Debtor are permanently enjoined, from and after the**

**Effective Date, from (i) pursuing any and all such Claims and/or any and all rights and/or**

**remedies arising under or relating to Equity Securities (other than the rights of such**

**Persons and Entities to enforce the Plan, the Approval Order and any contracts,**

**instruments, releases and other agreements or documents delivered thereunder and**

**hereunder and liabilities first arising thereunder after the Effective Date), known or**

**unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or**

**otherwise, that are based in whole or part on any actual or alleged act, omission,**

**transaction, event, or other occurrences taking place on or prior to the Effective Date**

**(collectively, the "<u>Released Claims</u>"), (ii) commencing or continuing in any manner any**

**action or other proceeding of any kind based on any Released Claim against any of the**

**Debtor, the Plan Administrator or the Liquidating Debtor, (iii) the enforcement,**

**attachment, collection or recovery by any manner or means of any judgment, decree or**

**other award against any of the Debtor, the Plan Administrator or the Liquidating Debtor,**

2374371.3

**(iv) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtor, the Estate or the Liquidating Debtor or against the property or interests in property of any of the foregoing based on any Released Claim, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due or owing to the Debtor or against the property or interests in property of any of the Debtor, the Estate or the Liquidating Debtor based on any Released Claim; _provided_, _however_, that this provision shall not impact or affect the rights and powers of any governmental entity or agency exercising its police or regulatory power.**

12.    <u>Operation of Liquidating Debtor</u>.  The Liquidating Debtor shall be authorized to engage in any lawful activity for which corporations may be organized under the law of the State of New York to the extent and only to the extent that such activities are necessary to liquidate its assets and liabilities in accordance with the Plan.

13.    <u>Company Action</u>.  The entry of this Confirmation Order shall constitute authorization for the Debtor, the Liquidating Debtor, the Trustee or the Plan Administrator (as the case may be) to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation, by the Debtor or its board of directors or shareholders.

14.    <u>Dissolution of Liquidating Debtor</u>.  Upon the distribution of all assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other

18

or further actions to be taken by or on behalf of the Liquidating Debtor or payments to be made in connection therewith;  provided, however, that the Plan Administrator or the Liquidating Debtor by the Plan Administrator may take appropriate action to dissolve under applicable non-bankruptcy law.  From and after the Effective Date, the Liquidating Debtor shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtor previously conducted business.

15.    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Except as may be ordered by the Court prior to the Effective Date pursuant to sections 1123(b)(2) and 365 of the Bankruptcy Code and any applicable Bankruptcy Rule(s), all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date.  Holders of Claims arising from the rejection of any executory contract or unexpired lease shall file a proof of claim on or prior to thirty (30) days after the Effective Date. Any such Claim filed thereafter shall be deemed disallowed in its entirety without the need of further order of the Court

16.    Authorization to Enter into Manhattan DA Agreement.  The Trustee is authorized to enter into the Manhattan DA Agreement, as implemented by Article XII of the Plan.

17.    Implementation of Manhattan DA Agreement.  To implement the Manhattan DA Agreement, the Trustee is authorized to file claims on behalf of the holders of the Unfiled Customer Claims solely in accordance with and for the purposes set forth in the Plan, and such claims shall be classified in Class 3.

18.    Distribution of Trust Funds.  The Trustee is authorized and directed to distribute trust funds held by the Estate in accordance with Article XIV of the Plan.

2374371.3

19.    <u>Marlin State Court Action No Longer Stayed</u>.  Consistent with the

September Decision, (i) any claims or causes of action in the Marlin State Court Action, New

York County Index Number 650513/2012, that assert a claim against the State Court Defendants

for violation of their duties to plaintiffs under Article 3-A of the New York State Lien Law (the

"**Article 3-A Claims**") are not property of the Estate, are not released by the State Court

Defendant Releases, and have not been voided by the Preliminary Injunction Order of this Court

dated and entered May 3, 2012, and (ii) the preliminary injunction set forth in the Preliminary

Injunction Order with respect to the Marlin State Court Action is hereby revoked as to the Article

3-A Claims and any recovery thereon is not property of the Estate.

20.    <u>Effectuating Documents and Further Transactions</u>.  Pursuant to the Plan,

the Plan Administrator shall be authorized to execute, deliver, file, or record such documents,

instruments, releases, and other agreements and to take such actions as may be necessary or

appropriate to effectuate and further evidence the terms and conditions of the Plan.

21.    <u>Plan Documents</u>.  The execution, delivery and performance by the Trustee

and/or Plan Administrator of any of the documents contemplated by the Plan, and any

amendments, modifications and supplements thereto, and all documents and agreements

introduced therein or contemplated by the Plan is authorized and approved, without further order

or authorization of the Court.

22.    <u>Cancellation of Securities</u>.  Upon the entry of a Final Order closing the

Chapter 11 Case, all Equity Securities shall be cancelled without the need for further order of the

Court.

23.    **<u>Releases and Injunctions Generally</u>.  The releases, injunctions,**

**exculpation and discharge provisions set forth in the Plan, including those set forth in**

2374371.3

Paragraphs 10.3, 10.13, 11.7, 19.13 and 19.14 of the Plan are expressly incorporated into this Order as if set forth in full and are hereby authorized and approved.

24.      **Injunction Against Claims Filed Against Plan Administrator.  No claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Court for authority to bring such claim for good cause shown, and entry of a Final Order of the Court authorizing the filing of such claim.  The Court reserves exclusive jurisdiction over the Plan Administrator and enjoins the filing of any such claim absent compliance by the proposed plaintiff with the provisions hereof and the Plan.**

25.      <u>Non-Occurrence of Effective Date</u>.  If the Effective Date has not occurred in accordance with Paragraph 18.2 of the Plan, the Trustee reserves all rights to seek an order from the Court directing that the Confirmation Order be vacated and that the Plan be declared null and void in all respects.

26.      <u>Authorization to Consummate Plan</u>.  After each of the requirements set forth in Paragraph 18.2 of the Plan has either been satisfied or waived in accordance with the terms of the Plan, the Plan may be consummated and the Effective Date may occur without further order of the Court.

27.      <u>Notice of Entry of Confirmation Order and the Effective Date</u>.  Within five (5) Business Days after the Effective Date, the Plan Administrator shall serve a notice pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), on all parties on the master service list plus those parties required to be served with such notice pursuant to the Bankruptcy Rules and the Local Bankruptcy Rules.

21

28.    <u>Effect of Confirmation</u>.  The distributions and other treatment afforded all holders of Claims and Equity Securities hereunder shall be in full and complete satisfaction of all Claims against, and Equity Securities in, the Debtor.  From and after the Effective Date, holders of Claims against, and Equity Securities in, the Debtor, the Liquidating Debtor and the Estate shall be treated in accordance with the terms of the Plan and shall have no other rights, remedies or causes of action against the Debtor, the Liquidating Debtor or the Estate other than as set forth in the Plan.  From and after the Effective Date, and except as otherwise set forth in the Plan, all holders of Claims (including persons or entities that could have filed a Claim) and Equity Securities shall be precluded from asserting against the Trustee, the Plan Administrator, or against any property of the Estate or of the Liquidating Debtor, any Claim based upon any act or omission, transaction or other activity of any kind or nature in connection with this Chapter 11 Case which occurred prior to the Effective Date.  Notwithstanding the foregoing, nothing contained herein shall relieve the Trustee or the Plan Administrator from liability for willful misconduct, *ultra vires* acts, gross negligence or breach of fiduciary duty.

29.    <u>Binding Effect</u>. The Plan and this Confirmation Order shall be binding upon and inure to the benefit of the Debtor, the Estate, all present and former holders of Claims and Equity Securities, and their respective successors and assigns, including, but not limited to, the Liquidating Debtor and any chapter 7 trustee appointed to administer the Estate.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all Plan related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

30.    <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a), 1127 and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the

2374371.3

occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, the Plan and the Plan Administrator to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XX of the Plan.

31.    <u>References to Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

32.    <u>Provisions of Plan and Confirmation Order Non-Severable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

33.    <u>Confirmation Order Controlling</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

34.    <u>Applicable Non-Bankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

2374371.3

Dated: New York, New York
      October 30, 2015

                ***/s/ Sean H. Lane***
                UNITED STATES BANKRUPTCY JUDGE

2374371.3

# EXHIBIT 1

Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

*Counsel for Jonathan L. Flaxer, chapter 11 trustee for*
*Lehr Construction Corp.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                  :

In re                               :           Chapter 11
                                  :

LEHR CONSTRUCTION CORP.,      :           Case No. 11-10723 (SHL)
                                  :

               Debtor.          :
                                  :
------------------------------------------------------------X

## CHAPTER 11 TRUSTEE'S PLAN OF
## LIQUIDATION FOR LEHR CONSTRUCTION CORP.

Jonathan L. Flaxer, chapter 11 trustee for Lehr Construction Corp., hereby proposes this

Plan of Liquidation for Lehr Construction Corp. pursuant to section 1121(a) of title 11 of the

United States Code.

## ARTICLE I

### DEFINED TERMS

1.1.    <u>Defined Terms</u>.  For the purpose of this Plan, each of the terms set forth in this

Article I shall have the meaning ascribed thereto below.  All of the definitions and provisions

contained in this Article I are and shall be regarded as integral, substantive and operative

provisions of this Plan.


1.1.1.  "**Administrative Claim**" means any cost or expense of administration of the

Chapter 11 Case allowed under section 503(b) of the Bankruptcy Code, including the Trustee's

statutory commission, and the fees and expenses of Professional Persons.

1

1.1.2.    "**Administrative Claims Bar Date**" means (a) with respect to Ordinary

Administrative Claims incurred on or prior to October 26, 2011, December 2, 2011, which was

the last date for filing such Ordinary Administrative Claims in the Chapter 11 Case, or (b) with

respect to (i) Ordinary Administrative Claims incurred after October 26, 2011, and (ii)

Administrative Claims for the Trustee's commissions and the fees and expenses of Professional

Persons, the date that is thirty (30) days after the Effective Date.

1.1.3.    "**Administrative and Priority Claims Reserve**" means that amount reserved

for the payment of all Administrative Claims, Priority Tax Claims, and Priority Claims which are

not Allowed as of the Effective Date or as to which the holder of such Claim has agreed to

treatment other than payment in full upon the Effective Date, including, without limitation (i) the

statutory commission of the Trustee, (ii) estimated fees and expenses of Professional Persons,

(iii) Disputed Administrative Claims, (iv) Disputed Priority Tax Claims, and (v) Disputed

Priority Claims.

1.1.4.    "**Allowed**" when used as an adjective preceding the word "Claim,"

"Administrative Claim," "Priority Claim," "General Unsecured Claim," "Customer Claim,"

"Filed Customer Claim," or "Subordinated Claim," means any Claim against the Debtor (i) that

is listed in the Debtor's Schedules of Assets and Liabilities, as may be amended from time to

time, for which no proof of claim has been filed with the Court on or before the Bar Date, and is

not designated in the Debtor's Schedules of Assets and Liabilities as disputed, contingent or

liquidated, and as to which no objection to the allowance thereof has been interposed within any

applicable period of limitation fixed by this Plan, (ii) in respect of which a proof of claim has

been filed with the Court on or before the Bar Date (or in the case of an Administrative Claim, in

respect of which a request for payment of such Administrative Claim or proof of claim has been

filed with the Court on or before the Administrative Claims Bar Date) and as to which no

objection to the allowance thereof has been interposed within any applicable period of limitation

fixed by this Plan, or (iii) as to which an objection has been interposed and such Claim has been

allowed in whole (or in part to the extent Allowed) by a Final Order of a court of competent

jurisdiction.

1.1.5.  "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended

and as codified under title 11 of the United States Code, and in effect on the Petition Date.

1.1.6.  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure

applicable to the Chapter 11 Case.

1.1.7.  "**Bar Date**" means (i) with respect to all persons and entities, except

government units, September 30, 2011, which was the last date for such persons and entities to

file proofs of claim in the Chapter 11 Case, and (ii) with respect to governmental units,

November 7, 2011, which was the last date for governmental units to file proofs of claim in the

Chapter 11 Case.

1.1.8.  "**Business Day**" means any day on which commercial banks are not required

or authorized to close in the State of New York.

1.1.9.  "**Cash**" means lawful currency of the United States of America (U.S. dollars),

certified check, bank check, cashier's check or wire transfer from a domestic bank.

1.1.10. "**Cash Collateral**" means the funds of the Debtor held by Travelers to secure

repayment of the Travelers Claim.

3

1.1.11.  "**Chapter 11 Case**" means the Debtor's case under chapter 11 of the Bankruptcy Code, Case No. 11-10723 pending in the United States Bankruptcy Court for the Southern District of New York.

1.1.12. "**Claim**" has the meaning given to such term in section 101(5) of the Bankruptcy Code.

1.1.13. "**Claims Objection Date**" shall mean the first Business Day that is more than six (6) months following the Effective Date or such later date as the Court may, with or without cause, approve.

1.1.14. "**Confirmation Date**" means the date upon which a Confirmation Order is entered by the Court.

1.1.15. "**Confirmation Hearing**" means the hearing to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.16. "**Confirmation Order**" means an order entered by the Court, pursuant to section 1129 of the Bankruptcy Code, in form and substance acceptable to the Trustee.

1.1.17.  "**Court**" means the United States Bankruptcy Court for the Southern District of New York and any other court having competent jurisdiction over the Chapter 11 Case.

1.1.18. "**Customer Claims**" means, collectively, (i) the Unfiled Customer Claims, and (ii) the Filed Customer Claims.

1.1.19.  "**Debtor**" means Lehr Construction Corp., a New York corporation and the debtor in the Chapter 11 Case.

4

1.1.20. "**Disclosure Statement**" means the disclosure statement for the Plan approved

by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017

(including all scheduled and exhibits thereto), as such disclosure statement may be amended or

modified.

1.1.21. "**Disputed**" when used as an adjective proceeding the word "Claim,"

"Administrative Claim," "Priority Claim," "Priority Tax Claim," "General Unsecured Claim,"

"Customer Claim," "Filed Customer Claim," or "Subordinated Claim,"  means any Claim (i) for

which an objection to the allowance of such Claim, in whole or in part, has been or is filed prior

to the date provided under this Plan for the filing of such an objection, and which objection has

not been (a) withdrawn or settled, or (b) determined by a Final Order; or (ii) in the case of an

Administrative Claim that may be Allowed only upon entry of a Final Order of the Court

allowing the same, an Administrative Claim for which no such Final Order has been entered.

1.1.22. "**Effective Date**" means the first date on which all of the conditions contained

in Paragraph 18.2 of this Plan have occurred or have been waived pursuant to Paragraph 18.3

hereof.

1.1.23. "**Equity Security**" has the meaning ascribed to it in section 101 of the

Bankruptcy Code and shall include any Claim of entitlement to a participation in the Debtor's

profit.

1.1.24. "**Estate**" means the chapter 11 estate of the Debtor created pursuant to section

541(a) of the Bankruptcy Code.

1.1.25. "**Estimated Customer Claim Amount**" shall mean the "Estimated Claim

Amount" for each Customer Claim as set forth on Schedule 1.1.24 of the Plan.

5

2310903.2

1.1.26. "**Filed Customer Claims**" means the General Unsecured Claims listed on Schedule 1.1.25 of the Plan.

1.1.27. "**Final Distribution**" means the last distribution to holders of Allowed Claims by the Plan Administrator, which distribution will include all remaining assets in the Post Confirmation Fund.

1.1.28. "**Final Order**" means an order of the Court, or any other court of competent jurisdiction, that is no longer subject to the imposition of any stay pending appeal or any other stay, or subject to review, reversal, modification or amendment by appeal; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule may be, but has not been filed shall not cause an order not to be a Final Order.

1.1.29. "**General Unsecured Claims**" means any Claim arising prior to the Petition Date that is not secured by a lien on any property of the Estate, and that is not the Travelers Claim, a Priority Claim, a Priority Tax Claim, an Unfiled Customer Claim, or a Subordinated Claim, and which is not otherwise entitled to priority under the Bankruptcy Code.

1.1.30. "**General Unsecured Claims Reserve**" means that amount reserved for the payment of the Disputed General Unsecured Claims.

1.1.31. "**Liquidating Debtor**" means the Debtor following the occurrence of the Effective Date of the Plan.

1.1.32. "**Local Bankruptcy Rules**" means the Local Rules of the United States Bankruptcy Court for the Southern District of New York applicable to the Chapter 11 Case.

6

2310903.2

1.1.33. "**Manhattan DA**" means Cyrus R. Vance, District Attorney, New York County, New York.

1.1.34. "**Manhattan DA Agreement**" means the agreement dated as of April 2014 between the Manhattan DA and the Trustee regarding administration of the Restitution Fund.

1.1.35. "**Opening Cash Balance**" means all Cash of the Liquidating Debtor on the Effective Date.

1.1.36. "**Ordinary Administrative Claim**" means an Administrative Claim other than (x) the Trustee's statutory commission in accordance with the Bankruptcy Code or (y) the Administrative Claim of any Professional Persons.

1.1.37. "**Personal Injury Actions**" means certain actions commenced against the Debtor seeking to recover damages arising out of or related to personal injuries allegedly sustained by one or more of the claimants, including all related indemnification and contribution actions of co-defendants in such actions commenced by or against the Debtor.

1.1.38. "**Petition Date**" means February 21, 2011.

1.1.39. "**Plan**" means this Chapter 11 Plan, together with any schedules or exhibits hereto, and any further amendments or modifications of the same, and any Plan Supplements.

1.1.40. "**Plan Administrator**" means Jonathan L. Flaxer.

1.1.41. "**Plan Administrator Expense**" means any reasonable expense of the Plan Administrator incurred in connection with his service as Plan Administrator.

2310903.2

1.1.42. "**Plan Administrator Indemnified Parties**" means the Plan Administrator and his employees, agents, representatives, consultants, attorneys and professionals.

1.1.43. "**Plan Administrator Reserve**" means that amount reserved for the payment of the Plan Administrator's expenses, including the fees and expenses of the Plan Administrator and the professional fees and fees permitted to be paid by the Plan Administrator, which shall initially be $250,000.

1.1.44. "**Plan Supplement**" means a volume of exhibits to the Plan to be filed not later than twenty (20) days prior to the Confirmation Hearing.

1.1.45. "**Post Confirmation Fund**" means all Cash constituting property of the Estate or the Liquidating Debtor, including the net proceeds of any causes of action brought on behalf of the Estate or the Liquidating Debtor.

1.1.46. "**Priority Claim**" means any Claim entitled to priority in accordance with section 507 of the Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

1.1.47. "**Priority Tax Claim**" means any Claim entitled to priority under section 507(a)(7) of the Bankruptcy Code.

1.1.48. "**Professional Person**" means an attorney, accountant, appraiser, auctioneer or other similar professional person engaged and/or retained in the Chapter 11 Case by the Debtor or the Trustee.

1.1.49. "**Pro Rata Share**" means with respect to any distribution on account of any Allowed Claim or Equity Security, a distribution equal in amount to the ratio (expressed as a

8

percentage) that the amount of such Allowed Claim or Equity Security bears to the aggregate
amount of all Allowed Claims or Equity Securities in its Class.

1.1.50. "**Quarterly Trustee Fees**" means those fees payable on a quarterly basis to
the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

1.1.51. "**Rejection Claims Bar Date**" has the meaning set forth in Paragraph 16.2
hereof.

1.1.52. "**Reserves**" means the following: (a) the Administrative and Priority Claims
Reserve, (c) the General Unsecured Claims Reserve, (d) the Plan Administrator Reserve, and (e)
the Unclaimed Distribution Reserve.

1.1.53. "**Restitution Fund**" means the monies collected by the Manhattan DA
pursuant to agreements with certain subcontractors who performed work on behalf of the Debtor,
which agreements, among other things, provided for the payment of fines.

1.1.54. "**Reviewed Professional**" shall mean any professional person or entity
retained by the Plan Administrator other than any expert or consultant retained in connection
with any action, proceeding, claim, threatened claim or investigation, whether or not such expert
or consultant is designated to testify or otherwise offer an expert opinion in connection with such
matter.

1.1.55. "**Statutory Rate**" means the rate of interest specified in 28 U.S.C. § 1961.

1.1.56. "**Subordinated Claim**" means those claims listed on Schedule 1.1.56 of the
Plan Supplement, which shall be equitably subordinated to General Unsecured Claims pursuant
to Section 510(b) of the Bankruptcy Code.

9

1.1.57.  "**Termination Date**" shall mean the date of entry of an order approving a Final Distribution in the Chapter 11 Case and closing this Chapter 11 Case.

1.1.58.  "**Travelers Claim**" means the secured Claim of The Travelers Indemnity Company.

1.1.59. "**Trustee**" means Jonathan L. Flaxer, solely in his capacity as chapter 11 trustee of the Debtor.

1.1.60. "**Unclaimed Distribution Reserve**" means that amount reserved for unclaimed distributions in accordance with Paragraph 13.12 of this Plan.

1.1.61. "**United States Trustee**" means the Office of the United States Trustee for the Bankruptcy Court of the Southern District of New York.

1.1.62. "**Unfiled Customer Claims**" means the unliquidated Claims that the Trustee is filing on behalf of the parties or entities listed on Schedule 1.1.62 of the Plan, solely for the purpose of permitting holders of Unfiled Customer Claims to receive a distribution from the Restitution Fund.

1.1.63. "**Voting Deadline**" means the deadline fixed by the Bankruptcy Court in an order approving the Disclosure Statement for submitting ballots to accept or reject the Plan in accordance with §1126 of the Bankruptcy Code.

1.2.    Interpretation.  Words denoting the singular shall include the plural and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent that any term or provisions of the Plan is determined by the Court to be ambiguous.

10

1.3.    <u>Rules of Construction</u>.  The rules of construction set forth in section 102 of the

Bankruptcy Code shall be applicable to all provisions of this Plan.  A term that is used in this

Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy

Rules, shall have the meaning set forth therein.  Any reference contained in this Plan to a

particular exhibit, sub-paragraph, paragraph or article shall be deemed to be a reference to an

exhibit, sub-paragraph, paragraph or article of this Plan.

1.4.    <u>Other Terms</u>.  The words "herein," "hereof," "hereto," "hereunder," and other

terms of similar import refer to the Plan as a whole and not to any particular article, paragraph,

sub-paragraph, or clause contained in the Plan.  The word "including" when used herein shall

mean "including without limitation" in each instance."

ARTICLE II

PROVISIONS FOR PAYMENT OF ALLOWED
<u>ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS</u>

2.1    <u>Allowance and Treatment of Ordinary Administrative Claims</u>.  If an application

or request for payment of an Ordinary Administrative Claim has been filed on or prior to the

applicable Administrative Claims Bar Date, then such Ordinary Administrative Claim shall be an

Allowed Ordinary Administrative Claim if (i) no objection to the allowance of such Ordinary

Administrative Claim has been interposed as of the Claims Objection Date, and (ii) the approval

of the Court is not required by this Plan, the Bankruptcy Code or other applicable law, rule or

regulation in order for such Ordinary Administrative Claim to be Allowed.  Notwithstanding

anything contained herein to the contrary, if an objection to the allowance of an Ordinary

Administrative Claim is interposed by the Claims Objection Date, then such Ordinary

Administrative Claim shall be Allowed only upon entry of a Final Order of the Court allowing

such Administrative Claim in whole or in part.  Except to the extent that the holder of an

11

Allowed Ordinary Administrative Claim agrees to a different treatment or unless the Court

orders otherwise, Allowed Ordinary Administrative Claims shall be paid in full in Cash on the

Effective Date or as soon as practicable after such Claims become Allowed Ordinary

Administrative Claims.

2.2    <u>Allowance and Treatment of Administrative Claims of the Trustee and</u>

<u>Professional Persons</u>.  Applications for payment of the Trustee's statutory commission in

accordance with the Bankruptcy Code, and for the payment of fees and reimbursement of

expenses of Professional Persons, shall be filed no later than thirty (30) days following the

Effective Date.  Except to the extent that the Trustee or a Professional Person agrees otherwise,

the Trustee's statutory commission and the fees and expenses of the Professional Person(s) shall

be paid in accordance with, and as soon as practicable after entry of, an order(s) of the Court

approving such commission, fees and expenses.

2.3    <u>Allowance and Treatment of Priority Tax Claims</u>.  Except to the extent that the

holder of an Allowed Priority Tax Claim agrees to a different treatment or unless the Court

orders otherwise, Allowed Priority Tax Claims shall be paid in full in Cash on the Effective Date

or as soon as practicable after such Claims become Allowed Priority Tax Claims.

ARTICLE III

<u>CLASSIFICATION OF CLAIMS AND EQUITY SECURITIES</u>

3.1    <u>Classification of Allowed Claims and Equity Securities</u>.  Except as otherwise

provided herein, for purposes of voting and all other confirmation matters, all Claims and Equity

Securities will be classified as set forth in this Article III.  A Claim is in a particular class only to

the extent that the Claim falls within the description of that class and is in a different class to the

extent that the remainder of the Claim falls within the description of such different class.  In

12

addition, a Claim or Equity Security is in a particular class only to the extent that the Claim or

Equity Security is Allowed.

3.2    <u>Classes</u>.  The Claims against and the Equity Securities of the Debtor are classified

under the Plan as follows:

| Class 1 | -- | Travelers Claim |
| Class 2 | -- | Priority Claims |
| Class 3 | -- | Customer Claims |
| Class 4 | -- | General Unsecured Claims |
| Class 5 | -- | Subordinated Claims |
| Class 6 | -- | Equity Securities |

3.3    <u>Unimpaired Claims</u>.  By virtue of the treatment accorded the Claims placed in

Class 2, such class is not impaired, and holders of Claims in Class 2 shall be conclusively

deemed to have accepted this Plan pursuant to the mandatory acceptance provisions of section

1126(f) of the Bankruptcy Code.

3.4    <u>Impaired Claims and Equity Securities</u>.  Holders of Claims in Class 1, Class 3,

Class 4, and Class 5, and holders of Equity Securities in Class 6 are impaired.

3.5    <u>Impairment Controversies</u>.  If a controversy arises as to whether any Claim or

Equity Security, or any class of Claims or Equity Securities, is impaired under the Plan, the

Court shall, upon notice and motion, determine such controversy at or prior to the Confirmation

Hearing.

3.6    <u>Classification Controversies</u>.  If a controversy arises as to whether any Claim or

Equity Security, or any class of Claims or Equity Securities, is properly classified under the Plan,

13

the Court shall, upon notice and motion, determine such controversy at the Confirmation

Hearing, unless the Court approves an alternative procedure to resolve any such controversy.  If

(i) the Court determines that the classification of a Claim or Equity Security, or any Class of

Claims or Equity Securities, is improper, or (ii) the Trustee agrees to change the classification of

a Claim or Equity Security, in whole or in part, after soliciting votes on the Plan, then the ballots

previously cast by the holders of such Claims or Equity Securities shall be counted in, and the

Claims or Equity Securities shall receive the treatment prescribed in, the class in which the Court

determines or the Trustee agrees, as applicable, that such Claim or Equity Security should be

classified without the necessity of resoliciting votes on the Plan.


## ARTICLE IV

### PROVISIONS FOR TREATMENT OF THE TRAVELERS CLAIM

4.1     <u>Classification</u>.  Class 1 consists of the Travelers Claim.  Class 1 is impaired.


4.2     <u>Treatment</u>.  The holder of the Travelers Claim shall be paid from the Cash

Collateral and shall otherwise receive no distribution from the Estate.


## ARTICLE V

### PROVISIONS FOR TREATMENT OF PRIORITY CLAIMS

5.1     <u>Classification</u>.  Class 2 consists of all Priority Claims, if any.  Class 2 is not

impaired.


5.2     <u>Treatment</u>.  Allowed Priority Claims shall be paid in full in Cash on the Effective

Date or as soon as practicable after such Claims become Allowed Priority Claims.

2310903.2

ARTICLE VI

PROVISIONS FOR TREATMENT OF CUSTOMER CLAIMS

6.1     Classification.  Class 3 consists of all Allowed Customer Claims.  Class 3 is

impaired.

6.2     Treatment.  Holders of Allowed Customer Claims shall be paid a Pro Rata Share

of the available Cash in the Restitution Fund, after payment of the Plan Administrator's expenses

for administration of the Restitution Fund and setting aside a reserve for Disputed Customer

Claims.  Holders of Unfiled Customer Claims shall receive a distribution solely from the

Restitution Fund but shall not hold Class 4 General Unsecured Claims.  Subject to Section 6.5

below, to the extent that Allowed Filed Customer Claims are not satisfied in full from the

Restitution Fund, holders of Allowed Filed Customer Claims shall also hold General Unsecured

Claims, which shall be treated as set forth in Article VII herein.

6.3     Estimation for Voting Purposes.   Pursuant to Bankruptcy Rule 3018, all

Customer Claims shall be estimated solely for voting purposes in the Estimated Customer Claim

Amount for such Claim as set forth on Schedule 1.1.24 of the Plan.

6.4     Allowance of Unfiled Customer Claims.  All Unfiled Customer Claims shall be

Allowed in the Estimated Customer Claim Amount for such Claim as set forth on Schedule

1.1.24 of the Plan, but solely for the purpose of sharing in the Restitution Fund.

6.5     **Election Rights for Filed Customer Claims.   Holders of Filed Customer**

**Claims may elect to have their Claims Allowed in such claimant's Estimated Customer**

**Claim Amount set forth on Schedule 1.1.24 of the Plan.   Any such election must be made**

**on the ballot, and, except as may be agreed by the Plan Administrator, no holder of a Filed**

15

**Customer Claim may elect to accept their Estimated Customer Claim Amount after the**

**Voting Deadline.  Claimants that elect to accept their Estimated Customer Claim Amount**

**must do so with respect to such claimant's Class 3 Claim and, to the extent the claimant's**

**Filed Customer Claim is not satisfied in full from the Restitution Fund, the balance of such**

**claimant's Class 4 General Unsecured Claim.**

ARTICLE VII

PROVISIONS FOR TREATMENT OF GENERAL UNSECURED CLAIMS

7.1     Classification.  Class 4 consists of all General Unsecured Claims.  Class 4 is

impaired.

7.2     Treatment.  Holders of Allowed General Unsecured Claims shall be receive a Pro

Rata Share of the Cash in the Post Confirmation Fund after payment in full of Allowed

Administrative Claims (except to the extent that holders of such Claims agree to different

treatment), Allowed Priority Tax Claims, and Allowed Priority Claims, funding of Reserves, and

payment of United States Trustee fees (including Quarterly Trustee Fees).

To the extent that Allowed Filed Customer Claims are not satisfied in full from

the Restitution Fund, holders of Allowed Filed Customer Claims shall receive a distribution from

the Post-Confirmation Fund; provided, however, that holders of Allowed Filed Customer Claims

shall not receive a distribution on behalf of their Allowed General Unsecured Claim (if any)

unless and until holders of Allowed General Unsecured Claims other than Allowed Filed

Customer Claims receive distributions from the Post Confirmation Fund equal in amount to the

ratio (expressed as a percentage) that holders of Allowed Filed Customer Claims receive from

the Restitution Fund on their claims.

16

ARTICLE VIII

PROVISION FOR TREATMENT OF SUBORDINATED CLAIMS

8.1     Classification.  Class 5 consists of Subordinated Claims.  Class 5 is impaired.

8.2     Treatment.  Holders of Allowed Subordinated Claims shall be entitled to a Pro Rata Share of the Cash, if any, in the Post Confirmation Fund after payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Filed Customer Claims, and Allowed General Unsecured Claims, funding of Reserves to the extent required by the Plan, and payment of United States Trustee fees (including Quarterly Trustee Fees).

ARTICLE IX

PROVISIONS FOR TREATMENT OF EQUITY SECURITIES

9.1     Classification.  Class 6 consists of all Equity Securities of the Debtor.  Class 6 is impaired.

9.2     Treatment.  Holders of Equity Securities shall neither receive nor retain any property under the Plan.  Equity Securities shall be cancelled effective upon entry of a Final Order closing the Chapter 11 Case.

ARTICLE X

PLAN ADMINISTRATOR

10.1     Agreement to Be Bound; Term.  The Plan Administrator shall execute an acknowledgement that he has read the terms of this Plan and agreement to be bound by such terms in the form provided in the Plan Supplement.  From and after the Effective Date, the Plan Administrator shall serve in accordance with the terms of this Plan until the earlier to occur of

17

(x) the entry of an order discharging the Plan Administrator, or (y) the appointment of a successor Plan Administrator in accordance herewith.

10.2    <u>Powers</u>.  The rights and powers of the Plan Administrator shall include the following:

      (a)    investing the Cash of the Liquidating Debtor in any money market vehicles which are rated no less than "A" or "A1/P1" by Moody's Investors Service and Standard & Poor's and have a maturity of no more than one (1) year; it being understood that the Plan Administrator shall have no duty or obligation to invest Cash of the Liquidating Debtor at interest;

      (b)    prosecuting, litigating, settling or otherwise disposing of all Claims of any type or nature asserted against the Estate or the Liquidating Debtor, including all objections to Claims asserted by the Trustee prior to the Effective Date or objecting to any Claim that is not the subject of an objection prior to the Claims Objection Date;

      (c)    prosecuting, litigating, settling or otherwise disposing of any Claim or cause of action that has been or could be filed or asserted by the Trustee, the Debtor and/or the Liquidating Debtor, including, without limitation (i) any cause of action or claim for relief, including actions under chapter 5 of the Bankruptcy Code, and (ii) any cause of action to equitably subordinate a Claim;

      (d)    conducting examinations in accordance with Bankruptcy Rule 2004, including, without limitation, compelling the attendance of

18

any person or entity to be examined and the production of

documents in accordance therewith;

(e)     complying with all orders and directives of the Court;

(f)     calculating and overseeing the payment of all distributions to be

made under the Plan and other orders of the Court to holders of

Allowed Claims and, to the extent necessary, Equity Securities;

(g)     entering into joint defense, joint prosecution and other similar

agreements, including agreements that permit the Plan

Administrator to share the costs and proceeds of litigation with

persons or entities that are not parties in interest in the Chapter 11

Case;

(h)     establishing and funding the Reserves;

(i)     maintaining and distributing the proceeds of any litigation or other

property, in accordance with the terms of this Plan;

(j)     replenishing and/or augmenting the Reserves with additional Cash

as and when needed, in the sole discretion of the Plan

Administrator;

(k)     without further order of the Court, retaining or employing

professionals to assist the Plan Administrator in carrying out any of

his duties and obligations under the Plan on such terms and for

such matters as the Plan Administrator may, in his sole discretion,

deem reasonable and appropriate, and compensating such

professionals on such terms as the Plan Administrator may deem

reasonable and appropriate; it being expressly understood that such

19

professionals and the terms of their retention or employment may include (x) Golenbock Eiseman Assor Bell & Peskoe LLP as counsel, retained and paid at their ordinary and customary hourly rates, as the same may be adjusted from time to time, (y) Marotta Gund Budd Dzera, LLC as consultants, and (z) Davis, Graber, Plotzker & Ward LLP as tax preparers, each retained and paid at their ordinary and customary hourly rates, as the same may be adjusted from time to time;

(l)    paying from the Post Confirmation Fund any Plan Administrator Expense as and when such expense is incurred, and being reimbursed for such expense as set forth in Paragraph 10.8 hereof;

(m)    seeking determination of any tax liability of the Debtor or Liquidating Debtor under section 505 of the Bankruptcy Code;

(n)    preparing and filing tax and informational returns, if any, for the Debtor and Liquidating Debtor;

(o)    setting off amounts owed to the Debtor or Liquidating Debtor against any and all amounts due to be distributed to the holder of an Allowed Claim to the extent permitted by applicable law;

(p)    asserting or waiving, in its sole discretion, any privilege belonging to the Debtor, the Liquidating Debtor and/or the Trustee;

(q)    furnishing such information and filing such reports concerning the Estate's administration as may be required by the Plan, the Court, or the United States Trustee;

20

(r)     on the Effective Date, paying all Quarterly Trustee Fees due and owing on such date, and thereafter, paying all such fees plus interest, if any, on a quarterly basis;

(s)     compensating himself and his retained professionals in accordance with the terms of this Plan;

(t)     paying the legal fees and costs of indemnifying the Plan Administrator Indemnified Parties in accordance with the terms of this Plan;

(u)     obtaining insurance for himself in accordance with the terms of this Plan;

(v)     filing a final accounting with the Court on or prior to the Final Distribution which sets forth the amount collected and disbursed and the fees and expenses incurred in administering the Liquidating Debtor, and seeking any orders necessary to approve such accounting;

(w)     seeking any orders necessary to terminate the duties of the Plan Administrator under the Plan, and discharge the Plan Administrator from any liability under the Plan;

(x)     executing, delivering, filing, or recording such contracts, instruments, releases, and other agreements or documents, and taking such actions as may be necessary or appropriate to effectuate the duties and responsibilities of the Plan Administrator under this Plan;

(y)     having the authority to comply with all applicable laws;

21

(z)     seeking an order and final decree closing the Chapter 11 Case;

(aa)    taking all actions reasonably necessary to administer the

        Restitution Fund, including establishing reserves for the fees and

        expenses of the Plan Administrator to administer the Restitution

        Fund and for Disputed Customer Claims; and

(bb)    taking all other actions, if any, which the Plan Administrator may

        deem necessary or appropriate, in his sole discretion, to comply

        with the provisions of this Plan, any schedules or exhibits to the

        Plan, and/or the Confirmation Order, to sell, liquidate, distribute or

        otherwise fully administer any property of the Estate, the Debtor

        and/or the Liquidating Debtor and to wind down and dissolve the

        Liquidating Debtor.

10.3    **Exculpation**.  **The Plan Administrator shall have no liability whatsoever to any holder of a Claim or Equity Security or any party in interest in the Chapter 11 Case or any party who could have filed a Claim in the Chapter 11 Case arising out of or in any way related to the performance (or lack thereof) of his duties under this Plan, other than for his willful misconduct, gross negligence, _ultra vires_ acts, or breaches of fiduciary duty, except that in any case, the Plan Administrator shall have no liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals.  No implied covenants or obligations shall be read into the Plan or herein against the Plan Administrator.  No claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Court for authority to bring such claim for good cause shown, and entry of an order of the Court authorizing the filing of such claim.  The**

22

**Court reserves exclusive jurisdiction over the Plan Administrator and enjoins the filing of any such claim absent compliance by the proposed plaintiff with the provisions hereof.**

10.4    <u>Indemnification</u>.  The Liquidating Debtor shall, to fullest extent permitted by applicable law, indemnify and hold harmless each of the Plan Administrator Indemnified Parties from and against any and all liabilities, losses, damages, claims, costs and expenses including but not limited to reasonable attorneys' and other professional fees arising out of or due to their actions or omissions with respect to the performance of their respective duties under this Plan provided that such Plan Administrator Indemnified Party acted in good faith.  To the extent that the Liquidating Debtor indemnifies and holds harmless a Plan Administrator Indemnified Party as provided above, the legal fees and related costs incurred by counsel to or other professionals for such Plan Administrator Indemnified Party shall be paid by the Plan Administrator from the Post Confirmation Fund as and when incurred.  Prior to obtaining an order closing the Chapter 11 Case and until such time as the Plan Administrator obtains the release and discharge provided in Paragraph 10.13 of this Plan, the Plan Administrator shall be entitled to retain sufficient Cash, in his sole discretion, to pay in full the estimated legal fees and related costs which may be incurred by counsel to or other professionals for any Plan Administrator Indemnified Party.  The provisions of this Paragraph 10.4 shall be available to any successor Plan Administrator or the estate of any decedent of any of the Plan Administrator Indemnified Parties, and shall survive the termination of the duties of the Plan Administrator as provided herein.

10.5    <u>Insurance</u>.  The Plan Administrator shall be authorized to obtain, using Cash from the Post Confirmation Fund, such insurance as he may, in his sole discretion, reasonably desire for himself and the Plan Administrator Indemnified Parties with respect to the liabilities, duties and obligations of the Plan Administrator Indemnified Parties which insurance coverage may

23

remain in effect for a reasonable period after the termination of the duties of the Plan Administrator as provided for herein.

10.6   Bond.  The Plan Administrator shall obtain a bond or surety in such amount as may be required by the United States Trustee or applicable law, unless such requirement is waived by the United States Trustee.

10.7   Compensation.  The Plan Administrator shall be entitled to be paid for his services at the rate of $675 per hour.  Except with respect to fees and expenses incurred by the Plan Administrator in connection with administration of the Restitution Fund, such compensation shall be paid to the Plan Administrator on ten (10) days' written notice to the United States Trustee who shall have the right to object in writing within such ten (10) day period by specifying the reason for such objection, and the amount of any objectionable compensation.  In the absence of any written objection within such ten (10) day period, such compensation shall thereafter be paid to the Plan Administrator in the ordinary course of business.  In the event of an objection in writing to such compensation on or prior to the expiration of the ten (10) day period, then in such event (x) the balance of compensation to which no written objection has been raised may be paid in the ordinary course of business as set forth herein, and (y) the objectionable portion of such compensation may be paid only upon entry of an order of the Court authorizing the payment of such compensation or upon the consent of the objecting party.  The Plan Administrator may be paid the compensation set forth in this Paragraph 10.7 from Cash or any asset of the Estate, the Debtor or the Liquidating Debtor, from the Plan Administrator Reserve, from the Post Confirmation Fund, or in the manner that the Plan Administrator, in his sole discretion, deems reasonably appropriate.  Other than as expressly provided in this Paragraph 10.7, such compensation shall not be subject to approval by the Court.

24

10.8    <u>Reimbursement of Other Plan Administrator Expenses</u>.  The Plan Administrator

shall be reimbursed for Plan Administrator Expenses not paid from the Post Confirmation Fund

in the ordinary course of business.  Reimbursement of Plan Administrator Expenses shall not be

subject to approval of the Court.

10.9    <u>Professionals Retained by Plan Administrator</u>.

(a)    *Compensation in General*.  Subject to the provisions of this

Paragraph 10.9, any professionals retained or employed by the

Plan Administrator shall be entitled to reasonable compensation for

services rendered and reimbursement of reasonable expenses

incurred.

(b)    *Compensation of Professionals Other Than Reviewed*

*Professionals*.  The fees and reasonable expenses of professionals

retained by the Plan Administrator other than the Reviewed

Professionals shall be paid in the ordinary course of business and

shall not be subject to the approval of the Court.

(c)    *Compensation of Reviewed Professionals*.  Except with respect to

fees and expenses incurred by any Reviewed Professional in

connection with administration of the Restitution Fund, the Plan

Administrator shall provide the United States Trustee with ten (10)

days' written notice of any proposed payment to any Reviewed

Professional.  Within such ten (10) day period, the United States

Trustee, and the Plan Administrator shall have the right to object in

writing to any such proposed payment(s) to Reviewed

25

Professionals as unreasonable under the facts and circumstances. Such written objection shall state the reason therefor and the amount of the proposed payment which is objectionable. In the absence of a written objection interposed on or prior to the expiration of such ten (10) day period, such payment(s) to such Reviewed Professional(s) shall be made by the Plan Administrator in the ordinary course of business. If a written objection to such payment is interposed on or prior to the expiration of the ten (10) day period, then in such event (x) the balance to which no objection has been raised may be paid in the ordinary course of business by the Plan Administrator as set forth herein, and (y) the objectionable portion of such payment may be paid upon entry of an order of the Court authorizing same or as consented to by such objecting party. In no event shall the Plan Administrator be liable for all or any portion of the fees or expenses of Reviewed Professionals which the Court fails to authorize after a timely written objection is raised.

(d)    *Fee Disputes.* Any disputes related to any fees or expenses of any person or entity retained by the Plan Administrator shall be brought before the Court.

10.10   No Requirement for Disbursement of Own Funds. No provision of the Plan shall require the Plan Administrator to spend his own funds or otherwise incur any financial liability in the performance of his duties hereunder, or in the exercise of any of his rights and powers.

26

10.11    No Audit.  The Plan Administrator shall have no obligation to provide audited financial statements with respect to any reports required by this Plan, the Bankruptcy Rules, Local Bankruptcy Rules, or the United States Trustee.

10.12    Appointment of Successor.  Upon notice to those parties set forth in Paragraph 19.3 of this Plan, and entry of an order of the Court, the Plan Administrator may appoint a successor, it being understood that there shall exist no period of time in which any person or entity has assumed the rights, and is responsible for performing the duties and obligations, of the Plan Administrator hereunder.  The Plan Administrator shall have the right to petition the Court to appoint a successor Plan Administrator.  Any such successor shall have and shall assume all of the rights, duties and obligations of the Plan Administrator as set forth in this Plan, and shall serve in accordance with the terms of this Plan until the earlier to occur of (x) the entry of an order closing the Chapter 11 Case, or (y) the subsequent appointment of a successor who assumes all of the rights, obligations and duties of the Plan Administrator in accordance herewith.

10.13    **Release and Discharge.  Upon the Termination Date, the duties of the Plan Administrator shall be terminated without further action, and the Plan Administrator shall, to the fullest extent permissible under applicable law, be deemed forever released and discharged from all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising in law or in equity, that are based in whole or in part on any act or omission, transaction, event or other occurrence in any way relating to the Debtor, the Chapter 11 Case or the Plan, including the duties and obligations of the Plan Administrator hereunder.  Notwithstanding the foregoing, nothing**

27

**contained herein is intended to relieve the Plan Administrator from liability for willful misconduct, gross negligence, *ultra vires* acts, or breaches of fiduciary duty, if any, except that Plan Administrator shall not have any liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals.**

10.14   No Other Duties.  The Plan Administrator shall have no duties or obligations of any kind or nature, including any obligation to commence or prosecute any claim or cause of action, other than those expressly set forth in this Plan and the Confirmation Order.

10.15   Reliance on Provisions.  The Plan Administrator has accepted the duties and responsibilities contained in this Plan in specific reliance upon, among other provisions, Paragraphs 10.3, 10.4, 10.5, 10.10, 10.11, 10.13 and 10.14 hereof; in the absence of any one of the provisions and protections set forth in this Plan, Jonathan L. Flaxer would not otherwise have agreed to accept the duties and responsibilities of Plan Administrator contained in this Plan.

ARTICLE XI

IMPLEMENTATION OF THE PLAN

11.1   Effective Date.  The "Effective Date" shall occur on the first Business Day following the date on which all conditions to the occurrence of the Effective Date set forth in Paragraph 18.2 hereof have occurred or been waived.

11.2   Vesting of Assets.  On the Effective Date, all property of the Estate, including all Claims and causes of action, whether or not an action or proceeding has been commenced with respect thereto, shall vest in the Liquidating Debtor in accordance with section 1141 of the Bankruptcy Code, except to the extent such Claims or causes of action are abandoned as set forth in Article XVII herein.

28

11.3    <u>Continuation of Stay</u>.  Pursuant to section 362(c) of the Bankruptcy Code, the automatic stay of section 362(a) of the Bankruptcy Code shall continue in full force and effect with respect to the Liquidating Debtor, the Trustee, and/or the Plan Administrator following the Effective Date of the Plan until the Termination Date, except with respect to Personal Injury Actions, which shall not be subject to the automatic stay following the Effective Date.

11.4    <u>Operation of Liquidating Debtor</u>.  The Liquidating Debtor shall be authorized to engage in any lawful activity for which corporations may be organized under the law of the State of New York to the extent and only to the extent that such activities are necessary to liquidate its assets and liabilities in accordance with the Plan.

11.5    <u>Company Action</u>.  The entry of the Confirmation Order shall constitute authorization for the Debtor, the Liquidating Debtor, the Trustee or the Plan Administrator (as the case may be) to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation, by the Debtor or its board of directors or shareholders.

11.6    <u>Dissolution of Liquidating Debtor</u>.  Upon the distribution of all assets pursuant to this Plan and the filing by the Plan Administrator of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtor or payments to be made in connection therewith;  <u>provided</u>, <u>however</u>, that the Plan Administrator or the Liquidating Debtor by the Plan Administrator may take appropriate action to dissolve under applicable non-

29

bankruptcy law.  From and after the Effective Date, the Liquidating Debtor shall not be required
to file any document, or take any action, to withdraw their business operations from any states
where the Debtor previously conducted business.

11.7     **Release and Discharge of Trustee.  From and after the Effective Date, the
Trustee shall be discharged from his duties and obligations as chapter 11 trustee for the
Debtor and released and discharged from any liability with respect thereto.
Notwithstanding the foregoing, and notwithstanding the Effective Date of the Plan, the
Trustee shall not be discharged from his duty to timely file a Final Report and Account as
required by section 704(a)(9) of the Bankruptcy Code, which report shall account for the
period from the Trustee's appointment through the Effective Date and shall be filed within
a reasonable period after the Effective Date.  Additionally, notwithstanding the foregoing,
nothing herein shall relieve the Trustee from liability for willful misconduct, gross
negligence, *ultra vires* acts, or breaches of fiduciary duty.**

ARTICLE XII

THE RESTITUTION FUND

12.1     Manhattan DA Agreement.  Pursuant to sections 105(a), 363, and 1123(b)(6) of
the Bankruptcy Code, the Court approves the Trustee entering into the Manhattan DA
Agreement.  The Plan Administrator agrees to be bound by the Manhattan DA Agreement in
place of the Trustee, and shall administer the Restitution Fund in accordance with this Plan.

12.2     Filing of Certain Customer Claims.   Pursuant to section 501(c) of the Bankruptcy
Code and Rules 3004 and 9006(B) of the Bankruptcy Rules, on the Effective Date, the Trustee
shall be deemed to have timely filed an unliquidated Class 3 Claim on behalf of holders of

30

Unfiled Customer Claims identified on Schedule 1.1.62 of the Plan, solely for the purpose of sharing in the Restitution Fund.

12.3    <u>Use of Restitution Fund for Reserve and Initial Distribution</u>.  On the Effective Date, unless the Court orders otherwise, the Plan Administrator shall use Cash in the Restitution Fund to:

      (a)    establish a reserve for payment of the Plan Administrator's fees for administering the Restitution Fund, which shall not exceed 3% of the total amount of the Restitution Fund;

      (b)    establish a reserve for Disputed Customer Claims in an amount not to exceed the amount to pay all Disputed Customer Claims in full;

      (c)    distribute a Pro Rata Share of the Cash in the Restitution Fund after funding the reserves, if any, to holders of Allowed Customer Claims.

12.4    <u>Allowance of Customer Claims</u>.

      (a)    *Unfiled Customer Claims*.  Each Unfiled Customer Claim shall be Allowed in its Estimated Customer Claim Amount pursuant to this Plan; <u>provided</u>, <u>however</u>, that any holder of an Unfiled Customer Claims that votes to reject the Plan shall forfeit their Pro Rata Share of the Restitution Fund.   In the event a holder of an Unfiled Customer Claim votes to reject the Plan, all other holders of Allowed Customers Claims shall receive a Pro Rata Share of the

amount that the holder of the Unfiled Customer Claim that voted to

reject the Plan would have received from the Restitution Fund.

(b)    *Filed Customer Claims*.  Each holder of a Filed Customer Claim

that elects on its ballot to accept its Estimated Customer Claim

Amount shall have its Filed Customer Claim Allowed in the

Estimated Customer Claim Amount for such claimant as set forth

on Schedule 1.1.24 of the Plan.

12.5    No Distributions Pending Allowance.  No payments or distributions will be made

with respect to all or any portion of a Disputed Customer Claim unless and until all objections to

such Disputed Customer Claim have been settled, withdrawn, or have been determined by a

Final Order, and the Disputed Customer Claim has become an Allowed Claim.  The Plan

Administrator will retain distributions with respect to all Disputed Customer Claims in a reserve.

12.6    Reallocation of Amounts Reserved for Disallowed Customer Claims for Which a

Reserve has Been Established.  To the extent a Disputed Customer Claim is disallowed, in whole

or in part, the amount reserved for that Disputed Customer Claim, increased by the share of any

earnings attributable to the investment of such Cash during the time the Disputed Customer

Claim was held in the reserve for Disputed Customer Claims and decreased by any taxes paid or

payable on such portion of the reserve for Disputed Customer Claims, will be reallocated to the

Restitution Fund, provided, however, that until the final distribution on Customer Claims, the

amount of funds reserved for Disputed Customer Claims shall not be less than the amount

needed to pay in full all remaining Disputed Customer Claims.

2310903.2

12.7    <u>Bank Accounts</u>.  The Restitution Fund and any reserves related to administration of the Restitution Fund may be held in one account, provided that separate book entries are maintained for each of the foregoing.    The Restitution Fund shall not be held in the same account(s) as the Post Confirmation Fund or any other account(s) that hold funds of the Liquidating Debtor.

12.8    <u>Interest on Claims</u>.  Interest shall not accrue or be paid from the Restitution Fund on any Customer Claims, and no holder of a Customer Claim shall be entitled to interest accruing on or after the Petition Date.

12.9    <u>Final Distribution from Restitution Fund</u>.  Within thirty (30) days after the resolution of all Disputed Customer Claims, the Trustee shall:

(a)    establish a wind-up reserve which shall include Cash sufficient to pay the legal fees and related costs that have been incurred and may be incurred by the Plan Administrator, Professional Persons, and Reviewed Professionals related to the administration of the Restitution Fund, <u>provided</u>, <u>however</u>, such wind-up reserve shall not exceed three (3%) percent of the amount of the Restitution Fund;

(b)    transfer any remaining cash in any reserves (other than the wind-up reserve) related to the Restitution Fund to the Restitution Fund;

(c)    provide notice to the Manhattan DA and United States Trustee regarding the intent to make a distribution to claimants against the Restitution Fund;

33

(d)       unless the Manhattan DA or United States Trustee object to the

proposed distribution within ten (10) days from the date of the

notice, distribute any Cash from the Restitution Fund to holders of

Allowed Customer Claims in accordance with the Plan; provided,

however, that if the Manhattan DA or United States Trustee

objects to the proposed distribution, and such objection shall not

have been resolved by agreement within a reasonable period of

time, the dispute shall be submitted to the Bankruptcy Court for

determination; and

(e)       if all Allowed Customer Claims receive payment in full from the

Restitution Fund, transfer any funds remaining in the Restitution

Fund to the Post Confirmation Fund.

12.10    Delivery of Distributions.  Distributions to holders of Allowed Customer Claims

shall be made at the addresses set forth in the Debtor's Schedules of Assets and Liabilities filed

with the Court, the proofs of claim, transfers of claim filed pursuant to Bankruptcy Rule 3001,

or, if no address is provided in any of the foregoing, at the last known addresses of such holders

in the Debtor's books and records.

12.11    Undeliverable and Unclaimed Distributions.

(a)       *Holding and Investment of Undeliverable and Unclaimed*

*Distributions*.  If the distribution to any holder of an Allowed

Customer Claim is returned to the Plan Administrator as

undeliverable or is otherwise unclaimed for ninety (90) days, no

34

further distributions shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then-current address.  Undeliverable and unclaimed distributions shall be held in the reserve for Disputed Customer Claims until the earlier to occur of (x) such time as the distribution becomes deliverable or is claimed, or (y) the Termination Date.

(b)    *Failure to Claim Undeliverable Distributions*.  Distribution checks issued in respect of Allowed Customer Claims shall be null and void if not cashed within ninety (90) days of the issuance thereof. After such date, the holder of such claim shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim or any interest earned thereon, for an undeliverable or unclaimed distribution against the Liquidating Debtor, the Estate, the Plan Administrator or their property.  In such case, any Cash or other property held for distribution on account of such Claim for undeliverable or unclaimed distributions shall become part of the Restitution Fund, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Plan Administrator to locate any holder of an Allowed Customer Claim whose address has changed as it is the sole responsibility of any holder of a Claim whose address changes to notify the Plan Administrator of such

35

change.  The Plan Administrator may petition the Court to alter the procedures contained in this Sub-Paragraph 12.11(b).

12.12   <u>Assignment of Restitution Fund Collection Claims</u>.  The Manhattan DA hereby assigns the collection of "Amounts Owed" identified on Schedule A to the Manhattan DA Agreement to the Plan Administrator, solely in his capacity as administrator of the Restitution Fund.

12.13   <u>Restitution Fund Fee Applications</u>.  Applications for payment of the fees and reimbursement of expenses of the Plan Administrator or Reviewed Professionals for services such parties rendered related to the administration of the Restitution Fund shall be filed no later than thirty (30) days following the date of the distribution set forth in Paragraph 12.9 hereof.  The Manhattan DA may waive this obligation, in which case such fees and reimbursement of expenses shall be governed by Section 10.9 hereof; <u>provided</u>, <u>however</u>, that the Plan Administrator or Reviewed Professional, as applicable, shall provide notice of fees and expenses to both the United States Trustee and the Manhattan DA.  The fees of the Plan Administrator and his Reviewed Professionals shall not exceed, in the aggregate, three (3%) percent of the total amount of the Restitution Fund.

ARTICLE XIII

DISTRIBUTION AND RESERVES

13.1   <u>Use of Opening Cash Balance for Initial Distribution of Assets and Creation of Reserves</u>.  On the Effective Date, unless the Court orders otherwise, the Plan Administrator shall use the Opening Cash Balance to:

2310903.2

(a)    pay in Cash in full all (i) Allowed (and unpaid) Administrative

Claims, (ii) Allowed (and unpaid) Priority Tax Claims, (iii)

Allowed (and unpaid) Priority Claims, and (iv) the Quarterly

Trustee Fees then due and owing;

(b)    establish the Administrative and Priority Claims Reserve with

sufficient funds to pay in full all Quarterly Trustee Fees,

Administrative Claims, Priority Tax Claims, and Priority Claims,

which are not paid on the Effective Date, including (i) Disputed

Administrative Claims, (ii) Disputed Priority Tax Claims, (iii)

Disputed Priority Claims, (iv) the Trustee's statutory commission,

(v) estimated fees and expenses of Professional Persons retained

by the Trustee and/or the Estate; and

(c)    establish the Plan Administrator Reserve.

13.2    <u>Secondary Distribution</u>.  Unless the Court orders otherwise, within thirty (30)

days after the Effective Date or as soon thereafter as there is sufficient Cash, in the sole

discretion of the Plan Administrator, to make the payments set forth in this Paragraph 13.2 of the

Plan, the Plan Administrator shall distribute all Cash that is not payable to or reserved for

Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, the

Administrative and Priority Claims Reserve, the Plan Administrator Reserve or any other

payments required under the Plan to be made, reserved or transferred by the Plan Administrator,

as follows:

2310903.2

(a)    distribute a Pro Rata Share of Cash from the Post Confirmation Fund to holders of Allowed General Unsecured Claims; and

(b)    retain a Pro Rata Share of Cash from the Post Confirmation Fund required to fund the General Unsecured Claims Reserve for each holder of a Disputed General Unsecured Claim.

13.3    <u>Subsequent Distributions</u>.  After the Effective Date, the Plan Administrator shall pay in Cash in full the following Claims upon entry of a Final Order allowing such Claims:  (a) Allowed (and unpaid) Administrative Claims, (b) Allowed (and unpaid) Priority Tax Claims, and (c) Allowed (and unpaid) Priority Claims.  The Plan Administrator shall make subsequent distributions to the holders of all other Allowed (and unpaid) Claims in accordance with the terms of this Plan in his sole discretion.

13.4    <u>Final Distribution</u>.

(a)    The Plan Administrator shall make the Final Distribution when, in the reasonable judgment of the Plan Administrator, (i) all property of the Estate has been liquidated and there are no potential sources of additional Cash for distribution, (ii) all Quarterly Trustee Fees, Administrative Claims, Priority Claims, and Priority Tax Claims have been Allowed and paid in full, disallowed or withdrawn, (iii) there remain no Disputed Claims entitled to receive a distribution pursuant to this Plan , and (iv) the Plan Administrator is in a position to make the Final Distribution in accordance with applicable law.

38

(b)      Prior to the Final Distribution, the Plan Administrator may seek an

order approving the termination and discharge of the Plan

Administrator.

(c)      On the Termination Date, the Plan Administrator shall:

(i)      from the Plan Administrator Reserve, establish a wind-up

reserve which shall include, without limitation, Cash sufficient, in the sole discretion of the Plan

Administrator, to pay in full all accrued and unpaid fees and expenses of the Plan Administrator

and Reviewed Professionals, and to pay the estimated legal fees and related costs which may be

incurred by counsel to or other professionals for any Plan Administrator Indemnified Party in

accordance with Paragraph 10.4 of this Plan, respectively, until such time as the Plan

Administrator obtains the release and discharge provided in Paragraph 10.13 of this Plan;

(ii)      transfer any remaining cash in the Reserves to the Post

Confirmation Fund; and

(iii)      distribute any Cash in the Post Confirmation Fund as

specified in the Plan to holders of Allowed Claims in accordance with the Plan.

13.5    Effect of Reserves; Replenishment of Reserves.  Nothing contained herein shall

be construed as prohibiting, limiting or restricting in any way the Plan Administrator from

expending any amount in excess of the amount held in any of the Reserves to the extent such

expenditure is otherwise authorized by this Plan.  From and after the Effective Date, the Plan

Administrator shall be authorized to withhold such additional amounts from the Post

Confirmation Fund which it may reasonably require to augment and/or replenish any of the

Reserves.

13.6    Procedures for Treating and Resolving Disputed Claims.

(a)    *Deadline for Objecting to Claims*.  Objections to Claims may be filed by the Plan Administrator prior to the Claims Objection Date.

(b)    *No Distributions Pending Allowance*.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

(c)    *Estimate of Contingent and Unliquidated Claims*.  The Plan Administrator will retain distributions with respect to all Disputed Claims in the applicable Reserve.  The Plan Administrator may request estimation pursuant to section 502(c) of the Bankruptcy Code for any Disputed Claim that is contingent or unliquidated and the fixing or liquidation of which, as the case may be, would unduly delay the Final Distribution.

13.7    Additions to Post Confirmation Fund.  Except as provided in Section 13.5 above, the Plan Administrator will add to the Post Confirmation Fund (a) any dividends, payments or other distributions made on account of, as well as any obligations arising from, the property held in the Post Confirmation Fund, to the extent that such property continues to be held in the Post Confirmation Fund at the time such distributions are made or such obligations arise, and (b) any net realized cash proceeds received by the Plan Administrator after the Effective Date from

40

among other things, the liquidation of non-cash assets, if any, and the prosecution of any causes of action.

13.8     _Distribution of Amounts Reserved for Disallowed Claims_.   To the extent a Disputed Claim is disallowed, in whole or in part, the amount reserved for that Disputed Claim or the Disputed portion of the Claim, as the case may be, increased by the share of any earnings attributable to the investment of such Cash during the time the Disputed Claim was held in a Reserve and decreased by any taxes paid or payable on such portion of the applicable Reserve, will be reallocated to the Post Confirmation Fund and distributed in accordance with the Plan.

13.9     _Bank Accounts_.   The funds held in the Post Confirmation Fund and the Reserves may be held in one account, provided that separate book entries are maintained for each one of the foregoing.

13.10    _Interest on Claims_.   Interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

13.11    _Delivery of Distributions_.   Distributions to holders of Allowed Claims shall be made at the addresses set forth in the Debtor's Schedules of Assets and Liabilities filed with the Court, the proofs of claim, or transfers of claim filed pursuant to Bankruptcy Rule 3001 (or at the last known addresses of such holders if the Plan Administrator has been notified in writing of a change of address).

13.12    _Undeliverable and Unclaimed Distributions_.

(a)     _Holding and Investment of Undeliverable and Unclaimed Distributions_.   If the distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is

41

otherwise unclaimed for ninety (90) days, no further distributions

shall be made to such holder unless and until the Plan

Administrator is notified in writing of such holder's then-current

address.  Undeliverable and unclaimed distributions shall be held

in the Unclaimed Distribution Reserve for the benefit of all such

similarly situated persons until the earlier to occur of (x) such time

as the distribution becomes deliverable or is claimed, or (y) the

Termination Date.

(b)     *Failure to Claim Undeliverable Distributions*.  Distribution checks

issued in respect of Allowed Claims shall be null and void if not

cashed within ninety (90) days of the issuance thereof.  After such

date, the holder of such claim shall be deemed to have forfeited its

claim for such undeliverable or unclaimed distribution and shall be

forever barred and enjoined from asserting any such claim or any

interest earned thereon, for an undeliverable or unclaimed

distribution against the Liquidating Debtor, the Estate, the Plan

Administrator or their property.  In such case, any Cash or other

property held in an Unclaimed Distribution Reserve for

distribution on account of such Claim for undeliverable or

unclaimed distributions shall become the property of the

Liquidating Debtor, free of any restrictions thereon and

notwithstanding any federal or state escheat laws to the contrary,

and shall be distributed in accordance with the terms of the Plan.

Nothing contained in the Plan shall require the Plan Administrator

42

to locate any holder of an Allowed Claim whose address has

changed as it is the sole responsibility of any holder of a Claim

whose address changes to notify the Plan Administrator of such

change.  Any unclaimed or undeliverable distributions returned

after the Final Distribution or checks that are not cashed within

nine (90) days of the Final Distribution shall be paid or delivered

as the Plan Administrator shall instruct or shall be deposited with

the Court.  The Plan Administrator may petition the Court to alter

the procedures contained in this Sub-Paragraph 13.12(b).

13.13   <u>Means of Cash Payment</u>.  Cash payments made pursuant to this Plan shall be in

U.S. funds, by the means agreed to by the payor and the payee, including by check or wire

transfer or, in the absence of an agreement, such commercially reasonable manner as the payor

shall determine in its sole discretion.

13.14   <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all

distributions thereunder, the Plan Administrator shall comply with all withholding and reporting

requirements imposed by any federal, state, local or foreign taxing authority, and all distributions

hereunder shall be subject to any such withholding and reporting requirements.  The Plan

Administrator shall be authorized to take any and all actions that may be necessary or

appropriate to comply with such withholding and reporting requirements.

13.15   <u>Setoffs</u>.

(a)      *By Debtor*.  The Plan Administrator, pursuant to section 553 of the

Bankruptcy Code or applicable non-bankruptcy laws, shall be

43

allowed, but not be required, to set off against any claim, and the

payments or other distributions to be made pursuant to the Plan in

respect of such Claim, claims of any nature whatsoever that the

Debtor or Liquidating Debtor may have against the holder of such

Claim; provided, however, that neither the failure to do so nor the

allowance of any Claim hereunder shall constitute a waiver or

release by the Plan Administrator, as the case may be, of any such

claim that the Debtor or Liquidating Debtor may have against such

holder.

(b)     *By Third Parties*.  Any holder of a Claim must assert any setoff

rights against a claim by the Estate against the holder of such

Claim by filing an appropriate motion seeking authority to setoff

prior to the entry of an order of the Court closing the Chapter 11

Case or will be deemed to have waived and be forever barred from

asserting any right to setoff against a Claim by the Debtor or the

Estate, notwithstanding any statement to the contrary in a proof of

claim or any other pleading or document filed with the Court or

delivered to the Trustee.

13.16    Fractional Dollars.  Notwithstanding any other provision of the Plan, the Plan

Administrator shall not be required to make distributions or payments of fractions of dollars, and

whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the

actual payment shall reflect a rounding down of such fraction to the nearest whole dollar.

13.17    Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, for income tax purposes, such distribution shall be allocated (to the extent permitted) *first*, to the principal amount of the Claim and *second*, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

ARTICLE XIV

Distribution of Trust Funds

14.1    Distribution of Trust Funds.  The Plan Administrator shall distribute trust funds pursuant to Article 3-A of the New York Lien Law held by the Estate pro rata to the trust fund beneficiaries for the particular job for which the Estate is holding trust funds based upon the books and records of the Debtor.   The proposed distribution of trust funds is set forth in Schedule 14.1 of the Plan.  To the extent such trust fund beneficiaries filed claims against the Estate, their claims shall be reduced dollar-for-dollar by the amount of trust funds paid to such beneficiary.  The Bankruptcy Court shall retain jurisdiction to hear and determine any dispute over the proper allocation of trust funds.

ARTICLE XV

SUBSTANTIAL CONSUMMATION

15.1    Substantial Consummation.  The Plan shall be "substantially consummated" within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code on the Effective Date of this Plan.

ARTICLE XVI

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

16.1     Assumption of Executory Contracts and Unexpired Leases.  Except as may be

ordered by the Court prior to the Effective Date pursuant to sections 1123(b)(2) and 365 of the

Bankruptcy Code and any applicable Bankruptcy Rule(s), all executory contracts and unexpired

leases of the Debtor shall be deemed rejected as of the Effective Date.

16.2     Rejection Claims Bar Date.  Holders of Claims arising from the rejection of any

executory contract or unexpired lease shall file a proof of claim on or prior to thirty (30) days

after the Effective Date.  Any such Claim filed thereafter shall be deemed disallowed in its

entirety without the need of further order of the Court.

ARTICLE XVII

ABANDONMENT OF CAUSES OF ACTION

17.1     Abandonment of Certain Causes of Action.  Pursuant to sections 554 and 1107 of

the Bankruptcy Code, and Rule 6007 of the Bankruptcy Rules, the Estate abandons all Claims

and causes of action against the Debtor's former customers to collect unpaid account receivables.

ARTICLE XVIII

CONDITIONS TO CONFIRMATION
OF PLAN AND TO EFFECTIVE DATE

18.1     Conditions to Confirmation.  Confirmation of this Plan shall not occur unless each

and every one of the conditions set forth in this Paragraph 18.1 has been either satisfied or

waived in writing by the Trustee in his sole and absolute discretion in accordance with Paragraph

18.3 hereof:

46

(a)     the Confirmation Order shall be in form and substance reasonably

acceptable to the Trustee; and

(b)     the Confirmation Order shall provide, among other things, that no

claim may be filed or prosecuted against the Plan Administrator

except upon application first being filed in the Court for authority

to bring such claim for good cause shown, and entry of a Final

Order of the Court authorizing the filing of such claim.

18.2    Conditions to Effective Date.  Notwithstanding any other provision of this Plan or

the Confirmation Order, the Effective Date shall not occur unless (a) on or prior to November 30,

2015, each and every one of the conditions set forth in this Paragraph 18.2 has been either

satisfied or waived in writing by the Trustee in his sole and absolute discretion in accordance

with Paragraph 18.3, and (b) at least fifteen (15) days shall have elapsed since the entry of the

Confirmation Order, with the last day of such calculation being a Business Day, and the

Confirmation Order shall not be the subject of a stay by a court of competent jurisdiction on such

date.

18.3    Waiver of Conditions.  If any of the conditions to confirmation of this Plan or if

any of the conditions to the occurrence of the Effective Date set forth in Paragraphs 18.1 and

18.2, respectively, have not been or cannot be satisfied within the time established under this

Plan for the satisfaction of such condition, then the Trustee may, but shall have no obligation to,

in the exercise of his sole and absolute discretion, waive any such condition or extend the

deadline for the satisfaction of such condition upon the filing with the Court of a written notice

of such waiver or extension.

2310903.2

18.4    <u>Failure to Satisfy Conditions</u>.  If any condition set forth in Paragraph 18.1 and

Paragraph 18.2 has not been satisfied within the deadline established pursuant to Paragraphs 18.1

and 18.2, or any date to which such deadline may be extended pursuant to Paragraph 18.3, or has

not been waived in accordance with Paragraph 18.3, then this Plan and the Confirmation Order

shall automatically be without further force or effect, and the Trustee shall have no further

obligations under this Plan or the Confirmation Order.

ARTICLE XIX

<u>MISCELLANEOUS</u>

19.1    <u>Effect of Confirmation</u>.  The distributions and other treatment afforded all holders

of Claims and Equity Securities hereunder shall be in full and complete satisfaction of all Claims

against, and Equity Securities in, the Debtor.  From and after the Effective Date, holders of

Claims against, and Equity Securities in, the Debtor, the Liquidating Debtor and the Estate shall

be treated in accordance with the terms of this Plan and shall have no other rights, remedies or

causes of action against the Debtor, the Liquidating Debtor or the Estate other than as set forth in

this Plan.  From and after the Effective Date, and except as otherwise set forth in this Plan, all

holders of Claims (including persons or entities that could have filed a Claim) and Equity

Securities shall be precluded from asserting against the Trustee, the Plan Administrator, or

against any property of the Estate or of the Liquidating Debtor, any Claim based upon any act or

omission, transaction or other activity of any kind or nature in connection with this Chapter 11

Case which occurred prior to the Effective Date.  Notwithstanding the foregoing, nothing

contained herein shall relieve the Trustee or the Plan Administrator from liability for willful

misconduct, *ultra vires* acts, gross negligence or breach of fiduciary duty.

48

2310903.2

19.2    _Time of the Essence_.  Time is of the essence with respect to all dates and

deadlines set forth herein (whether or not specifically so indicated), including without limitation

the deadline for confirmation of this Plan, and the deadline for the occurrence of the Effective

Date.

19.3    _Notices_.  Except as otherwise specifically set forth in this Plan, any notice, request

or demand given or made under this Plan or under the Bankruptcy Code, the Bankruptcy Rules,

the Local Bankruptcy Rules or as may be required by the United States Trustee shall (a) be in

writing, (b) need only be hand delivered or sent by a reputable overnight courier service, and (c)

be deemed given when received at the addresses set forth below.

> _If to the United States Trustee_:
> Office of the United States Trustee
> Southern District of New York
> 201 Varick Street, Suite 1006
> New York, New York 10014
> Attn.:  Susan Golden, Esq.

> _If to the Trustee and/or the Plan Administrator:_
> Jonathan L. Flaxer
> c/o Golenbock Eiseman Assor Bell & Peskoe LLP
> 437 Madison Avenue, 35th Floor
> New York, New York 10022

> With a copy to:
> Golenbock Eiseman Assor Bell & Peskoe LLP
> 437 Madison Avenue, 35th Floor
> New York, New York 10022
> Attn.:   Michael S. Weinstein, Esq.

19.4    _No Additional Notice_.  Except as otherwise specifically set forth in this Plan, no

person or entity shall be entitled to notice of any act, request or demand given or made under this

Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules other than (a)

those set forth in Paragraph 19.3 of this Plan, and (b) those persons or entities who request notice

2310903.2

in writing by providing such request to each of the parties set forth in Paragraph 19.3 of this Plan

on or prior to the Effective Date.

     19.5   <u>Headings; Entire Plan</u>.

     (a)   The headings of the articles, paragraphs and sub-paragraphs of this

Plan are inserted for convenience only and shall not affect the

interpretation hereof.

     (b)   This Plan, including any schedules, exhibits and other attachments

hereto, shall constitute the entire Plan.

     19.6   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy

Rules or the Local Bankruptcy Rules are applicable, the rights and obligations arising under the

Plan shall be governed by, and construed in accordance with the laws of the State of New York.

     19.7   <u>Jury Trial</u>.  The holder of a Claim that accepts any distribution of property under

this Plan shall be deemed to have waived such holder's right(s) to a trial by jury on account of

any claim, demand, debt, right, cause of action or liability, whether liquidated or unliquidated,

fixed or contingent, matured or unmatured, foreseen or unforeseen then existing or thereafter

arising in law or in equity based in whole or in part on any act or omission transaction, event or

other occurrence in any way relating to the Plan, the Debtor, the Liquidating Debtor, the Trustee

and/or their respective professionals, officers, members, managers, agents and/or affiliates.

Nothing contained in this Plan shall be deemed in any way to limit, restrict or foreclose the

abilities and/or rights of the Plan Administrator to request a trial by jury, which abilities and/or

rights are expressly preserved.

19.8    <u>Award of Attorneys' Fees and Expenses; Posting a Bond</u>.  In the event that (x) Plan Administrator is forced to defend against a claim raised by the holder of a Claim (whether Disputed or Allowed) or an affiliate of the holder of a Claim, (y) the Plan Administrator prevails, and (z) the assets available for distribution to holders of Allowed Claims under this Plan are diminished thereby, then in such instance, the Court may award to the Plan Administrator its reasonable attorneys' fees and expenses.  At any time after a claim is asserted against the Plan Administrator, the Plan Administrator may (a) request that the Court require that the holder of such Claim or its affiliate, as the case may be, post a bond to secure the payment of such reasonable attorneys' fees and expenses, and withhold any distribution that would otherwise be made under this Plan to the holder of such Claim if such Claim is or becomes an Allowed Claim.

19.9    <u>Non-Material Modifications</u>.  Non-material modifications to this Plan may be made on notice to those parties identified in Paragraph 19.3 of this Plan, and upon entry of an order of the Court approving such non-material modification(s).

19.10   <u>Cram-Down</u>.  In the event that any of Class 1, Class 3, or Class 4 does not vote to accept this Plan, the Plan constitutes a request that it be approved pursuant to Section 1129(b) of the Bankruptcy Code.

19.11   <u>Controlling Documents</u>.  In the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of this Plan, the provisions of the Confirmation Order shall control and take precedence.

2310903.2

19.12    <u>Quarterly Trustee Fees</u>.  The Debtor shall pay all Quarterly Trustee Fees, plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Decree, dismissal of the case, or conversion of the case to Chapter 7.

19.13    **<u>Injunction</u>.  Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or Entities, together with their respective present and former employees, agents, officers, directors, principals and affiliates, who have held, hold or may hold Claims against or Equity Securities in the Debtor are permanently enjoined, from and after the Effective Date, from (i) pursuing any and all such Claims and/or any and all rights and/or remedies arising under or relating to Equity Securities (other than the rights of such Persons and Entities to enforce this Plan, the Approval Order and the contracts, instruments, releases and other agreements or documents delivered thereunder and hereunder and liabilities first arising thereunder after the Effective Date), known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any actual or alleged act, omission, transaction, event, or other occurrences taking place on or prior to the Effective Date (collectively, the "<u>Released Claims</u>"), (ii) commencing or continuing in any manner any action or other proceeding of any kind based on any Released Claim against any of the Debtor, the Plan Administrator or the Liquidating Debtor, (iii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, decree or other award against any of the Debtor, the Plan Administrator or the Liquidating Debtor, (iv) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtor, the Estate or the Liquidating Debtor or against the property or interests in property of any of the foregoing based on any Released Claim, or (v) asserting any right of**

52

setoff, subrogation or recoupment of any kind against any obligation due or owing to the

Debtor or against the property or interests in property of any of the Debtor, the Estate or

the Liquidating Debtor based on any Released Claim; provided, however, that this

provision shall not impact or affect the rights and powers of any governmental entity or

agency exercising its police or regulatory power.

19.14    **Trustee Exculpation.**  Neither the Trustee nor any of the Professional

Persons retained by him, shall have or incur any liability whatsoever, in any form, to the

Estate or the Liquidating Debtor, for any act or omission in connection with or arising out

of the involvement of any of them in the conduct of the Chapter 11 Case, including the type

or value of distributions, if any, reserved under the Plan for holders of Claims, the

solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and

consummation of the Plan, the administration of the Plan or the property to be distributed

under the Plan, other than acts or omissions found in a final judgment by a court of

competent jurisdiction (not subject to further appeal) to constitute willful misconduct,

gross negligence, *ultra vires* acts, or breach of fiduciary duty by such person or entity.

Nothing in this Plan shall limit the liability of the lawyers to their respective clients

pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).


ARTICLE XX

RETENTION OF JURISDICTION

20.1    Court Exclusive Jurisdiction.  The Court shall retain jurisdiction over all matters

arising out of or relating to the Chapter 11 Case and the Plan pursuant to sections 105, 1127 and

1142(b) of the Bankruptcy Code and Bankruptcy Rule 3020(d) for, *inter alia*, the following

specific purposes:

(a)     to consider any modification of this Plan under section 1127 of the

Bankruptcy Code;

(b)     to hear and determine all controversies, suits and disputes that may

arise in connection with the interpretation or enforcement of this

Plan or the Confirmation Order;

(c)     to enforce the reservation of exclusive jurisdiction over the Plan

Administrator and the injunction against the filing of any claim

against the Plan Administrator absent approval by the Court, and

thus to consider and rule on any requests for the authority to file

such claims;

(d)     to enter and implement such orders as may be necessary or

appropriate to carry out the provisions of this Plan or in the event

that the Confirmation Order is stayed, reversed, revoked or vacated

for any reason;

(e)     to hear and determine all applications for the payment of

Administrative Claims, whether filed pursuant to section 330 of the

Bankruptcy Code or otherwise;

(f)     to hear and determine all objections to Claims, objections to

requests or applications for payment of Administrative Claims,

adversary proceedings, controversies, suits and disputes that may

be pending as of the Confirmation Date or commenced subsequent

to the Confirmation Date;

(g)     to determine or approve the compromise or settlement of any

Claim or cause of action against the Debtor;

54

(h)     to hear and determine any estimation proceedings commenced by

the Plan Administrator under section 502(c) of the Bankruptcy

Code;

(i)     to hear and determine the Plan Administrator's requests pursuant

to Bankruptcy Rule 2004, including, without limitation,

compelling the attendance of any person or entity to be examined,

and the production of documents in accordance therewith;

(j)     to hear and determine all matters concerning state, local and

federal taxes in accordance with sections 106, 505, 1141 and 1146

of the Bankruptcy Code;

(k)     to correct any defect, cure any omission or reconcile any

inconsistency in the Plan or in the Confirmation Order as may be

necessary to carry out the purpose and intent of this Plan;

(l)     to hear and determine any disputes related to the fees and expenses

of the professionals retained by the Plan Administrator, if any;

(m)    to appoint a successor to the Plan Administrator, if any;

(n)     to consider and act on matters pertaining to the sale, distribution,

transfer, liquidation, assignment, repayment or other disposition of

any property of the Estate, the Debtor and/or the Liquidating

Debtor;

(o)     to consider and act on such other matters as are consistent with this

Plan;

(p)     to determine any and all applications, adversary proceedings or

contested matters pending on the Confirmation Date, or

commenced thereafter, and arising under the Bankruptcy Code or

arising in or related to the Chapter 11 Case; and

(q)      to enter a final decree closing the Chapter 11 Case under

Bankruptcy Rule 3022.

ARTICLE XXI

RESERVATION OF RIGHTS

The filing of this Plan, including any statement or provision contained in this Plan or in

any disclosure statement proposed or filed with respect to this Plan, and the taking by the Trustee

of any action with respect to this Plan shall not (a) be or be deemed to be an admission against

interest, or (b) until after the occurrence of the Effective Date, be or be deemed to be a waiver of

any rights.  In the event that this Plan is not confirmed or that the Effective Date does not occur,

the rights of all parties in interest in the Chapter 11 Case shall be fully reserved.  In such event

and under such circumstance, neither this Plan, nor any statement contained herein nor in any

disclosure statement proposed or filed in connection herewith, may be used in any suit, action,

proceeding or controversy in the Chapter 11 Case or otherwise.

56

Dated: New York, New York
      August 31, 2015

Respectfully submitted,

**JONATHAN L. FLAXER, solely in his
capacity as chapter 11 trustee for Lehr
Construction Corp.**

/s/ Jonathan L. Flaxer

Dated: New York, New York
      August 31, 2015

GOLENBOCK EISEMAN ASSOR BELL
 & PESKOE LLP
*Counsel for Jonathan L. Flaxer, chapter 11 trustee
for Lehr Construction Corp.*
437 Madison Avenue
New York, NY 10022
(212) 907-7300

By:   /s/ Michael S. Weinstein
      Michael S. Weinstein, Esq.

**Error! Unknown document property name.**

## Schedule 1.1.24

**Estimated Customer Claims**

| Claimant | Estimated Claim Amount |
|---|---|
| Bryan Cave LLP | $1,244,541 |
| Economist | $76,581 |
| Fidelity | $538,119 |
| Fross Zelnick Lehrman & Zissu, P.C. | $78,814 |
| Gilder Gagnon | $797,325 |
| Holland & Knight LLP | $212,253 |
| Ramius Capital (a/k/a Cowen Group) | $1,395,133 |
| Unum | $119,537 |
| Warburg Pincus | $1,852,766 |
| Zurich | $929,184 |

## Schedule 1.1.25

**Filed Customer Claims**

| Claim Number | Claimant | Face Amount of Claim |
|:---:|:---:|:---:|
| 278 | Bryan Cave LLP | Unliquidated |
| 73 | Fross Zelnick Lehrman & Zissu, P.C. | $4,320,972.78 |
| 282 | Holland & Knight LLP | $350,000.00 |

## Schedule 1.1.62

**Unfiled Customer Claims**

| Holder of Unfiled Customer Claim |
| --- |
| Cowen Group LLC |
| Gilder Gagnon |
| Warburg Pincus |
| First Unum Life Insurance Company (Unum Group) |
| Fidelity Investments |
| The Economist |
| Zurich |

**Schedule 14.1**

**Trust Funds**

| Job | Job # | Vendor Name | Amount Due |
|---|---|---|---|
| Coach | 6164 | Checker Glass Corp. | $262.12 |
| | | Eurotech Construction Corp | $830.92 |
| | | Gotham Lighting Supply | $432.52 |
| | | LAN Utilities Electric Inc. | $8,101.88 |
| | | Mac Felder Inc. | $2,941.65 |
| | | Marlin Inc. | $5,318.29 |
| | | State Painting & Decorating Co. | $927.62 |
| | | Titan Contracting Group, Inc. | $1,185.00 |
| | | | **$20,000.00** |

| Job | Job # | Vendor Name | Amount Due |
|---|---|---|---|
| Matlin Paterson | 6398 | Bond Painting Company | $432.12 |
| | | Celtic Building Supplies | $75.45 |
| | | Consolidated Carpet Workroom | $724.70 |
| | | Nead Electric Corp. | $2,202.53 |
| | | Premier Courier Service | $66.36 |
| | | Superior Acoustics Inc. | $621.82 |
| | | | **$ 4,123.00** |

| Job | Job # | Vendor Name | Amount Due |
|---|---|---|---|
| Renco | 6097 | Dal Electric Corporation | $ 2,205.00 |

**Schedule 14.1**
**(continued)**

| Job | Job # | Vendor Name | Amount Due |
|---|---|---|---|
| Scripps Network LLC | 6309 | Bond Painting | $9,170.43 |
| | | Lane Office Furniture, LLC | $2,376.10 |
| | | Midtown Contracting | $2,601.74 |
| | | | **$14,148.27** |

| Job | Job # | Vendor Name | Amount Due |
|---|---|---|---|
| Mitsubishi | 6331 | Bond Painting Company | $591.67 |
| | | High-Built Contracting Corp. | $493.06 |
| | | Marlin Inc. | $571.95 |
| | | Quantum Electric Corporation | $4,633.77 |
| | | RG Glass Creations Inc. | $2,317.38 |
| | | Superior Acoustics Inc. | $2,890.71 |
| | | Tri-State Computer Flooring Inc. | $1,022.61 |
| | | US Information Systems Inc. | $4,031.85 |
| | | | **$16,553.00** |

2310903.2